**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| MY JOB MATCHER, INC., *et al.*,[1] | Case No. 25-11280 (___) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS, PURSUANT TO
SECTIONS 105(a), 345, 363, 1107(a) AND 1108 OF THE BANKRUPTCY CODE,
BANKRUPTCY RULE 2015, AND LOCAL RULE 2015-1, (A) AUTHORIZING
AND APPROVING CONTINUED USE OF PREPETITION BANK ACCOUNTS,
(B) AUTHORIZING USE OF PREPETITION BANK ACCOUNTS AND BUSINESS
FORMS, (C) TEMPORARILY SUSPENDING THE REQUIREMENTS OF SECTION
345(b) ON AN INTERIM BASIS, (D) APPROVING, UPON ENTRY OF A FINAL
ORDER, THE DEBTORS' USE OF CERTAIN GARNISHED FUNDS,
<u>AND (E) GRANTING CERTAIN RELATED RELIEF</u>**

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**")

hereby submit this motion (this "**Motion**") for the entry of interim and final orders, substantially

in the form attached hereto as <u>Exhibit A</u> (the "**Interim Order**") and <u>Exhibit B</u> (the "**Final Order**,"

and together with the Interim Order, the "**Proposed Orders**"), pursuant to sections 105(a), 345,

363, 1107(a), and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the

"**Bankruptcy Code**"), Rule 2015 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy**

**Rules**"), and Rule 2015-1(a) and (b) of the Local Rules of the United States Bankruptcy Court for

the District of Delaware (the "**Local Rules**"), (a) authorizing and approving the Debtors'

continued use of the Current Bank Account (defined below), and, until the Former Bank Accounts

are closed, the Former Bank Accounts (defined below), (b) granting the Debtors a waiver of certain

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  My Job Matcher, Inc. (9880); Job.com-HV, Inc. (DE) (5873); Job.com-HV, Inc. (FL) (5873); Job.com-Fortus, Inc. (6145); Job.com-Endevis, Inc. (1956); Job.com-QCI, Inc. (4364); Princeton One-Job.com, Inc. (4752); and Princeton Search L.L.C. (6163).  For purposes of these chapter 11 cases, the Debtors' service address is 1743 Sidewinder Drive, 1st Floor, Park City, Utah 84060.

bank account and related requirements of the Office of the United States Trustee for the District

of Delaware (the "**U.S. Trustee**") to the extent that such requirements are inconsistent with (i) the

Debtors' practices in connection with their existing bank accounts or (ii) any action taken by the

Debtors in accordance with any order granting the relief requested in this Motion or any other

order entered in these chapter 11 cases, (c) temporarily suspending the requirements of section

345(b) of the Bankruptcy Code with respect to the Debtors' deposit practices on an interim basis,

(d) approving, upon entry of the Final Order, the Debtors' use of certain garnished funds, and

(e) granting certain related relief.  In support of this Motion, the Debtors rely upon and incorporate

by reference the *Declaration of Robert J. Corliss in Support of Chapter 11 Petitions and First Day

Pleadings* (the "**First Day Declaration**"),[2] filed contemporaneously herewith.  In further support

of this Motion, the Debtors respectfully state as follows:

<u>**JURISDICTION AND VENUE**</u>

1.      The United States Bankruptcy Court for the District of Delaware (the "**Court**") has

jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing

Order of Reference* from the United States District Court for the District of Delaware, dated as of

February 29, 2012 (the "**Amended Standing Order**").  This is a core proceeding pursuant to 28

U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United

States Constitution.  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The

statutory and legal predicates for the relief sought herein are sections 105(a), 345, 363, 1107(a),

and 1108 of the Bankruptcy Code, Bankruptcy Rule 2015, and Local Rule 2015-1(a) and (b).

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

## BACKGROUND

### I.    General

2.    On the date hereof (the "**Petition Date**"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No official committees have been appointed in these chapter 11 cases and no request has been made for the appointment of a trustee or an examiner.

3.    Additional information regarding the Debtors' business, their capital structure, and the circumstances leading to the filing of these chapter 11 cases is set forth in the First Day Declaration.

### II.    The Bank Accounts

4.    The Debtors' current cash management system (the "**Cash Management System**") consists of: (a) one bank account with Customers Bank (the "**Current Bank Account**"), which was opened shortly before the Petition Date, and (b) thirteen bank accounts with PNC Bank (the "**Former Bank Accounts**," and, together with the Current Bank Account, the "**Bank Accounts**").  The Current Bank Account (last four digits 7152) is a general operating account that makes disbursements and receives advances from the Prepetition Lenders (as defined in the First Day Declaration).  Postpetition, the Debtors anticipate that customer receipts will be deposited into the Current Bank Account.  A list of the Bank Accounts is attached hereto as Exhibit C.  While the Former Bank Accounts currently remain open, the Debtors intend to close the Former Bank Accounts postpetition.  As discussed in the First Day Declaration, prior to the Petition Date, the Debtors sold accounts receivable pursuant to the Factoring Agreement.  As a part of that Factoring Agreement, the Debtors granted the Factor certain access and control rights over the Former Bank Accounts.  The Debtors will no longer sell receivables to the Factor under the Factoring Agreement

postpetition.  Accordingly, the Debtors do not intend to place any post-petition operating funds or debtor-in-possession borrowings in the Former Bank Accounts over which the Factor has access and control rights and, instead, will utilize the Current Bank Account.

5.     The following is a list of the Debtors' Former Bank Accounts, along with a general description of each:

<blockquote>

a.     <u>Master Accounts</u>:  Debtors Princeton Search L.L.C. (last four digits 0296) and Princeton One-Job.com, Inc. (last four digits 6726) each have accounts maintained at PNC Bank (collectively, the "**Master Accounts**") which were the two master operating accounts for the Debtors' prior cash management system.  The Master Accounts received inflows from the specific entity accounts of the various Debtors and processed outflows from the cash management system. Master Account x6726 also received incoming funds from the Prepetition Lenders and distributed funds, as needed, to satisfy the Debtors' payroll obligations.

b.     <u>Depository Accounts</u>: Debtors Job.com-Fortus, Inc. (last four digits 1836), Job.com-HV, Inc. (last four digits 5496), Job.com-QCI, Inc. (last four digits 2201), and Job.com-Endevis (last four digits 1801) each have depository accounts (collectively, the "**Depository Accounts**") at PNC Bank, which received payments from the Debtors' clients and historically received amounts from the Debtors' Factor.

c.     <u>Operating Accounts</u>: Debtors Job.com-Fortus, Inc. (last four digits 1844) and Job.com-QCI, Inc. (last four digits 2244) each have operating accounts (collectively, the "**Operating Accounts**") at PNC Bank.  The Operating Accounts received incoming funds from certain of the Debtors' clients.  Historically, Operating Account x2244 received amounts from the Factor.

d.     <u>PNC Bank Fees Account</u>:  Debtor My Job Matcher, Inc. (last four digits 5445) maintains a Bank Account at PNC Bank that was used solely to pay business bank fees and charges to PNC Bank (the "**PNC Bank Fees Account**").

e.     <u>Dormant Accounts</u>:  Debtor My Job Matcher, Inc. has three accounts (last four digits 5429, 5437, 5402) and Debtor Job.com-HV, Inc. has one account (last four digits 5461) maintained at PNC Bank which each hold a zero-dollar balance (the "**Dormant Accounts**").

</blockquote>

6.      As discussed in the First Day Declaration, prior to the Petition Date, Commercial Investigations LLC obtained a judgment against Debtor Job.com-Fortus, Inc. in the aggregate amount of $104,415.31[3], inclusive of interest, fees, and costs as of the date of entry of the judgment.  As a result, the funds in two (2) Former Bank Accounts owned by Debtor Job.com-Fortus, Inc. (the "**Garnished Accounts**") were restricted such that the Debtors were unable to access the funds in the Garnished Accounts up to an amount of approximately $209,291.06 (the "**Garnished Funds**"), but funds were not ultimately transferred from the Garnished Accounts. Upon entry of the Final Order, the Debtors are seeking authority, but not direction, to use the funds in the Garnished Accounts in the ordinary course of business to fund their operations and to pay administrative expenses associated with administering these chapter 11 cases.[4]

### RELIEF REQUESTED

7.      By this Motion, the Debtors request entry of the Proposed Orders:  (a) authorizing and approving the continued use of the Current Bank Account and, until the Former Bank Accounts are closed, the Former Bank Accounts; (b) granting the Debtors a waiver of certain bank account and related requirements of the U.S. Trustee to the extent that such requirements are inconsistent with (i) the Debtors' current practices, or (ii) any action taken by the Debtors in accordance with any order granting the relief requested in this Motion or any other order entered in these chapter 11 cases; (c) authorizing the Debtors' deposit practices and temporarily suspending the requirements of section 345(b) of the Bankruptcy Code in connection therewith on an interim basis; (d) authorizing, upon entry of the Final Order, the Debtors' use of the Garnished Funds; and (e) granting certain related relief.

---

[3] This figure may be subject to change to reflect additional accrued interest and attorneys' fees.

[4] Upon entry of the Proposed Final Order, the Debtors intend to transfer the Garnished Funds to the Current Bank Account.

**BASIS FOR RELIEF**

**I.    The Court Should Authorize the Debtors' Uninterrupted Use of the Bank Accounts**

8.    The Debtors seek authority to continue utilizing the Current Bank Account and, until the Former Bank Accounts are closed, the Former Bank Accounts. Any disruption to the Cash Management System would seriously harm the Debtors and may, among other things, interrupt the timely payment of wages to employees. Maintenance of the existing Cash Management System will prevent any unexpected or inopportune interruption to the Debtors' business operations while protecting the Debtors' cash for the benefit of their estates and ensure a smooth transition from the Former Bank Accounts to the Current Bank Account.

9.    The Cash Management System utilizes the Bank Accounts to effectively and efficiently collect, transfer, and disburse funds, as needed in the Debtors' general business operations. The Cash Management System provides significant benefits to the Debtors, including the ability to:  (a) closely track, and thus control, all corporate funds; (b) ensure cash availability; and (c) reduce administrative expenses by facilitating the movement of funds and the development of timely and accurate account balance and presentment information. A disruption in the Cash Management System could cause delays in the collection and disbursement of funds, thus impeding the Debtors' ability to avoid an unexpected or inopportune interruption in their operations during the pendency of these chapter 11 cases. Furthermore, the Debtors' chapter 11 cases will be facilitated by avoiding the distractions that would inevitably be associated with a disruption in the Cash Management System, particularly in the early days of these chapter 11 cases.

10.    The Debtors believe that they can only proceed through the chapter 11 process in an efficient and cost-effective manner if the Bank Accounts are continued in their current form. The Debtors will ensure that appropriate procedures are in place so that checks issued prior to the Petition Date, but presented after the Petition Date, will not be honored absent approval from the

Court.  The Debtors will also maintain records of postpetition transfers within the Cash Management System, so that transfers and transactions will be documented in their books and records to the same extent such information was maintained by the Debtors prior to the Petition Date.

11.     Accordingly, the Debtors respectfully request that the Court authorize the continued use of the Cash Management System, provided that no prepetition checks, drafts, wire transfers, or other forms of tender that have not yet cleared the relevant drawee bank as of the Petition Date will be honored unless authorized by separate order of the Court.

12.     The Debtors also request that no bank participating in the Cash Management System (each, a "**Cash Management Bank**," and collectively, the "**Cash Management Banks**") that honors a prepetition check or other item drawn on any account that is the subject of this Motion (a) at the direction of the Debtors, (b) in a good faith belief that the Court has authorized such prepetition check or item to be honored, or (c) as a result of an innocent mistake made despite implementation of reasonable item handling procedures, be deemed to be liable to the Debtors or to their estates on account of such prepetition check or other item being honored postpetition.  The Debtors believe that according such flexibility to the Cash Management Banks is necessary to induce the Cash Management Banks to continue providing cash management services during these chapter 11 cases without incurring additional credit exposure.

## II.     The Court Should Grant the Debtors a Waiver of Certain of the U.S. Trustee Guidelines

13.     The Debtors further request a waiver of certain bank account and related requirements of the U.S. Trustee to the extent that such requirements are inconsistent with (a) the Debtors' practices in connection with their Cash Management System, or (b) any action taken by

the Debtors in accordance with any order granting the relief requested in this Motion or any other order entered in these chapter 11 cases.

14.     The U.S. Trustee has issued certain chapter 11 operating guidelines pursuant to 28 U.S.C. § 586 (the "**U.S. Trustee Guidelines**").  These guidelines require that a chapter 11 debtor, among other things:

      a.      close all existing bank accounts;

      b.      open new bank accounts in a depository approved by the U.S. Trustee that are designated as debtor-in-possession accounts ("**DIP Accounts**"), with separate DIP Accounts established for an operating account, a tax account (to the extent that payroll or other taxes are an issue for the debtor), and a payroll account (to the extent that the debtor had a separate payroll account prepetition);

      c.      obtain and utilize new checks for all DIP Accounts that bear the designation "Debtor-in-Possession" and contain other information about the debtor's chapter 11 case, and insure that the signature cards for all DIP Accounts clearly indicate that the debtor is a "Debtor-in-Possession";

      d.      deposit all receipts and make all disbursements only through the approved DIP Accounts, with any funds in excess of those required for current operations being maintained in an interest-bearing account;

      e.      deposit to the tax DIP Account sufficient funds to pay any tax liability (when incurred) associated with the debtor's payroll; and

      f.      deposit all estate funds into DIP Accounts with a financial institution that agrees to comply with the requirements of the U.S. Trustee (which will be monitored by the U.S. Trustee), with no DIP Account exceeding the insured or collateralized limits of that approved depository.

15.     If enforced in these chapter 11 cases, given the nature of the Debtors' business, such requirements would potentially cause disruption to the Debtors' business, impair the Debtors' chapter 11 efforts, and interfere with the smooth transition of the Former Bank Accounts to the Current Bank Account.  To avoid delays in paying debts incurred postpetition, and to ensure as smooth a transition into chapter 11 as possible, the Debtors should be permitted to continue to

maintain their Bank Accounts and, if necessary, open new accounts and close existing accounts, in the ordinary course of business.

16.     The Court has the authority to grant the requested relief pursuant to its equitable powers under section 105(a) of the Bankruptcy Code.  Section 105(a) provides, in relevant part, that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).  The relief requested herein is both necessary and appropriate to allow the Debtors to administer these chapter 11 cases successfully, to optimize their postpetition business performance, and to maximize the value of their estates.

17.     Accordingly, the Debtors request that the Court waive the strict enforcement of the requirement that the Debtors open new bank accounts.  The Debtors further request that their existing Bank Accounts be deemed debtor-in-possession accounts, and that the Debtors be authorized to maintain and continue using these accounts in the same manner and with the same account numbers, styles, and document forms as those employed during the prepetition period.

18.     A centralized cash management system "allows efficient utilization of cash resources and recognizes the impracticability of maintaining separate cash accounts for the many different purposes that require cash."  *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part, rev'd in part on other grounds*, 997 F.2d 1039 (3d Cir. 1993).  The Third Circuit agreed, emphasizing that requiring the maintenance of all accounts separately "would be a huge administrative burden and economically inefficient."  *In re Columbia Gas Sys, Inc.*, 997 F.2d at 1061; *see also In re Southmark Corp.*, 49 F.3d 1111, 1114 (5th Cir. 1995) (cash management system allows debtor "to administer more efficiently and effectively its financial operation and assets").

19.     Accordingly, bankruptcy courts routinely grant debtors authority to continue utilizing existing cash management systems and treat requests for such authority as a relatively "simple matter." *In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987); *see Charter Co. v. Prudential Ins. Co. of Am.* (*In re Charter Co.*), 778 F.2d 617, 621 (11th Cir. 1985) (holding that allowing the debtors to use their prepetition "routine cash management system" was entirely consistent with applicable provisions of the Bankruptcy Code). Courts in this circuit have recognized that allowing a debtor to maintain existing cash management systems is often appropriate. *See, e.g.*, *In re Genesis Health Ventures, Inc.*, 402 F.3d 416, 424 (3d Cir. 2005); *In re Kindred Healthcare, Inc.*, 2003 WL 22327933, at *1 (Bankr. D. Del, Oct. 9, 2003); *In re Columbia Gas Sys.*, 997 F.2d at 1061 (recognizing that a requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient").

20.     The Debtors represent that if the relief requested is granted, they will implement appropriate mechanisms to ensure that no payments will be made on any debts incurred by them prior to the Petition Date, other than those authorized by the Court. To prevent the possible inadvertent payment of prepetition claims, except for those otherwise authorized by the Court, the Debtors will work closely with the Cash Management Banks to ensure appropriate procedures are in place to prevent checks issued prepetition from being honored absent the Court's approval.

21.     The Debtors also request authorization to continue to use all correspondence and business forms existing immediately before the Petition Date without reference to the Debtors' status as debtors in possession. While the Debtors do not currently have any business forms associated with the Current Bank Account, the Debtors believe that it would be prudent and most efficient to maintain the business forms for the Former Bank Accounts until they are fully transitioned to the Current Bank Account. The Debtors, in the ordinary course of their business, use many checks, invoices, letterhead, stationery, purchase orders, and other correspondence and

business forms associated with the Former Bank Accounts.  To operate in an orderly fashion, the

Debtors need to be permitted to use their existing forms for the Former Bank Accounts without

alteration or change.  The Debtors believe that it would be costly and inefficient to change the

business forms associated with the Former Bank Accounts during the transition period.

22.     Notwithstanding the foregoing, upon the depletion of any pre-printed check stock

and other business forms, the Debtors will obtain new check stock and business forms reflecting

their status as debtors-in-possession, and with respect to checks which the Debtors or their agents

print themselves, the Debtors will begin printing "Debtor-in-Possession" or "DIP" and the case

number for these chapter 11 cases on such items within ten (10) days of the date of the entry of the

Interim Order.

### III.     The Court Should Temporarily Suspend the Deposit Requirements of Section 345(b) of the Bankruptcy Code on an Interim Basis

23.     The Debtors request that the Court temporarily suspend the requirements of section

345(b) of the Bankruptcy Code on an interim basis and permit them to maintain their deposits in

their accounts in accordance with their existing deposit practices until such time as the Debtors

obtain the Court's approval to deviate from the guidelines imposed under section 345(b) of the

Bankruptcy Code on a final basis, to the extent necessary.

24.     Section 345(a) of the Bankruptcy Code authorizes deposits or investments of

money of a bankruptcy estate, such as cash, in a manner that will "yield the maximum reasonable

net return on such money, taking into account the safety of such deposit or investment."  11 U.S.C.

§ 345(a).  For deposits or investments that are not "insured or guaranteed by the United States or

by a department agent or instrumentality of the United States or backed by the full faith and credit

of the United States," section 345(b) of the Bankruptcy Code provides that the estate must require

from the entity with which the money is deposited or invested a bond in favor of the United States secured by the undertaking of an adequate corporate surety.  11 U.S.C. § 345(b).

25.     However, a court may relieve a debtor in possession of the restrictions imposed by section 345(b) of the Bankruptcy Code for "cause."  11 U.S.C. § 345(b).  Local Rule 2015-1(b) provides that the Court "may grant an interim waiver of the [section 345(b)] requirements pending a final hearing (i) if the debtor has more than 200 creditors or (ii) for cause shown."  Del. Bankr. L.R. 2015-1(b).  As this Motion is being filed on the Petition Date and the Debtors have in excess of 200 potential creditors, the Debtors request that the Court enter an order temporarily suspending, on an interim basis, for a period of thirty (30) days from the entry of the Interim Order, the requirements of section 345(b) of the Bankruptcy Code.

26.     All of the Debtors' Bank Accounts are maintained at U.S. Trustee-approved depository institutions.  However, out of an abundance of caution, the Debtors request a temporary suspension of the requirements of section 345(b) of the Bankruptcy Code to provide them with the required time to come into compliance or seek appropriate relief in the event that it is discovered that any Bank Account is not maintained at an authorized depository.  Given the relative security of the Cash Management System, the Debtors submit that cause exists to grant a temporary suspension of the requirements of section 345(b) in the manner requested herein.

## IV.   The Court Should Authorize the Debtors to Use, Upon the Entry of the Final Proposed Order, the Garnished Funds in the Garnished Accounts

27.     As described above, the Garnished Funds in the Garnished Accounts have been restricted from the Debtors' use.  By this Motion, the Debtors seek confirmation that, having commenced these chapter 11 cases, the Debtors may nevertheless use, upon entry of the Final Order, the Garnished Funds in the ordinary course of business.

28.     Any further action to collect on prepetition amounts owed violate sections 362(a)(1)–(3) of the Bankruptcy Code.  *See* 11 U.S.C. § 326(a)(1)–(3).  To the extent that there is any conflict between the writ of execution restricting the Garnished Accounts and sections 362(a)(1)–(3) of the Bankruptcy Code, the Bankruptcy Code preempts any such writ of execution under the Supremacy Clause of the United States Constitution, Article VI clause 2.  *See In re Quorum Health Corp.*, 2023 WL 2552399, at *11 (Bankr. D. Del. Mar. 16, 2023) ("[I]t has long been recognized that the Bankruptcy Code preempts a host of state laws regarding creditors rights." (citation omitted)); *In re Trib. Co. Fraudulent Conv. Litig.*, 946 F.3d 66, 82 (2d Cir. 2019) ("Once a party enters bankruptcy, the Bankruptcy Code constitutes a wholesale preemption of state laws regarding creditors' rights.").  Upon the filing of a bankruptcy petition, any efforts to enforce such writ of execution is of no further effect.  *See id.*

29.     Absent an order of the bankruptcy court making it clear that the writs of execution restricting the Garnished Accounts are overridden, the Cash Management Banks may be left in the difficult position of managing competing mandates.  To avoid confusion and potential peril for the Cash Management Banks, the Debtors request authority to continue to use the Garnished Funds in the Garnished Accounts in the ordinary course of business, despite any service on the Cash Management Banks of any writ or enforcement action with respect to the prepetition amounts owed to Commercial Investigations LLC.

30.     The Court may also exercise its equitable powers to grant the relief requested herein.  As discussed above, section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Authorizing the Debtors' use of the Garnished Accounts, as provided for herein, will foster the success of these chapter 11 cases by providing the Debtors with the use of their cash to operate their businesses and preserve the value of their assets for the benefit of all

stakeholders, and it is within the Court's equitable power under section 105(a) of the Bankruptcy Code to approve the use of such funds.

## SATISFACTION OF BANKRUPTCY RULE 6003

31.    Pursuant to Bankruptcy Rule 6003(b), any motion seeking to use property of the estate pursuant to section 363 of the Bankruptcy Code or to satisfy prepetition claims within twenty-one (21) days of the Petition Date requires the Debtors to demonstrate that such relief "is necessary to avoid immediate and irreparable harm."  Fed. R. Bankr. P. 6003.  As set forth throughout this Motion, any disruption of the current Cash Management System would substantially diminish or impair the Debtors' efforts in these chapter 11 cases to preserve and maximize the value of their estates.

32.    For this reason and those set forth above, the Debtors respectfully submit that Bankruptcy Rule 6003(b) has been satisfied, and the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates.

## WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)

33.    Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  As provided herein, and to implement the foregoing successfully, the Debtors request that the Proposed Orders include a finding that the Debtors have established cause to exclude such relief from the fourteen (14)-day stay period under Bankruptcy Rule 6004(h).

34.    For this reason and those set forth above, the Debtors submit that ample cause exists to justify a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable to the Proposed Orders.

## **RESERVATION OF RIGHTS**

35.     Nothing in the Proposed Orders or this Motion:  (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority, or amount of any claim against the Debtors and their estates; or (c) shall be construed as a promise to pay a claim.

## **NOTICE**

36.     Notice of this Motion has been provided to:  (i) U.S. Trustee; (ii) the Debtors' twenty (20) largest unsecured creditors; (iii) counsel to the Debtors' Secured Lenders; (iv) the office of the attorney general for each of the states in which the Debtors operate; (v) the Office of the United States Attorney for the District of Delaware; (vi) the Internal Revenue Service; (vii) the United States Department of Justice; (viii) the Cash Management Banks; and (ix) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002.  Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

*[Remainder of Page Left Intentionally Blank]*

## CONCLUSION

WHEREFORE, the Debtors request entry of the Proposed Orders, granting the relief requested herein and such other and further relief as is just and proper.

Dated:  July 6, 2025
          Wilmington, Delaware

**MORRIS JAMES LLP**

*/s/ Christopher M. Donnelly*
Carl N. Kunz, III (DE Bar No. 3201)
Jeffrey R. Waxman (DE Bar No. 4159)
Christopher M. Donnelly (DE Bar No. 7149)
Samantha L. Rodriguez (DE Bar No. 7524)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail:  ckunz@morrisjames.com
       jwaxman@morrisjames.com
       cdonnelly@morrisjames.com
       srodriguez@morrisjames.com

*Proposed Counsel for Debtors and Debtors-in-Possession*

17409598