**Exhibit B**

**Summary of Material Terms of DIP Facility**

17414769

| Summary of Material Terms of DIP Facility |||
|---|---|---|
| **Borrowers** Bankruptcy Rule 4001(c)(1)(B) | The Debtors. | DIP Note, at 1 |
| **Guarantors** Bankruptcy Rule 4001(c)(1)(B) | None. | |
| **DIP Lenders** Bankruptcy Rule 4001(c)(1)(B) | Serengeti Multi-Series Master LLC-Series ARR, GT Partners Private Credit Finance LLC and GT Monterey Cypress Finance LLC (collectively, the "**DIP Lenders**"). | DIP Note, at 32 |
| **DIP Agent** Bankruptcy Rule 4001(c)(1)(B) | Ankura Trust Company, LLC (the "**DIP Agent**"). | DIP Note, at 1 |
| **DIP Facility** Bankruptcy Rule 4001(c)(1)(B) | A senior secured super-priority priming debtor-in-possession delayed draw term facility in an aggregate principal amount equal to $9,650,000. | DIP Note, at 1 |
| **Borrowing Limits** Bankruptcy Rule 4001(c)(1)(B); Local Rule 4001-2(a)(i)(A) | <ul><li>Interim: $2,000,000 million.</li><li>Final: $9,900,000 million</li></ul> | DIP Note, at 2, 28, and 32 |
| **Budget** Bankruptcy Rule 4001(c)(1)(B) | <ul><li><u>Annex 3</u> to the Interim Order.</li></ul> | Interim Order, Annex 3 |
| **Interest Rate** Bankruptcy Rule 4001(c)(1)(B) | <ul><li><u>Interest Rate</u>: 13.5% per annum.</li><li><u>Default Interest</u>: + 2.00% per annum</li></ul> | DIP Note, at 5 |
| **Economic Terms and Fees** Bankruptcy Rule 4001(c)(1)(B); Local Rule 4001-2(a)(i)(B) | <ul><li><u>Expense Reimbursement</u>: all reasonable and documented out-of-pocket fees, costs and expenses incurred (whether incurred prior or subsequent to the Petition Date) by the DIP Lenders or DIP Agent.</li><li><u>DIP Agent Fee</u>: The DIP Agent will receive a fee per annum on the same terms as the Prepetition Credit Agreement (the "**DIP Agent Fee**").</li></ul> | DIP Note, at 7, 8 and 27; Interim Order ¶ 7(b) |
| **Maturity Date** Bankruptcy Rule 4001(c)(1)(B) | <ul><li>Earliest of (such date, the "**Maturity Date**"):<ul><li>one hundred twenty (120) days after the Petition Date or such later date agreed to by the DIP Lenders (such date, the "**Stated Maturity Date**"),</li><li>the closing on the Stalking Horse APA or a competing transaction,</li><li>the date on which the DIP Obligations are declared to be, or otherwise become, due and payable in full due to the occurrence of an Event of Default, and</li><li>the date of delivery of a Termination Notice.</li></ul></li></ul> | DIP Note, at 31 and 34 |
| **Collateral and Priority** Bankruptcy Rule 4001(c)(1)(B)(i), 4001(c)(1)(B)(ii); Local Rule 4001-2(a)(i)(U) | Collateral:<br><ul><li>All Collateral (as defined in the Prepetition Credit Agreement) (the "**Prepetition Collateral**".</li><li>The DIP Facility shall be secured by the following (collectively, the "**DIP Collateral**" and the liens on and security interests therein, the "**DIP Liens**"):<ul><li>Pursuant to section 364(d)(1) of the Bankruptcy Code, first priority (subject to liens permitted under the DIP Loan</li></ul></li></ul> | DIP Note, at 7 and 27; Interim Order ¶¶ 9-10 |

1

17416824/1

| | | |
|---|---|---|
| | <ul><li>Documents) priming liens (the "**Priming DIP Liens**") on the Prepetition Collateral, senior in priority to the Prepetition Liens.<ul><li>Pursuant to section 364(c)(2) of the Bankruptcy Code, first priority liens on any unencumbered assets.</li><li>Pursuant to section 364(c)(3) of the Bankruptcy Code, junior priority liens (the "**Junior DIP Liens**") on all assets that are subject to valid, perfected and unavoidable liens in favor of third parties that were in existence immediately prior to the Petition Date or that were perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code (collectively, the "**Permitted Prior Senior Liens**").</li><li>Proceeds of all present and future assets and property of the estates of Borrowers under section 541(a) of the Bankruptcy Code (including, without limitation, the proceeds of claims and causes of action under chapter 5 of the Bankruptcy Code).</li></ul></li><li>The DIP Liens are subject and subordinate to the Carve-Out and the Permitted Prior Senior Liens.</li></ul>Excluded Property:<ul><li>The DIP Collateral shall not include claims and causes of causes of action under (a) Bankruptcy Code sections 502(d), 544, 545, 547, 548, 550 or 553 or any other avoidance actions under the Bankruptcy Code or applicable non-bankruptcy law (collectively the "**Avoidance Actions**") or (b) Bankruptcy Code sections 506(c) or 550 ("**Recovery Actions**"); <u>provided</u>, <u>however</u>, that, subject to entry of the Final Order, the DIP Collateral shall include the proceeds of Avoidance Actions (the "**Avoidance Action Proceeds**") and Recovery Actions (the "**Recovery Action Proceeds**").</li></ul>Justification. The Debtors respectfully submit that the adequate protection liens on the Avoidance Actions and Avoidance Proceeds, and the Recovery Actions and Recovery Action Proceeds, are narrowly tailored and an integral component of the Proposed Orders without which the Prepetition Secured Parties would not have consented to the use of Cash Collateral. The Debtors respectfully submit, moreover, that liens on the Avoidance Actions, Avoidance Proceeds, Recovery Actions, and Recovery Action Proceeds are otherwise customary and consistent with adequate protection granted in, and orders entered in, other large and complex chapter 11 cases providing for the consensual use of Cash Collateral. | |
| **Events of Default**<br>Bankruptcy Rule 4001(c)(1)(B); Local Rule 4001-2(a)(i)(M) | "**Event of Default**":<ul><li>Borrowers (i) shall fail to make any payment of principal or interest on, or fees owing in respect of the DIP Loans or any of the other DIP Obligations within two (2) Business Days of when due and payable or (ii) shall fail to pay or reimburse DIP Agent or DIP Lenders for any expense reimbursable hereunder or under any other DIP Loan Document in accordance with the Interim Order or Final Order, as applicable.</li><li>Any representation or warranty in the DIP Note or in any other DIP Loan Document or in any written statement, report, financial statement, or certificate made or delivered to DIP Agent or DIP Lenders by Borrowers is untrue or incorrect in any material respect as of the date when made or deemed made.</li></ul> | DIP Note, at pp. 15-18 |

- Any provision of any DIP Loan Document shall for any reason cease to be valid, binding, and enforceable in accordance with the terms of such DIP Loan Document (or any Borrower shall challenge the enforceability of any DIP Loan Document or shall assert in writing, or engage in any action or inaction based on any such assertion, that any provision of any DIP Loan Document has ceased to be or otherwise is not valid, binding, and enforceable in accordance with terms of such DIP Loan Document), or any DIP Lien created under any DIP Loan Document shall cease to be a valid and perfected first priority DIP Lien (except as otherwise permitted herein or therein) in any of the DIP Collateral purported to be covered thereby.
- There shall be a change in the business, assets, operations, or financial condition of Borrowers that results in a Material Adverse Effect (as defined in the DIP Note), other than those customarily caused by commencing a case under chapter 11 of the Bankruptcy Code and other than a sale pursuant to the terms of the Stalking Horse APA that, if made to a person other than DIP Lenders or DIP Lenders' assignee or designee, results in the indefeasible payment in full in cash of the DIP Obligations.
- A line-item deviation in actual cash disbursements or receipts from the DIP Budget in excess of such line item's Permitted Variance (as defined in the DIP Note) shall occur.
- Any event constituting an event of default or termination event as set forth in the Interim Order or Final Order, as applicable (each, a "**Termination Event**") shall occur.
- Any of the following shall occur:
- (i) any milestone set forth on Annex 4 to the Interim Order shall not have been satisfied,
- (ii) the Stalking Horse APA is terminated,
- (iii) a motion or other pleading is filed in any of the chapter 11 cases to dismiss or convert such chapter 11 case to a case under chapter 7 of the Bankruptcy Code, which motion or pleading is not withdrawn, overruled, or dismissed by the Court within fourteen (14) calendar days,
- (iv) a motion or other pleading is filed in any of the chapter 11 cases for entry of an order authorizing the appointment of an interim or permanent trustee in such chapter 11 case or the appointment of an examiner (other than a fee examiner) in such chapter 11 case, which motion or pleading is not withdrawn, overruled or dismissed by the Court within fourteen (14) calendar days,
- (v) any Borrower moves in the chapter 11 cases (or fails to contest in good faith a motion brought by any other person) to approve a sale or other disposition of substantially all of Debtors' assets that does not provide for the indefeasible payment in full in cash of the DIP Obligations and termination of commitment of DIP Lenders to make DIP Loans without the consent of DIP Lenders in their sole discretion,
- (vi) any Borrower moves for (or fails to contest in good faith a motion brought by any other person), or the Court enters, an order confirming a chapter 11 plan, which plan is not in form and substance acceptable to DIP Lenders in their sole discretion,
- (vii) any Borrower moves in the chapter 11 cases (or fails to contest in good faith a motion brought by any other person or such motion succeeds): (A) to grant any DIP Lien other than Permitted Prior Senior

3

|  | Liens upon or affecting any DIP Collateral other than in connection with any replacement credit facility that provides for indefeasible payment in full of all DIP Obligations; (B) to recover from any portion of the DIP Collateral any costs or expenses of preserving or disposing of such DIP Collateral under section 506(c) of the Bankruptcy Code; or (C) to authorize any other action or actions adverse to DIP Lenders, or DIP Agent's or DIP Lenders' rights and remedies as provided in the DIP Note or DIP Agent's or DIP Lender's interests in the DIP Collateral, that would, individually or in the aggregate, have a Material Adverse Effect (as defined in the DIP Note), |  |
|---|---|---|
|  | <ul><li>(viii) the allowance of any claim or claims under section 506(c) of the Bankruptcy Code against or with respect to any DIP Collateral,</li><li>(ix) the Interim or Final Order is reversed, vacated, revoked, stayed, amended, supplemented, or otherwise modified in any manner without the prior written consent of DIP Lenders in their sole discretion,</li><li>(x) the occurrence of any post-petition judgments, liabilities or events that, individually or in the aggregate, could reasonably be expected to have a Material Adverse Effect (as defined in the DIP Note),</li><li>(xi) the entry by the Court of an order authorizing the appointment of an interim or permanent trustee in the chapter 11 cases or the appointment of an examiner (other than a fee examiner) in the Chapter 11 cases,</li><li>(xii) the chapter 11 cases, or any of them, shall be dismissed or converted from cases under chapter 11 to cases under chapter 7 of the Bankruptcy Code without the consent of DIP Lenders,</li><li>(xiii) the entry of an order in the chapter 11 cases avoiding or requiring repayment of any portion of the payments made to DIP Lenders on account of the DIP Obligations owing under the DIP Note or the other DIP Loan Documents,</li><li>(xiv) the entry of an order in the chapter 11 cases granting any other superpriority administrative claim or Lien equal to or superior to that granted to agent for the benefit of DIP Lenders, unless consented to by DIP Lenders in their sole discretion,</li><li>(xv) the entry of an order by the Court granting relief from or modifying the automatic stay of section 362 of the Bankruptcy Code (A) to allow any creditor (other than DIP Lenders) to execute upon or enforce a Lien on any DIP Collateral or (B) with respect to any Lien of or the granting of any Lien on any DIP Collateral to any state or local environmental or regulatory agency or authority that could reasonably be expected to have a Material Adverse Effect (as defined in the DIP Note),</li><li>(xvi) there shall commence any suit or action against DIP Lenders by or on behalf of (A) any Borrower or (B) any official committee (the "**Committee**"), in each case, that constitutes a challenge or that asserts a claim or seeks a legal or equitable remedy that would have the effect of subordinating the claim or DIP Lien of DIP Agent for the benefit of DIP Lenders and, if such suit or action is commenced by any person other than a Borrower, such suit or action shall not have been dismissed or stayed within ten (10) calendar days after service thereof on DIP Agent and DIP Lenders, and, if stayed, such stay shall have been lifted, and</li></ul> |  |

4

| | | |
|---|---|---|
| | ▪ (xvii) Borrowers shall fail or neglect to perform, keep, or observe any of the provisions of the DIP Note that is not the subject of any other clause of Section 16 therein, and such failure remains uncured for five (5) Business Days after notice. | |
| **Cross-Collateralization and Administrative Expense Status** Local Rule 4001-2(a)(i)(N) | The Interim Order does not provide for cross-collateralization, other than adequate protection liens. The Interim Order provides for the superpriority claims to the extent of any diminution in value of the interests of the Prepetition Secured Parties in the Prepetition Collateral. | Interim Order, ¶ 17 |
| **Milestones** Bankruptcy Rule 4001(c)(1)(B)(vi); Local Rule 4001-2(a)(i)(H) | ▪ [Any milestones set forth on Annex 4 to the Interim Order<br><br>The Milestones may be extended or waived upon mutual agreement of the Debtors and the DIP Agent (acting at the direction of the DIP Lenders (in their sole discretion)) or as necessary to accommodate the Court's availability. | DIP Note, at p. 16 |
| **Non-Consensual Priming Liens** Local Rule 4001-2(a)(i)(P) | None. | |
| **Roll-Up** Local Rule 4001-2(a)(i)(O) | Upon entry of the Final Order, a roll-up of certain Prepetition Loan Obligations incurred from and after April 25, 2025 in an aggregate principal amount equal to $3,865,148 (the "**Prepetition Credit Agreement Roll-Up**").<br><br>Justification. The Debtors and the Prepetition Secured Parties negotiated the Prepetition Credit Agreement Roll-Up extensively and at arm's length. The Debtors respectfully submit that the Prepetition Credit Agreement Roll-Up is an integral component of the DIP Orders without which the Prepetition Secured Parties would not have entered into the DIP Facility or consented to the use of Cash Collateral. The Debtors respectfully submit, moreover, that the Prepetition Credit Agreement Roll-Up remains subject to entry of the Final Order and is customary and consistent with orders entered in other large and complex chapter 11 cases providing for DIP Funding and the consensual use of Cash Collateral. | DIP Note, at 1(b); Interim Order p. 2 |
| **Carve Out** Bankruptcy Rule 4001(b)(1)(B)(iii); Local Rule 4001-2(a)(i)(F) | The Interim Order provides for a carve-out of the liens and claims of the Prepetition Secured Parties for (i) All fees required to be paid to the Clerk of Court and to the Office of the United States Trustee; (ii) All reasonable and documented fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code and allowed by the Bankruptcy Court in an amount not to exceed $25,000; and (iii) all unpaid fees and expenses of Retained Professionals by the Debtors or the Committee appointed in these chapter 11 cases, including any success fees payable to the Debtors' investment banker ("**Success Fees**") that were incurred (A) on and after the Petition Date and before the Carve-Out Trigger Date (defined below), and (B) on and after the Carve-Out Trigger Date in an aggregate amount not exceeding $100,000 plus any Success Fees payable to the Debtors' investment banker that are incurred on or after the Carve-Out Trigger Date (the foregoing clause (B) being the "**Post Carve-Out Cap**"). | Interim Order ¶ 11 |

5

17416824/1

| | | |
|---|---|---|
| **Prepayments**<br>Bankruptcy Rule 4001(c)(1)(B);<br>Local Rule 4001-2(a)(i)(I) | Optional Prepayments:<br>▪ Borrower shall have the right at any time and from time to time to prepay the principal of the DIP Loans in whole or in part without penalty or premium. Any prepayment or repayment hereunder shall be accompanied by accrued interest on the principal amount of the DIP Loans being prepaid or repaid to the date of prepayment or repayment.<br>Mandatory Prepayments:<br>▪ <u>Asset Dispositions</u>. Immediately upon receipt by Borrowers of cash proceeds of any asset disposition, unless DIP Lenders agree otherwise, Borrowers shall prepay the DIP Loans, together with accrued interest thereon, in an amount equal to 100% of such proceeds, net of (i) reasonable commissions and other reasonable and customary transaction costs, fees, and expenses properly attributable to such transaction and payable by Borrowers in connection therewith as approved by the Court (in each case, paid to non-affiliates), (ii) transfer or sales taxes, and (iii) amounts required to be applied to the repayment of debt secured by such assets sold, to the extent such debt or such liens are senior in priority to the payment of the DIP Obligations or DIP Agent's Liens on behalf of DIP Lenders securing the DIP Obligations. Any such prepayment shall be applied in accordance with Section 5 of the DIP Note.<br>▪ <u>Extraordinary Receipts</u>[1]. Upon the receipt by Borrowers Extraordinary Receipts, Borrowers shall prepay the outstanding principal of the DIP Loans in an amount equal to 100% of such Extraordinary Receipts, net of any reasonable expenses incurred in collecting such Extraordinary Receipts. Any such prepayment shall be applied in accordance with Section 5 of the DIP Note.<br>▪ <u>Excess Cash</u>. Borrower shall prepay the DIP Loans to the extent Borrowers have excess cash above amounts reasonably necessary or anticipated to pay all expenses and other obligations (including any mandatory prepayments under the DIP Note) then due and payable and taking into account the prospective funding needs in the DIP Budget, with any such prepayment to be in an amount equal to such excess cash amount and to be payable within two (2) business days after any such excess cash amount is obtained by Borrowers. Any such prepayment shall be applied in accordance with Section 5 of the DIP Note.<br>▪ <u>No Implied Consent</u>. Nothing in the DIP Note shall be construed to constitute DIP Lenders' consent to any transaction that is not permitted by other provisions of the DIP Note or the other DIP Loan Documents. For the avoidance of doubt, no reinvestment of the proceeds of any Extraordinary Receipts, asset sales or other proceeds of DIP Collateral shall be permitted without the prior written consent of DIP Lenders in their sole and absolute discretion. | DIP Note, at ¶¶ 6 and 7 |

---

[1] "Extraordinary Receipts" means any cash received by Borrowers not in the ordinary course of business (and not consisting of proceeds described Section 7(a) of the DIP Note), including, without limitation, (i) foreign, United States, state, or local tax refunds, (ii) pension plan reversions, (iii) proceeds of insurance, (iv) judgments, proceeds of settlements, or other consideration of any kind in connection with any cause of action, (v) condemnation awards (and payments in lieu thereof), (vi) indemnity payments, and (vii) any purchase price adjustment received in connection with any purchase agreement.

6

| | | |
|---|---|---|
| **Material Conditions to Closing, Reporting, and Budget Provisions** Local Rule 4001-2(a)(i)(E) | Attached as Annex 3 to the Interim Order is the DIP Budget, including anticipated uses of the Cash Collateral for such designated period.<br><br>The use of Cash Collateral shall be subject to compliance with the DIP Budget as described in the Proposed Orders.<br><br>On or before Wednesday of each calendar week commencing on the second week after the Petition Date, Borrowers agree to deliver to DIP Agent (i) a report of total receipts and total disbursements and (ii) a statement setting forth in reasonable detail the cash balance for each deposit account of Debtors as of the previous Friday.<br><br>Borrowers will provide DIP Agent with the following no later than 5:00 p.m. (prevailing Eastern Time) on Tuesday of each calendar week, commencing on July 8, 2025: a comparison of actual cash disbursements and cash receipts for the most recently ended Applicable Period (as defined below) to the DIP Budget for such Applicable Period and an explanation in reasonable detail of the variances between actual results and the DIP Budget for such Applicable Period and verifying whether or not such variances constitute Permitted Variances (as defined below).<br><br>"**Applicable Period**" means each of the First Applicable Period (period from the Petition Date to the last day of the calendar week commencing on Sunday and ending on the following Saturday (the "**Fiscal Week**") that is two Fiscal Weeks after the Petition Date), the Second Applicable Period (period from the Petition Date to the last day of the Fiscal Week that is three Fiscal Weeks after the Petition Date), the Third Applicable Period (period from the Petition Date to the last day of the Fiscal Week that is four Fiscal Weeks after the Petition Date), and each Rolling Applicable Period (each period of four (4) Fiscal Weeks, beginning with the period of four Fiscal Weeks ending on the last day of the Fiscal Week immediately following the Third Applicable Period and each Fiscal Week thereafter, which shall be reported on the last day of such week, in each case, on a rolling four-week basis), as applicable.<br><br>Borrowers agree to deliver to DIP Agent as soon as available, and in any event, no later than the fifth (5th) business day of each month (commencing on July 8, 2025), an update to the DIP Budget for the 13-week period commencing on the first day of each such month, in from and substance satisfactory to DIP Agent in its sole and absolute discretion.<br><br>Notwithstanding the DIP Budget, the following limited variances shall be permitted (each such variance, a "**Permitted Variance**") for any Applicable Period: any variance that does not result in (x) the total actual disbursements for any Applicable Period being greater than 110% of what is projected in the DIP Budget as "Total Outflows" for such period, and (y) the total actual receipts for any Applicable Period being more than 15% less than what is projected in the Approved Budget as "Total Receipts" for such period. Total actual disbursements and total receipts shall be determined in a manner consistent with the determination of "Total Disbursements" and "Total Receipts" in the Approved Budget. | DIP Note, at pp. 11, and 33; Interim Order, Annex 3 |
| **Superpriority Expense Claims** Bankruptcy Rule 4001(c)(1)(B)(i) | In respect of the DIP Obligations, the DIP Agent, for its own behalf and on behalf of the other DIP Secured Parties, is granted a superpriority administrative expense claim pursuant to section 364(c)(1) of the Bankruptcy Code with priority over all other administrative expenses | Interim Order ¶ 10(a) |

7

| | | |
|---|---|---|
| | pursuant to the Bankruptcy Code (the "**DIP Superpriority Claims**"), which such claims shall be subordinate to DIP Liens and the Carve-Out | |
| **Parties with an Interest in Cash Collateral**<br>Bankruptcy Rule 4001(b)(1)(B)(i) | Prepetition Secured Parties. | Interim Order ¶ 17(a) |
| **Use of Cash Collateral and Duration of Use**<br>Bankruptcy Rule 4001(b)(1)(B)(ii), Bankruptcy Rule 4001(b)(1)(B)(iii) | Upon entry of the Interim Order, the Debtors are authorized to use Prepetition Collateral (including Cash Collateral), subject to and as set forth in the DIP Budget, the Interim Order, and the DIP Loan Documents. | Interim Order ¶ 4 |
| **Determination Regarding Prepetition Claims**<br>Bankruptcy Rule 4001(c)(1)(B)(iii) | The Interim Order contains stipulations of fact by the Debtors, including those related to the validity, enforceability, and priority of the Debtors' Prepetition Liens and Prepetition Secured Obligations. | Interim Order, Annex 1 |
| **Effect of Debtors' Stipulations on Third Parties and Challenge Period**<br>Bankruptcy Rule 4001(c)(1)(B); Local Rule 4001-2(a)(i)(Q) | To the extent any of the Debtors' Stipulations are not subject to a Challenge timely and properly commenced by the Challenge Deadline, or to the extent any Challenge does not result in a final and non-appealable judgment or order of the Court that is inconsistent with the Debtors' Stipulations, then the Debtors' Stipulations shall become binding, conclusive, and final on any person, entity or party-in-interest in the chapter 11 cases, and their successors and assigns, and in any Successor Case for all purposes and shall not be subject to challenge or objection by any party-in-interest, including, without limitation, a trustee, responsible individual, examiner with expanded powers, or other representative of the Debtors' estates.<br><br>The "**Challenge Deadline**" shall be 75 days from entry of the Interim Order.<br><br>Justification. The Debtors respectfully submit that these stipulations are an integral component of the DIP Orders without which the Prepetition Secured Parties would not have consented to the use of Cash Collateral. The Debtors respectfully submit, moreover, that such stipulations remain subject to Challenge until the Challenge Deadline and are otherwise customary and consistent with orders entered in other large and complex chapter 11 cases providing for the consensual use of Cash Collateral. | Interim Order ¶ 15(a) |
| **Provisions Approving All Terms of the Loan Agreement**<br>Local Rule 4001-2(a)(i)(R) | None. | |
| **Provisions Limiting Arguments at** | None. | |

8

17416824/1

| | | |
|---|---|---|
| **Emergency Hearings**<br>Local Rule 4001-2(a)(i)(T) | | |
| **Investigations**<br>Local Rule 4001-2(a)(i)(L) | No portion or proceeds of the DIP Facility, DIP Collateral, the Prepetition Collateral, the Cash Collateral, or the Carve-Out, and no disbursements set forth in the DIP Budget may be used by the Debtors or any other party in interest, or their representatives, to (or support any other party to) pay professional fees, disbursements, costs, or expenses incurred in connection with: (a) investigating, analyzing, commencing, prosecuting, threatening, litigating, objecting to, contesting, challenging in any manner or raising any defense to the validity, perfection, priority, or enforceability of, or any amount due under, the DIP Loan Documents or the Prepetition Credit Agreement Documents or any security interests, liens, or claims granted under this Interim Order, the DIP Loan Documents, or the Prepetition Credit Agreement Documents to secure such amounts; (b) asserting any Challenges, claims, actions, or causes of action against any of the DIP Secured Parties or the Prepetition Secured Parties or any of their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys, or advisors; (c) contesting the Debtors' Stipulations; (d) preventing, hindering, or otherwise delaying the DIP Agent's or the DIP Lenders' assertion, enforcement, or realization on the DIP Collateral or the exercise of rights by the DIP Agent or the DIP Lenders once an Event of Default has occurred and is continuing (following the Remedies Notice Period); (e) seeking to modify the rights granted to the DIP Agent or the DIP Lenders under the DIP Loan Documents without the prior written consent of the DIP Lenders; or (f) paying any amount on account of any claims arising prior to the Petition Date unless such payments are approved by an order of the Court (which order may be this Interim Order or the Final Order) and permitted by the DIP Loan Documents; provided that prior to the Challenge Deadline no more than $50,000 in the aggregate of the proceeds of the DIP Facility, the DIP Collateral, the Prepetition Collateral, the Cash Collateral, and the Carve-Out may be used by the Committee, if any, to investigate (but not prepare, initiate, litigate, prosecute, object to, or Challenge) the Debtors' Stipulations. | Interim Order ¶ 16 |
| **Postpetition Liens on Unencumbered Assets**<br>Local Rule 4001-2(a)(i)(G) | Subject to the Carve-Out, in respect of the DIP Obligations, the DIP Agent, for its own behalf and on behalf of the other DIP Secured Parties, is granted a first priority security interest and lien pursuant to section 364(c)(2) of the Bankruptcy Code on all Unencumbered Collateral of the Debtors (the "**Section 364(c)(2) Liens**"), including, subject to entry of the Final Order, Avoidance Action Proceeds and proceeds of Recovery Actions. | Interim Order ¶ 10(c) |
| **Waiver or Modification of the Automatic Stay**<br>Bankruptcy Rule 4001(c)(1)(B)(iv); Local Rule 4001-2(a)(i)(S) | The automatic stay is modified to the extent necessary to permit the DIP Agent (acting at the direction of the DIP Lenders) to take any or all of the following actions, at the same or different times, in each case without further order or application to the Court, immediately upon the date of delivery of a written notice (a "**Default Notice**" and the date of delivery of such Default Notice, the "**DIP Termination Date**") by the DIP Agent (at the direction of the DIP Lenders) to the Debtors, counsel for the Committee, if any, and the U.S. Trustee:<br>(i) immediately upon the occurrence and during the continuance of an Event of Default under the DIP Loan Documents or upon the Maturity Date, (A) declare the termination, reduction, or restriction of any applicable further DIP Commitment to the extent any further DIP Commitment remains, (B) cease making financial accommodations to the Debtors, (C) declare all applicable DIP Obligations to be immediately due, | Interim Order ¶ 20(a) |

9

17416824/1

| | | |
|---|---|---|
| | owing and payable in full and in cash, without presentment, demand, protest, or other notice of any kind, all of which are expressly waived by the Debtors, (D) terminate the DIP Loan Documents as to any future liability or obligation of the DIP Agent or the DIP Lenders with respect to the DIP Commitments thereunder, and (E) apply the Carve-Out through the delivery of a Carve-Out Trigger Notice, and | |
| | (ii) upon the occurrence and continuation of an Event of Default or upon the Maturity Date and after providing five (5) Business Days' prior written notice to the Court (the "**Remedies Notice Period**") (which period shall run concurrently with any notice required to be provided under the DIP Loan Documents) via email to counsel to the Debtors, the U.S. Trustee, and counsel to the Committee, if any, the DIP Agent (acting at the direction of the DIP Lenders) shall be entitled to (A) exercise all of its rights and remedies under the Interim Order, the DIP Loan Documents, and otherwise available under applicable law, including, without limitation, foreclose upon the DIP Collateral or otherwise enforce the DIP Obligations, the DIP Liens, and the DIP Superpriority Claims on any or all of the DIP Collateral and to exercise any other default-related remedies under the DIP Loan Documents, the Interim Order, or applicable law in seeking to recover payment of the DIP Obligations, and (B) withdraw consent to the Debtors' continued use of Cash Collateral. | |
| | <u>Justification</u>.  The Debtors respectfully submit that the limited modifications enumerated herein are an integral component of the DIP Orders without which the Prepetition Secured Parties would not have consented to the use of Cash Collateral.  The Debtors respectfully submit, moreover, that such limited modifications are narrowly tailored to give effect to the DIP Orders and are otherwise customary and consistent with orders entered in other large and complex chapter 11 cases providing for the consensual use of Cash Collateral. | |
| **Waiver or Modification of Authority to File a Plan, Extend Time to File Plan, Request Use of Cash Collateral, or Request Authority to Obtain Credit**<br>Bankruptcy Rule 4001(c)(1)(B)(v) | None. | |
| **Waiver or Modification of Applicability of Non-Bankruptcy Law Relating to the Perfection or Enforcement of a Lien**<br>Bankruptcy Rule 4001(c)(1)(B)(vii) | The (i) DIP Liens granted to the DIP Agent (on behalf of the DIP Agent and the other DIP Secured Parties) pursuant to the Interim Order and the DIP Loan Documents and (ii) Adequate Protection Liens granted pursuant to the Interim Order to the Prepetition Secured Parties shall be valid, enforceable, and perfected by operation of law upon entry of the Interim Order by the Court without any further action by any party, including any filing or recording that may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action and the Interim Order shall be sufficient and conclusive evidence of the creation, validity, perfection, and priority of all liens granted herein, including the DIP Liens and the Adequate Protection Liens.  Neither the DIP Agent or the other DIP Secured Parties in respect of the DIP Liens, nor the Prepetition Credit Agreement Agent or the other Prepetition Secured | Interim Order ¶ 14(a), Annex 1 ¶ 5 |

| | | |
|---|---|---|
| | Parties in respect of the Adequate Protection Liens, shall be required to enter into or to obtain any control agreements, landlord waivers (unless required by law or contract), mortgagee waivers, bailee waivers, or warehouseman waivers or to give, file, or record any UCC-1 financing statements, mortgages, deeds of trust, leasehold mortgages, notices to account debtors or other third parties, notices of lien, or similar instruments in any jurisdiction or filings with the United States Patent and Trademark Office, the United States Copyright Office, or any similar agency in respect of trademarks, copyrights, trade names, or patents with respect to intellectual property (collectively, the "**Perfection Documents**"), or obtain consents from any licensor or similarly situated party in interest, or take any other action to validate, record, or perfect the DIP Liens granted under the DIP Loan Documents and the Interim Order and the Adequate Protection Liens granted under the Interim Order and approved therein, all of which are automatically and immediately perfected by the entry of the Interim Order. If the DIP Agent or any other DIP Secured Party or any Prepetition Secured Party, independently or collectively, in each case in their respective sole discretion, choose to obtain, enter into, give, record, or file any Perfection Documents, (x) all such Perfection Documents shall be deemed to have been obtained, entered into, given, recorded, or filed, as the case may be, as of the Petition Date, (y) no defect in any such act shall affect or impair the validity, perfection, priority, or enforceability of the DIP Liens and Adequate Protection Liens, and (z) such liens shall have the relative priority set forth herein notwithstanding the timing of filing of any such Perfection Documents. In lieu of optional recording or filing any Perfection Documents, the DIP Agent (acting at the direction of the DIP Lenders) may, in the DIP Agent's sole discretion, choose to record or file a true and complete copy of the Interim Order in any place that any Perfection Document would or could be recorded or filed (which may include a description of the collateral appropriate to be indicated in a recording or filing at such place of recording or filing), and such recording or filing by the DIP Agent or any other DIP Secured Party shall have the same effect as if such Perfection Document had been filed or recorded as of the Petition Date.<br><br>The Debtors admit, stipulate, and agree that, pursuant to the Prepetition Credit Agreement Documents, the Prepetition Secured Obligations are secured by legal, valid, binding, perfected, enforceable and nonavoidable first priority security interests in and liens upon the Prepetition Collateral.<br>The Debtors acknowledge and agree that as of the Petition Date (a) the Prepetition Credit Agreement Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable and properly perfected and were granted to, or for the benefit of, the Prepetition Secured Parties for fair consideration and reasonably equivalent value, and (b) the Prepetition Credit Agreement Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject only to Permitted Prior Senior Liens. | |
| **Release, Waivers or Limitation on any Claim or Cause of Action**<br>Bankruptcy Rule 4001(c)(1)(B)(iii); 4001(c)(1)(B)(viii) | To the extent any of the Debtors' Stipulations are not subject to a Challenge timely and properly commenced by the Challenge Deadline, or to the extent any Challenge does not result in a final and non-appealable judgment or order of the Court that is inconsistent with the Debtors' Stipulations, then, without further notice, motion, or application to, order of, or hearing before, the Court and without the need or requirement to file any proof of claim, the Debtors' Stipulations shall pursuant to the Interim Order become binding, conclusive, and final on any person, entity or party- | Interim Order ¶ 15(b); Annex 1 ¶ 7 |

11

| | | |
|---|---|---|
| | in-interest in the chapter 11 cases, and their successors and assigns, and in any Successor Case for all purposes and shall not be subject to challenge or objection by any party-in-interest, including, without limitation, a trustee, responsible individual, examiner with expanded powers, or other representative of the Debtors' estates.  Notwithstanding anything to the contrary Interim Order, if any such proceeding is properly and timely commenced, the Debtors' Stipulations shall nonetheless remain binding unless such Challenge is successful pursuant to an order or judgment that is final and no longer subject to appeal or further review.<br><br>Subject to (in addition to paragraph 15 of the Interim Order) entry of the Final Order, each Prepetition Credit Agreement Loan Party, on its own behalf and on behalf of each of its past, present and future predecessors, successors, heirs, subsidiaries, and assigns, hereby forever, unconditionally, permanently, and irrevocably releases, discharges, and acquits each of the Prepetition Secured Parties, and each of their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders, and employees, past, present and future, and their respective heirs, predecessors, successors and assigns (collectively, the "**Prepetition Secured Party Releasees**") of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without limitation, attorneys' fees), debts, liens, actions, and causes of action of any and every nature whatsoever, whether arising in law or otherwise, and whether known or unknown, matured or contingent, arising under, in connection with, or relating to the Prepetition Secured Obligations or the Prepetition Credit Agreement Documents, including, without limitation, (a) any so-called "lender liability" or equitable subordination claims or defenses, (b) any and all "claims" (as defined in the Bankruptcy Code) and causes of action arising under the Bankruptcy Code, and (c) any and all offsets, defenses, claims, counterclaims, set off rights, objections, challenges, causes of action, and choses in action of any kind or nature whatsoever, whether arising at law or in equity, including any recharacterization, recoupment, subordination, avoidance, or other claim or cause of action arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state, federal, or foreign law, including, without limitation, any right to assert any disgorgement or recovery, in each case, with respect to the extent, amount, validity, enforceability, priority, security, and perfection of any of the Prepetition Secured Obligations, the Prepetition Credit Agreement Documents, or the Prepetition Liens, and further waive and release any defense, right of counterclaim, right of setoff, or deduction to the payment of the Prepetition Secured Obligations that the Debtors now have or may claim to have against the Prepetition Secured Party Releasees, arising under, in connection with, based upon, or related to any and all acts, omissions, conduct undertaken, or events occurring prior to entry of the Interim Order. | |
| **Provision Limiting the Court's Power or Discretion to Enter Future Orders**<br>Local Rule | None. | |

12

17416824/1

| | | |
|---|---|---|
| 4001-2(a)(i)(C) | | |
| **Provision Providing for the Funding of Non-Debtor Affiliates** Local Rule 4001-2(a)(i)(D) | None. | |
| **Joint Liability of Debtors** Local Rule 4001-2(a)(i)(J) | The Debtors shall be jointly and severally liable for the obligations under the Interim Order and all DIP Obligations in accordance with the terms of the Interim Order and of the DIP Loan Documents. | Interim Order ¶ 5(a) |
| **Payment of Secured Parties' Fees without Review** Local Rule 4001-2(a)(i)(K) | Payment of the fees and expenses to the DIP Lender Advisors are subject to review by the U.S. Trustee and counsel to any official committee of unsecured creditors appointed in these chapter 11 cases. | Interim Order ¶ 7 (b) |
| **Indemnification** Bankruptcy Rule 4001(c)(1)(B)(ix) | The Borrowers shall indemnify and hold harmless DIP Agent and DIP Lenders and DIP Agent's and DIP Lender's respective affiliates, members, officers, directors, employees, attorneys, agents, and representatives (each, an "**Indemnified Person**"), from and against any and all suits, actions, proceedings, claims, damages, losses, liabilities, and expenses (including reasonable attorneys' fees and disbursements and other costs of investigation or defense, including those incurred upon any appeal) that may be instituted or asserted against or incurred by any such Indemnified Person as the result of credit having been extended, suspended, or terminated under the DIP Note and the other DIP Loan Documents and the administration of such credit, and in connection with or arising out of the transactions contemplated hereunder and thereunder and any actions or failures to act in connection therewith, and legal costs and expenses arising out of or incurred in connection with disputes between or among any parties to any of the DIP Loan Documents (collectively, "**Indemnified Liabilities**"); provided that, the Borrowers shall not be liable for any indemnification to an Indemnified Person to the extent that any such suit, action, proceeding, claim, damage, loss, liability, or expense results solely from that Indemnified Person's gross negligence or willful misconduct as finally determined by a court of competent jurisdiction. No Indemnified Person shall be responsible or liable to any other person, any successor, assignee, or third party beneficiary of such person or any other person asserting claims derivatively through such party, for indirect, punitive, exemplary or consequential damages that may be alleged as a result of credit having been extended, suspended, or terminated under any loan document or as a result of any other transaction contemplated hereunder or thereunder. For the avoidance of doubt, the Borrowers' obligations under the indemnification provision in the DIP Note shall be a DIP Obligations under the DIP Note. | Interim Order ¶ 19 |
| **Section 506(c) and Section 552(b) Waivers** Bankruptcy Rule 4001(c)(1)(B)(x), Bankruptcy Rule 4001(c)(1)(B), Local Rule 4001- | Subject to the entry of the Final Order, the DIP Secured Parties with respect to the DIP Collateral and the Prepetition Secured Parties with respect to the Prepetition Collateral are each entitled to a waiver of the any surcharge pursuant to the provisions of sections 105(a) or 506(c) of the Bankruptcy Code. Subject to the entry of the Final Order, the Prepetition Secured Parties with respect to the Prepetition Collateral are entitled to a waiver of any "equities | Interim Order ¶ ¶ G, 12 |

13

17416824/1

| | | |
|---|---|---|
| 2(a)(i)(V), Local Rule 4001-2(a)(i)(W) | of the case" claims or other claims under sections 105(a) or 552(b) of the Bankruptcy Code.<br><br>Subject to entry of the Final Order, no costs or expenses of administration or other charge, lien, assessment, or claim incurred at any time (including, without limitation, any expenses set forth in the DIP Budget) by any Debtor or any other person or entity shall be imposed or charged against any or all of the DIP Collateral and the DIP Secured Parties or the Prepetition Collateral and the Prepetition Secured Parties, or their respective claims or recoveries under the Bankruptcy Code, including sections 105(a), 506(c), 552(b) thereof, or otherwise, and the Debtors, on behalf of their estates, waive any such rights.<br><br><u>Justification</u>.  The Debtors and the Prepetition Secured Parties negotiated these waivers extensively and at arm's length.  The Debtors respectfully submit that these waivers are an integral component of the DIP Orders without which the Prepetition Secured Parties would not have consented to the use of Cash Collateral.  The Debtors respectfully submit, moreover, that these waivers remain subject to entry of the Final Order and are customary and consistent with orders entered in other large and complex chapter 11 cases providing for the consensual use of Cash Collateral. | |
| **No Marshaling** Local Rule 4001-2(a)(i)(X) | Subject to entry of the Final Order, none of the DIP Secured Parties or DIP Collateral or the Prepetition Secured Parties or Prepetition Collateral shall be subject to the doctrine of marshaling or any similar doctrine or law of any jurisdiction requiring the recovery upon or application to any indebtedness of any collateral or proceeds in any particular order or action.<br><br><u>Justification</u>.  The Debtors and the Prepetition Secured Parties negotiated these waivers extensively and at arm's length.  The Debtors respectfully submit that these waivers are an integral component of the DIP Orders without which the Prepetition Secured Parties would not have consented to the use of Cash Collateral.  The Debtors respectfully submit, moreover, that these waivers remain subject to entry of the Final Order and are customary and consistent with orders entered in other large and complex chapter 11 cases providing for the consensual use of Cash Collateral. | Interim Order ¶ ¶ G, 13 |

14

17416824/1