**EXHIBIT A**

Proposed Bidding Procedures Order

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| MY JOB MATCHER, INC., *et al.*,[1] | Case No. 25-11280 (KBO) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket No. _____** |

### ORDER (I) SCHEDULING A HEARING ON THE APPROVAL OF THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL ENCUMBRANCES OTHER THAN ASSUMED LIABILITIES AND PERMITTED ENCUMBRANCES, AND THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (II) APPROVING CERTAIN BIDDING PROCEDURES AND ASSUMPTION AND ASSIGNMENT PROCEDURES, AND THE FORM AND MANNER OF NOTICE THEREOF, AND (III) GRANTING RELATED RELIEF

Upon consideration of the motion (the "**Motion**")[2] of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") for the entry of: (a) an order, (i) scheduling a hearing (the "**Sale Hearing**") on approval of the proposed sale (the "**Sale**") of all or substantially all of the Debtors' assets (the "**Assets**"), free and clear of all Encumbrances other than Assumed Liabilities and Permitted Encumbrances to Job.com Acquisition Co., LLC Inc. (the "**Stalking Horse Purchaser**")[3] or, in the event the Stalking Horse Purchaser is not the Winning Bidder, then to the Winning Bidder, and authorizing the assumption and assignment of certain executory

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  My Job Matcher, Inc. (9880); Job.com-HV, Inc. (DE) (5873); Job.com-HV, Inc. (FL) (5873); Job.com-Fortus, Inc. (6145); Job.com-Endevis, Inc. (1956); Job.com-QCI, Inc. (4364); Princeton One-Job.com, Inc. (4752); and Princeton Search L.L.C. (6163).  For purposes of these chapter 11 cases, the Debtors' service address is 1743 Sidewinder Drive, 1st Floor, Park City, Utah 84060.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures (as defined below), or to the extent not defined therein, the Motion.

[3] The Stalking Horse Purchaser is an affiliate of the Prepetition Lenders and DIP Lenders as such terms are defined in the First Day Declaration.

contracts and unexpired leases (each, an "**Assumed Contract**," and collectively, the "**Assumed Contracts**") in connection therewith; (ii) authorizing and approving certain bidding procedures for the Sale attached hereto as <u>Exhibit 1</u> (collectively, the "**Bidding Procedures**"), authorizing and approving certain assumption and assignment procedures for the Assumed Contracts provided for herein (collectively, the "**Assumption and Assignment Procedures**"), and (iii) granting related relief; and (b) an order (the "**Sale Order**"), (i) authorizing and approving the Debtors' entry into the Asset Purchase Agreement substantially in the form attached to the Motion as <u>Exhibit C</u> (the "**Stalking Horse APA**") with the Stalking Horse Purchaser or, in the event the Stalking Horse Purchaser is not the Winning Bidder, then an Alternative APA with the Winning Bidder; (ii) authorizing and approving the Sale, free and clear of all Encumbrances other than Assumed Liabilities and Permitted Encumbrances; (iii) authorizing and approving the assumption and assignment of the Assumed Contacts in connection therewith; and (iv) granting related relief; and due and proper notice of the Motion having been given; and it appearing that no other or further notice of the Motion is required except as set forth herein; and it appearing that this Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having reviewed the Motion; and the Bidding Procedures Hearing having been held; and this Court having found and determined that the relief set forth herein is in the best interests of the Debtors, their estates and creditors and all parties in interest, and that the legal and factual bases set forth in the Motion and at the Bidding Procedures Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby

17416767/2

**FOUND AND DETERMINED THAT**:[4]

A.      This Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order.

B.      Venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

C.      The statutory and legal predicates for the relief requested in the Motion and provided for herein are sections 105(a), 363, 365, 503 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "**Bankruptcy Code**"), Rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 6004-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").

D.      In the Motion and at the hearing on the relief set forth herein (the "**Bidding Procedures Hearing**"), the Debtors demonstrated that good and sufficient notice of the relief granted by this Order has been given and no further notice is required except as otherwise provided for herein.  A reasonable opportunity to object or be heard regarding the relief granted by this Order has been afforded to those parties entitled to notice pursuant to Bankruptcy Rule 2002 and all other interested parties.

E.      The Sale Notice (as defined below), in substantially in the form attached hereto as Exhibit 2, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of this Order, the Bidding Procedures, the auction for the Assets (the "**Auction**"),

---

[4]     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

the Sale, and the Sale Hearing, and any and all objection deadlines related thereto, and no other or further notice is required of the foregoing.

F.      The Bidding Procedures are (i) fair, reasonable, and appropriate; and (ii) designed to maximize recovery with respect to the Sale.

G.      The Assumption and Assignment Procedures provided for herein and the Assumption Notice (as defined below), in substantially in the form attached hereto as <u>Exhibit 3</u>, are reasonable and appropriate and consistent with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.  The Assumption and Assignment Procedures and the Assumption Notice have been tailored to provide an adequate opportunity for all Counterparties (as defined below) to assert any Contract Objections (as defined below).

H.      Entry of this Order is in the best interests of the Debtors, their estates and creditors and all other interested parties.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      Those portions of the Motion seeking approval of (a) the Debtors' entry into the Stalking Horse APA and all of its terms (subject to higher or otherwise better offers in accordance with this Order), (b) the Assumption and Assignment Procedures, (c) the Bidding Procedures, (d) the date and time of the Sale Hearing, and (e) the noticing and objection procedures related to each of the foregoing, including, without limitation, the notice of the Sale and the entry of this Order, substantially in the form attached hereto as <u>Exhibit 2</u> (the "**Sale Notice**"), and the notice of the Debtors' potential assumption and assignment of the Assumed Contracts, substantially in the form attached hereto as <u>Exhibit 3</u> (the "**Assumption Notice**") (subclauses (a) – (e) above, collectively, the "**Bidding and Auction Process**"), are hereby GRANTED.

17416767/2

2.      Any objections to the Motion as it pertains to the Bidding and Auction Process or the relief granted by this Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby overruled and denied on the merits with prejudice.

3.      The Debtors are hereby authorized to conduct the Auction pursuant to the terms of the Bidding Procedures and this Order.

4.      For all purposes under the Bidding Procedures:  the Stalking Horse Purchaser shall be considered a Qualifying Bidder, and the Stalking Horse APA shall be considered a Qualifying Bid.

5.      The Bidding Procedures shall apply to the Potential Bidders, the Qualifying Bidders, the submission, receipt, and analysis of all bids relating to the Sale, and the conduct of the Sale and the Auction.

6.      The following "**Assumption and Assignment Procedures**" are hereby approved:

(a)      On or before **August 25, 2025** (the "**Assumption Notice Deadline**"), the Debtors shall file with this Court and serve on each counterparty (each, a "**Counterparty**," and collectively, the "**Counterparties**") to an Assumed Contract an Assumption Notice.

(b)      The Assumption Notice shall include, without limitation, the cure amount (each, a "**Cure Amount**"), if any, that the Debtors believe is required to be paid to the applicable Counterparty under section 365(b)(1)(A) and (B) of the Bankruptcy Code for each of the Assumed Contracts.  If a Counterparty objects to (i) the assumption and assignment of the Counterparty's Assumed Contract, (ii) the Cure Amount for its Assumed Contract or (iii) the provision of adequate assurance of future performance, the Counterparty must file with this Court and serve on the Objection Notice Parties (as defined below) a written objection (a "**Contract Objection**") on or before the applicable objection deadline set forth in these Assumption and Assignment Procedures.

(c)      The Debtors shall provide the Adequate Assurance Information for the Stalking Horse Purchaser to any Counterparties whose Assumed Contracts are included in the Stalking Horse APA and that are the subject of the Assumption Notice upon request.

(d)     Any Contract Objection shall: (i) be in writing; (ii) comply with the Bankruptcy Rules and the Local Rules; (iii) be filed with the Clerk of the Court, 824 N. Market Street, 3rd Floor, Wilmington, Delaware 19801 **on or before 4:00 p.m. (ET) on September 19, 2025** (the "**Contract Objection Deadline**"), and proof of service of such Contract Objection upon the Objection Notice Parties shall be filed with this Court as and when required by the Local Rules; (iv) be served upon the Objection Notice Parties; and (v) state with specificity the grounds for such objection, including, without limitation, the fully liquidated cure amount and the legal and factual bases for any unliquidated cure amount that the Counterparty believes is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code for the Assumed Contract, along with the specific nature and dates of any alleged defaults, the pecuniary losses, if any, resulting therefrom, and the conditions giving rise thereto.

*\*Any objections to adequate assurance of performance by the Stalking Horse Purchaser shall be filed by the Contract Objection Deadline.\**

*\*\*Any objections to adequate assurance of future performance by a Winning Bidder other than the Stalking Horse Purchaser shall be filed in accordance with subparagraph (g) below.\*\**

(e)     The "Objection Notice Parties" are as follows: (i) proposed counsel to the Debtors, Morris James, LLP, 500  Delaware Avenue, Suite 1500, Wilmington, Delaware 19801, Attn: Jeffrey R. Waxman, Esq. (jwaxman@morrisjames.com) and Vincent Cannizzaro, Esq. (vcannizzaro@morrisjames.com); (ii) counsel to any official committee of unsecured creditors appointed in these chapter 11 cases; (iii) counsel to the Stalking Horse Purchaser, the DIP Lenders, and Prepetition Lenders, Geoffrey T. Raicht, PC, 99 Biltmore Ave., Rye, NY  10580, Attn: Geoffrey T. Raicht, Esq. (graicht@raichtlawpc.com) and Chipman Brown Cicero & Cole, LLP, 1313 N. Market Street, Suite 5400, Wilmington, DE 19801, Attn: William E. Chipman Jr., Esq. (chipman@chipmanbrown.com); and (iv) the Office of the United States Trustee for the District of Delaware, 855 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Hannah McCollum, Esq. (Hannah.McCollum@usdoj.gov).

(f)     As soon as reasonably practicable after the completion of the Auction, the Debtors shall file with this Court a notice identifying the Winning Bidder (a "**Notice of Winning Bidder**"), which shall set forth, among other things, (i) the Winning Bidder and Back-Up Bidder (if any) and the amount of each of the Winning Bid and the Back-Up Bid (if any), (ii) the Selected Assumed Contracts, and (iii) the proposed assignee(s) of such Selected Assumed Contracts.

(g)     As soon as reasonably practicable after the completion of the Auction, the Debtors will cause to be served by overnight mail and, if available, electronic mail, upon each affected Counterparty and its counsel (if known) the Notice of Winning Bidder.

**\*\*In the event the Stalking Horse Purchaser is not the Winning Bidder, the Counterparties shall file any Contract Objections <u>solely on the basis of adequate assurance of future performance</u> not later than <u>September 26, 2025 at 4:00 p.m. (ET)</u>.\*\***

(h)     At the Sale Hearing, the Debtors will seek Court approval of the assumption and assignment to the Stalking Horse Purchaser or, in the event the Stalking Horse Purchaser is not the Winning Bidder, then to the Winning Bidder, of only those Assumed Contracts that have been selected by the Stalking Horse Purchaser or, in the event the Stalking Horse Purchaser is not the Winning Bidder, then the Winning Bidder, to be assumed and assigned (each, a "**Selected Assumed Contract**," and collectively, the "**Selected Assumed Contracts**").  The Debtors and their estates reserve any and all rights with respect to any Assumed Contracts that are not ultimately designated as Selected Assumed Contracts.

(i)     If no Contract Objection is timely received with respect to a Selected Assumed Contract: (i) the Counterparty to such Selected Assumed Contract shall be deemed to have consented to the assumption by the Debtors and assignment to the Stalking Horse Purchaser or, in the event the Stalking Horse Purchaser is not the Winning Bidder, then to the Winning Bidder, of the Selected Assumed Contract, and be forever barred from asserting any objection with regard to such assumption and assignment (including, without limitation, with respect to adequate assurance of future performance by the Stalking Horse Purchaser or, in the event the Stalking Horse Purchaser is not the Winning Bidder, then the Winning Bidder); (ii) any and all defaults under the Selected Assumed Contract and any and all pecuniary losses related thereto shall be deemed cured and compensated pursuant to section 365(b)(1)(A) and (B) of the Bankruptcy Code; and (iii) the Cure Amount for such Selected Assumed Contract shall be controlling, notwithstanding anything to the contrary in such Selected Assumed Contract, or any other related document, and the Counterparty shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other claims related to such Selected Assumed Contract against the Debtors and their estates or the Stalking Horse Purchaser or, in the event the Stalking Horse Purchaser is not the Winning Bidder, then the Winning Bidder, or the property of any of them, that existed prior to the entry of the Sale Order.

(j)     To the extent that the parties are unable to consensually resolve any Contract Objection prior to the commencement of the Sale Hearing, including, without limitation, any dispute with respect to the cure amount required to be paid to the applicable Counterparty under section 365(b)(1)(A) and (B) of the Bankruptcy Code (any such dispute, a "**Cure Dispute**"), such Contract Objection will be adjudicated at the Sale Hearing or at such other date and time as may be determined by the Debtors, in consultation with Winning Bidder, or fixed by this Court; *provided*, *however*, that if the Contract Objection relates solely to a Cure Dispute, the Selected Assumed Contract may be assumed by the Debtors and assigned to the Stalking Horse Purchaser or, in the event the Stalking Horse Purchaser is not the Winning Bidder, then to the Winning Bidder, provided that the cure amount that

7

the Counterparty asserts is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code (or such lower amount as agreed to by the Counterparty) is deposited in a segregated account by the Debtors or the Stalking Horse Purchaser or, in the event the Stalking Horse Purchaser is not the Winning Bidder, then the Winning Bidder, pending this Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.

(k)    Notwithstanding anything to the contrary herein, if after the Sale Hearing or the entry of the Sale Order additional executory contracts or unexpired leases of the Debtors are determined to be Assumed Contracts, as soon as practicable thereafter, the Debtors shall file with this Court and serve, by overnight mail, on the Counterparties an Assumption Notice, and such Counterparties shall file any Contract Objections not later than fourteen (14) days thereafter.  If no Contract Objection is timely received, the Debtors shall be authorized to assume and assign such Assumed Contracts to the Stalking Horse Purchaser or, in the event the Stalking Horse Purchaser is not the Winning Bidder, then to the Winning Bidder, without further notice to creditors or other parties in interest and without the need for further order of this Court, and such assumption and assignment shall be subject to the terms of the Sale Order.

7.    The Debtors' decision to assume and assign the Assumed Contracts to the Stalking Horse Purchaser or, in the event the Stalking Horse Purchaser is not the Winning Bidder, then to the Winning Bidder, is subject to this Court's approval and the closing of the Sale.  Accordingly, absent this Court's approval and the closing of the Sale, the Assumed Contracts shall not be deemed assumed or assumed and assigned, and shall in all respects be subject to further administration by the Debtors and their estates under the Bankruptcy Code in connection with these chapter 11 cases.

8.    The Assumption and Assignment Procedures are appropriate and fair to all Counterparties and comply in all respects with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.  The Assumption Notice is:  (a) reasonably calculated to (i) provide sufficient, effective notice to all Counterparties and any other affected parties of the Debtors' intent to assume and assign to the Stalking Horse Purchaser or, in the event the Stalking Horse Purchaser is not the Winning Bidder, then to the Winning Bidder, some or all of the Assumed Contracts, and (ii) afford the Counterparties the opportunity to exercise any rights affected by the Motion and the relief

17416767/2

granted by this Order pursuant to Bankruptcy Rules 2002(a)(2), 6004 and 6006; and (b) hereby approved.

9.      The inclusion of a contract, lease or other agreement on an Assumption Notice shall not constitute or be deemed a determination or admission by the Debtors and their estates or any other party in interest that such contract, lease or other agreement is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code, and any and all rights of the Debtors and their estates with respect thereto shall be reserved.

10.     The Sale Notice, the Assumption Notice, the Bidding Procedures, the Auction, the Sale Hearing, and the Assumption and Assignment Procedures and the objection periods associated with each of the foregoing are reasonably calculated to provide notice to any affected party and afford the affected party the opportunity to exercise any rights affected by the Motion as it relates to the Bidding Procedures, the Auction, the Sale, the Sale Hearing, and the assumption and assignment to the Stalking Horse Purchaser or, in the event the Stalking Horse Purchaser is not the Winning Bidder, then to the Winning Bidder, of the Assumed Contracts pursuant to Bankruptcy Rules 2002(a)(2), 6004 and 6006, and such notice and objection periods are hereby approved.

11.     The Sale Notice is approved.  Within three (3) business days of the entry of this Order, the Debtors shall serve the Sale Notice by regular mail on:  (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Stalking Horse Purchaser and the Lenders; (c) all parties known by the Debtors to assert a lien or encumbrance on any of the Assets; (d) all persons known or reasonably believed to have asserted an interest in or claim to any of the Assets; (e) all persons known or reasonably believed to have expressed an interest in acquiring all or a substantial portion of the Assets within the one (1) year prior to the Petition Date; (f) the Office

9

of the United States Attorney for the District of Delaware; (g) the Office of the Attorney General in each state in which the Debtors have operated; (h) the Office of the Secretary of State in each state in which the Debtors have operated; (i) the Internal Revenue Service and all state and local taxing authorities in the states in which the Debtors have or may have any tax liability; (j) all environmental authorities having jurisdiction over any of the Assets, including the Environmental Protection Agency; (k) the Federal Trade Commission; (l) the United States Attorney General/Antitrust Division of Department of Justice; (m) all non-Debtor parties to any of the Assumed Contracts; (n) all of the Debtors' other known creditors and equity security holders; and (o) all other parties that have filed a notice of appearance and demand for service of papers in these chapter 11 cases as of the service date (collectively, the "**Sale Notice Parties**").

12.    The Debtors shall post the Sale Notice, the Assumption Notice, and the Bidding Procedures Order on the website of the Debtors' claims and noticing agent.  Within seven (7) business days of the entry of this Order, the Debtors shall cause the Sale Notice to be published once in the national edition of *USA Today* or similar national publication.  Publication of the Sale Notice as described in this Order conforms to the requirements of Bankruptcy Rules 2002(l) and 9008 and is reasonably calculated to provide notice to any affected party, including any Potential Bidders, and afford the affected party the opportunity to exercise any rights affected by the Motion and the relief granted by this Order.

13.    Any objections to the Sale or the relief requested in connection with the Sale (a "**Sale Objection**"), other than a Contract Objection, which shall be governed by the Assumption and Assignment Procedures, must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) set forth the specific basis for the Sale Objection; (d) be filed with the Clerk of this Court, 824 N. Market Street, 3rd Floor, Wilmington, Delaware 19801 **on or before noon**

**(ET) on September 26, 2025** (the "**Sale Objection Deadline**"), and proof of service of such Sale

Objection upon the Objection Notice Parties shall be filed with this Court as and when required

by the Local Rules; and (e) be served upon the Objection Notice Parties.  If a Sale Objection is not

filed and served on or before the Sale Objection Deadline in accordance with the foregoing

requirements, the objecting party may be barred from objecting to the Sale and being heard at the

Sale Hearing, and this Court may enter the Sale Order without further notice to such party.

14.     Failure to file a Sale Objection on or before the Sale Objection Deadline (a) shall

forever bar the assertion, whether at any Sale Hearing or thereafter, of any objection to the Motion,

to entry of the Sale Order, and/or to the consummation and performance of the Sale contemplated

by the Stalking Horse APA or any Alternative APA with a Winning Bidder other than the Stalking

Horse Purchaser, and (b) for purposes of section 363(f)(2) of the Bankruptcy Code, shall be

deemed to be "consent" to entry of the Sale Order and consummation of the Sale and all

transactions related thereto.

15.     The Lenders, in their capacity as such, (i) shall have the continuing right to use the

amounts then outstanding on account of the claims of the DIP Lenders (as defined in the DIP

Order), or any part thereof, to credit bid with respect to the Assets, and (ii) subject to Paragraph

15 of the DIP Order, shall have the continuing right to use the amounts then outstanding on account

of the claims of the Prepetition Secured Parties (as defined in the DIP Order), or any part thereof,

to credit bid with respect to the Assets.

16.     As part of its bid, each Qualifying Bidder must provide the Debtors, the other

Bidding Procedures Notice Parties, and the Consultation Parties information supporting the

Qualifying Bidder's ability to comply with the requirements of adequate assurance of future

performance under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy

17416767/2

Code (the "**Adequate Assurance Information**"), including (a) the Qualifying Bidder's financial wherewithal and willingness to perform under any contracts and leases that are assumed and assigned to such Qualifying Bidder; and (b) a contact person for the proposed assignee that the applicable Counterparty may directly contact in connection with the adequate assurance of future performance. To the extent that the Qualifying Bidder is a newly formed acquisition entity or the like, the financial and other information supporting the Qualifying Bidder's financial wherewithal shall include financial and other information supporting the financial wherewithal of the Qualifying Bidder's parent company or sponsor.

17. Any party in receipt of Adequate Assurance Information under this Order shall review the Adequate Assurance Information received on a confidential basis and shall not disclose the Adequate Assurance Information except as expressly provided in this Order and the Bidding Procedures. Such Counterparty may not use or disclose, except to representatives, attorneys, advisors and financing sources (collectively, "**Representatives**"), any confidential Adequate Assurance Information for any purpose other than: (a) evaluating whether adequate assurance of future performance as required under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code has been provided; and (b) in support of any objection (the "**Assignment Objection**") (subject to the limitations on disclosure set forth herein) by such Counterparty relating to adequate assurance of future performance. Any Assignment Objection that includes confidential, non-public Adequate Assurance Information must be filed under seal unless disclosure of such confidential, non-public information is authorized by the Debtors and the applicable assignee(s). The party filing an Assignment Objection under seal shall follow the procedures for the same set forth in Local Rule 9018-1(d). The unredacted versions of such Assignment Objections shall be served upon the Debtors, the other Bidding Procedures Notice

Parties, the Consultation Parties and the U.S. Trustee, with a copy to this Court's chambers; provided further, that all rights of all parties in interest in the chapter 11 cases are reserved to oppose the filing under seal of any such information and to seek any other relief from this Court with respect to such matter. Any Representative receiving Adequate Assurance Information shall be notified and shall agree to be bound by the restrictions set forth in this Order.

18.     If no timely Qualifying Bids other than the Stalking Horse APA are submitted on or before the Bid Deadline, the Debtors shall not hold an Auction and shall request at the Sale Hearing that this Court approve the Stalking Horse APA and the transactions contemplated thereunder. If the Debtors timely receive one or more Qualifying Bids other than the Stalking Horse APA, then the Debtors shall conduct the Auction on **September 23, 2025 at 10:00 a.m. (ET)**, at the offices of Morris James LLP, 500 Delaware Avenue, Suite 1500, Wilmington, DE 19801, or virtually via telephone and/or video conference pursuant to information to be timely provided by the Debtors to the Auction Participants (as defined below). Only the Debtors, the Auction Bidders (including the Stalking Horse Purchaser), the Consultation Parties, the Lenders, and any creditors of the Debtors, together with the professional advisors to each of the foregoing parties, may attend the Auction (collectively, the "**Auction Participants**"); provided that any such creditors provide counsel for the Debtors written notice of their intent to attend the Auction no later than 10:00 a.m. (ET) the day prior to the Auction.

19.     The Debtors shall have until **September 26, 2025 at 11:59 p.m. (ET)** to file and serve a reply to any objection filed in connection with the Sale, including any Sale Objection or Contract Objection.

20.     The Sale Hearing shall be held in this Court on **_____, 2025 at _____ (ET)**, unless otherwise determined by this Court. The Sale Hearing may be

13

adjourned by the Debtors, from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing, or by filing a hearing agenda or notice on the docket of these chapter 11 cases.

21.     The Debtors are authorized to conduct the Sale without the necessity of complying with any state or local bulk transfer laws or requirements.

22.     In the event that there is a conflict between this Order or the Bidding Procedures, on the one hand, and the Motion, the Stalking Horse APA, or an Alternative APA, on the other hand, this Order and the Bidding Procedures shall control and govern.  If there is a conflict between this Order and the Bidding Procedures, this Order shall control and govern.  If there is a conflict between this Order or the Bidding Procedures, on the one hand, and any notice served in connection with the Motion or this Order, on the other hand, this Order and the Bidding Procedures shall control and govern.

23.     Prior to mailing the Assumption Notice and the Sale Notice, as applicable, the Debtors may fill in, or cause to be filled in, any missing dates and other information, correct any typographical errors, conform the provisions thereof to the provisions of this Order, and make such other, non-material changes as the Debtors deem necessary or appropriate.

24.     This Order shall be effective immediately upon entry, and any stay of orders provided for in Bankruptcy Rules 6004(h) or 6006(d) or any other provision of the Bankruptcy Code, the Bankruptcy Rules or the Local Rules is expressly waived.  The Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and may, in its sole discretion and without further delay, take any action and perform any act authorized or approved under this Order.

25.     The requirements set forth in Local Rules 6004-1, 9006-1 and 9013-1 are hereby satisfied or waived.

26.     Attached hereto as <u>Schedule A</u> is a summary of the key dates established by this Order.

27.     This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation or interpretation of the Order.

15

**Schedule A**

| **DATE** | **DEADLINE/EVENT** |
| --- | --- |
| August 25, 2025 | Assumption Notice Deadline |
| September 17, 2025 | Bid Deadline |
| September 19, 2025 | Sale Objection Deadline; Contract Objection Deadline |
| September 22, 2025 | Deadline for Debtors to Designate Qualifying Bids and Baseline Bid |
| September 23, 2025 at 10:00 a.m. | Auction |
| September 24, 2025 or 4:00 p.m. the day after the conclusion of the Auction | Deadline to File and Serve Notice of Winning Bidder |
| September 26, 2025 at noon | Adequate Assurance Objection Deadline for Winning Bidder Other Than the Stalking Horse Purchaser |
| September 26, 2025 at 11:59 p.m. | Debtors' Deadline to Reply to Sale Objections |
| September 29, 2025 (based upon Court availability) | Sale Hearing |
| October 3, 2025 | Sale Closing |

## **Exhibit 1**

Bidding Procedures

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| MY JOB MATCHER, INC., *et al.*,[1] | Case No. 25-11280 (KBO) |
| Debtors. | (Jointly Administered) |

## **BIDDING PROCEDURES**

On July 7, 2025, the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

On [_____], 2025, the United States Bankruptcy Court for the District of Delaware (the "**Court**") entered an order [Docket No. _____] (the "**Bidding Procedures Order**"), among other things, granting certain relief requested in the related motion [Docket No. __] (the "**Bidding Procedures Motion**"), including authorizing the Debtors to solicit bids and approving the procedures set forth herein (collectively, the "**Bidding Procedures**") to be employed by the Debtors in connection with the proposed sale (the "**Sale**") of all or substantially all of the Debtors' assets (the "**Assets**"), free and clear of all Encumbrances other than Assumed Liabilities and Permitted Encumbrances[2] to Job.com Acquisition Co., LLC Inc. (the "**Stalking Horse Purchaser**"), pursuant to an Asset Purchase Agreement dated as of July [__], 2025 (the "**Stalking Horse APA**") with the Stalking Horse Purchaser or, in the event the Stalking Horse Purchaser is not the Winning Bidder, then an Alternative APA with the Winning Bidder.  The Stalking Horse APA is attached to the Bidding Procedures Motion as Exhibit C.

**ANY PARTY INTERESTED IN BIDDING ON THE ASSETS SHOULD CONTACT:** (a) Configure Partners, LLC, proposed investment banker for the Debtors, attn: Jay Jacquin (404-448-0010 x101; jjacquin@configurepartners.com), or Matt Guill (404-448-0010 x110; mguill@configurepartners.com) and (b) Morris James, LLP, Proposed counsel for the Debtors, attn: Jeffery R. Waxman, Esq. (302-888-5842; jwaxman@morrisjames.com) or Vincent Cannizzaro, Esq. (302-888-6867; VCannizzaro@morrisjames.com).

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  My Job Matcher, Inc. (9880); Job.com-HV, Inc. (DE) (5873); Job.com-HV, Inc. (FL) (5873); Job.com-Fortus, Inc. (6145); Job.com-Endevis, Inc. (1956); Job.com-QCI, Inc. (4364); Princeton One-Job.com, Inc. (4752); and Princeton Search L.L.C. (6163).  For purposes of these chapter 11 cases, the Debtors' service address is 1743 Sidewinder Drive, 1st Floor, Park City, Utah 84060.

[2]    Capitalized terms used but not yet otherwise defined herein shall have the meaning ascribed to them in the Bidding Procedures Order or Bidding Procedures Motion, as applicable.

**_Summary of Key Dates Established by Bidding Procedures_**

| DATE | DEADLINE/EVENT |
|---|---|
| **August 25, 2025** | Assumption Notice Deadline |
| **September 17, 2025 at 4:00 p.m. (ET)** | Bid Deadline |
| **September 19, 2025 at 12:00 p.m. (ET)** | Sale Objection Deadline; Contract Objection Deadline[3] |
| **September 22, 2025 at 4:00 p.m. (ET)** | Deadline for Debtors to Designate Qualifying Bids and Baseline Bid |
| **September 23, 2025 at 10:00 a.m. (ET)** | Auction |
| **September 24, 2025 at 4:00 p.m. (ET) or 4:00 p.m. (ET) the first business day after the conclusion of the Auction** | Deadline to File and Serve Notice of Winning Bidder |
| **September 26, 2025 at noon (ET)** | Adequate Assurance Objection Deadline for Winning Bidder Other Than the Stalking Horse Purchaser |
| **September 26, 2025 at 11:59 p.m. (ET)** | Debtors' Deadline to Reply to Sale Objections |
| **September 29, 2025 (requested)** | Sale Hearing |
| **October 3, 2025** | Sale Closing |

1.    **Stalking Horse Purchaser**

On or about July __, 2025, the Debtors entered into the Stalking Horse APA. The Stalking Horse Purchaser is (i) credit bidding a total of $35,000,000 on account of the DIP Obligations and the Prepetition Secured Obligations (as each term is defined in the DIP Order),[4] (ii) assuming certain liabilities and executory contracts and unexpired leases of the Debtors, and (iii) satisfying cure costs (collectively (i), (ii) and (iii), the "**Purchase Price**"). If the Stalking Horse Purchaser

---

[3]    The Sale Objection Deadline and Contract Objection Deadline apply to all objections to the sale of the Assets and the assumption and assignment of the Assumed Contracts (including adequate assurance of future performance by the Stalking Horse Purchaser), with the exception of objections related to adequate assurance of future performance by a Winning Bidder *other than* the Stalking Horse Purchaser.

[4]    For purposes of these Bidding Procedures, "**DIP Order**" means that certain *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Senior Secured Superpriority Financing, (II) Authorizing the Debtors' Limited Use of Cash Collateral, (III) Granting Liens and Providing Claims with Superpriority Administrative Expenses Status, (IV) Granting Adequate Protection to the Prepetition Secured Parties, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief.*

2

is not the Winning Bidder, it has agreed to serve as the Back-Up Bidder if designated as such in accordance with the Bidding Procedures.

### 2.    Assets to be Sold

The Debtors shall offer for sale the Assets, provided that the Debtors, in consultation with the Consultation Parties, determine that the aggregate consideration offered by any bid, or combination of bids, for the Assets, satisfies the requirements set forth in these Bidding Procedures.  Potential Bidders may bid on all or any number or combination of the Assets.

### 3.    Participation Requirements

Any person or entity that wishes to participate in the bidding process for the Assets (each, a "**Potential Bidder**") must first become a "**Qualifying Bidder**".  To become a Qualifying Bidder, and thus being able to conduct due diligence and gain access to the Debtors' confidential electronic data room concerning the Assets (the "**Data Room**"), a Potential Bidder must submit to the Debtors and their advisors:

(a)    An executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors;

(b)    If requested by the Debtors, documentation identifying the interested party, its principals, and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated transaction;

(c)    If requested by the Debtors, a statement and other factual support demonstrating to the Debtors' reasonable satisfaction, that the interested party has a *bona fide* interest in consummating a sale transaction; and

(d)    If requested by the Debtors, sufficient information, as determined by the Debtors, to allow the Debtors to determine that the interested party (x) has, or can obtain, the financial wherewithal and any required internal corporate, legal or other authorizations to close a sale transaction, including, but not limited to, current audited financial statements of the interested party (or such other form of financial disclosure acceptable to the Debtors in their discretion), and (y) can provide adequate assurance of future performance under any executory contracts and unexpired leases to be assumed by the Debtors and assigned to such bidder, pursuant to section 365 of the Bankruptcy Code, in connection with the Sale.

Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors or their advisors regarding the ability of such Potential Bidder to consummate its contemplated transaction.

Notwithstanding anything to the contrary herein, and for the avoidance of doubt, for all purposes under the Bidding Procedures: (i) the Stalking Horse Purchaser shall be considered a Qualifying Bidder, and the Stalking Horse APA shall be considered a Qualifying Bid; and (ii) in determining whether the Potential Bidders constitute Qualifying Bidders, the Debtors may consider a combination of bids for the Assets.

3

4. **Bankruptcy Court Jurisdiction**

By participating in the Sale process, any Potential Bidders and Qualifying Bidders shall: (a) be deemed to have waived any right to a jury trial in connection with, and consented and submitted to the exclusive jurisdiction of the Court over, any actions or proceedings arising from or relating the Bidding Procedures, the Sale, the Auction and the construction and enforcement of the contemplated transaction documents of such parties; (b) bring any such action or proceeding in the Court; (c) accepts service of all notices and pleadings via electronic mail, and (d) be deemed to have consented to the Court entering a final judgment determining any such action or proceeding and that such final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law.

5. **Form of Agreement**

Potential Bidders should reference the Stalking Horse APA in connection with their bids. As set forth below, Potential Bidders intending to submit bids must include with their bids:

(a)     a statement that such Potential Bidder offers to (i) purchase the Assets, or a number or combination of the Assets, and (ii) assume liabilities, upon substantially the same terms as, or terms more favorable to the Debtors and their estates than, the terms set forth in the Stalking Horse APA, if applicable; and

(b)     a clean and duly executed asset purchase agreement (an "**Alternative APA**") and a marked copy of the Alternative APA that reflects any variations from the Stalking Horse APA.

6. **Due Diligence**

The Debtors will provide any Qualifying Bidder with reasonable access to the Data Room and any other additional information that the Debtors believe to be reasonable and appropriate under the circumstances.  All additional due diligence requests shall be directed to: (a) investment banker for the Debtors, (a) Configure Partners, LLC, proposed investment banker for the Debtors, attn: Jay Jacquin (404-448-0010 x101; jjacquin@configurepartners.com), or Matt Guill (404-448-0010 x110; mguill@configurepartners.com), (b) Morris James, LLP, Proposed counsel for the Debtors, attn: Jeffery R. Waxman, Esq. (302-888-5842; jwaxman@morrisjames.com) or Vincent Cannizzaro, Esq. (302-888-6867; VCannizzaro@morrisjames.com).

The due diligence period shall extend through and including the Bid Deadline.  The Debtors, in their business judgment, may, but shall not be obligated to, furnish any due diligence information after the Bid Deadline.

The Debtors reserve the right, in their reasonable discretion, to withhold or limit access to any due diligence information that the Debtors determines is business-sensitive or otherwise not appropriate for disclosure to a Qualifying Bidder.  The Debtors and their estates shall be authorized to provide due diligence information to Qualifying Bidders provided that such Qualifying Bidders have delivered an executed confidentiality agreement in form and substance acceptable to the Debtors.  The Debtors and their estates are not responsible for, and shall have no liability with

4

respect to, any information obtained by, or provided to, any Qualifying Bidders in connection with the Bidding Procedures and the Sale.

### 7.    Bid Requirements

To be deemed a "**Qualifying Bid**,"[5] a bid must be received from a Qualifying Bidder on or before the Bid Deadline and satisfy each of the following requirements (each, a "**Bid Requirement**"):

(a)    be in writing;

(b)    fully disclose the identity of the Qualifying Bidder (and to the extent that the Qualifying Bidder is a newly formed acquisition entity or the like, the identity of the Qualifying Bidder's parent company or sponsor), and provide the contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors have any questions or wishes to discuss the bid submitted by the Qualifying Bidder;

(c)    set forth the purchase price to be paid by such Qualifying Bidder;

(d)    not propose payment in any form other than cash (excluding the Stalking Horse Purchaser);

(e)    state the liabilities proposed to be paid or assumed by such Qualifying Bidder;

(f)    specify the Assets that are included in the bid and state that such Qualifying Bidder offers to (i) purchase the Assets, or a number or combination of the Assets, and (ii) assume liabilities, upon substantially the same terms as, or terms more favorable to the Debtors and their estate than, the terms set forth in the Stalking Horse APA;

(g)    be accompanied by an Alternative APA that reflects any variations from the Stalking Horse APA;

(h)    state that such Qualifying Bidder's offer is formal, binding and unconditional and is irrevocable until two (2) business days after the closing of the Sale;

(i)    state that such Qualifying Bidder is financially capable of consummating the transactions contemplated by the Alternative APA and provide written evidence in support thereof;

(j)    contain such financial and other information to allow the Debtors to make a reasonable determination, after consultation with the Consultation Parties, as to the Qualifying Bidder's financial and other capabilities to close the transactions contemplated by the Alternative APA, including, without limitation, such financial and other information supporting the Qualifying Bidder's ability to comply with the requirements of adequate assurance of future performance under section

---

[5]    The Stalking Horse APA is a Qualifying Bid for all purposes under these Bidding Procedures.

365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code, including the Qualifying Bidder's financial wherewithal and willingness to perform under any contracts and leases that are assumed and assigned to the Qualifying Bidder, in a form that allows the Debtors to serve such information on any counterparties to any contracts or leases potentially being assumed and assigned in connection with the Sale within one (1) business day after the Debtors' receipt of such information.  To the extent that the Qualifying Bidder is a newly formed acquisition entity or the like, the financial and other information supporting the Qualifying Bidder's financial wherewithal shall include financial and other information supporting the financial wherewithal of the Qualifying Bidder's parent company or sponsor;

(k)     identify with particularity each and every executory contract and unexpired lease the assumption and assignment of which is a condition to close the transactions contemplated by the Alternative APA;

(l)     a commitment to close the transactions contemplated by the Alternative APA by no later than **October 3, 2025;**

(m)     not request or entitle such Qualifying Bidder to any break-up fee, termination fee, expense reimbursement, or similar type of fee or payment;

(n)     the aggregate consideration proposed by the Qualifying Bidder must equal or exceed the sum of the amount of (A) the Purchase Price, and (B) the Minimum Overbid Amount[6];

(o)     not contain any contingencies of any kind, including, without limitation, contingencies related to financing, internal approval or due diligence;

(p)     contain written evidence satisfactory to the Debtors that the Qualifying Bidder has a commitment for financing or other evidence of the ability to close the transactions contemplated by the Alternative APA, with appropriate contact information for such financing sources;

(q)     contain a written acknowledgement and representation that the Qualifying Bidder (i) has had an opportunity to conduct any and all due diligence regarding the Assets, (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and other information in making its Qualifying Bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any documents or other information provided in connection with the Bidding Procedures and the Sale;

(r)     sets forth (i) a statement or evidence that the Qualifying Bidder has made or will

---

[6]     The minimum Initial Overbid Amount shall be the Purchase Price plus at least $250,000, with each subsequent Overbid Amount of at least $100,000.

make in a timely manner all necessary filings under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, if applicable, and pay the fees associated with such filings, and (ii) any regulatory and third-party approvals required for the Qualifying Bidder to close the transactions contemplated by the Alternative APA, and the time period within which the Qualifying Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than five (5) days following execution and delivery of such Qualifying Bidder's Alternative APA, those actions the bidder will take to ensure receipt of such approval(s) as promptly as possible); provided that a Qualifying Bidder agrees that its legal counsel will coordinate in good faith with the Debtors' legal counsel to discuss and explain Qualifying Bidder's regulatory analysis, strategy, and timeline for securing all such approvals as soon as reasonably practicable, and in no event later than the time period contemplated in the Alternative APA; provided, further that the offer contains a covenant to cooperate with the Debtors to provide pertinent factual information regarding the bidder's operations reasonably required to analyze issues arising with respect to any applicable antitrust laws and other applicable regulatory requirements;

(s)     provides for the Qualifying Bidder to serve as a backup bidder (the "**Back-Up Bidder**") if the Qualifying Bidder's bid is the next highest and best bid (the "**Back-Up Bid**") after the Winning Bid, in accordance with the terms of the Alternative APA;

(t)     includes written evidence of authorization and approval from the Qualifying Bidder's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of the Alternative APA;

(u)     provides a good faith cash deposit (the "**Deposit**") in an amount equal to ten percent (10%) of the purchase price provided for in the Alternative APA (or such additional amount as may be determined by the Debtors in their reasonable discretion) provided, however, that the Stalking Horse Purchaser is not required to make a cash deposit; and

(v)     provides that in the event of the Qualifying Bidder's breach of, or failure to perform under, the Alternative APA, the Debtors and their estates shall be entitled to retain the Deposit as part of the damages resulting to the Debtors and their estates for such breach or failure to perform.

A bid from a Qualifying Bidder satisfying all of the above requirements, as determined by the Debtors, in consultation with the Consultation Parties, shall constitute a Qualifying Bid. The Debtors reserve the right to work with any Qualifying Bidder in advance of the Auction to cure any deficiencies in a bid that is not initially deemed a Qualifying Bid.

Each Qualifying Bidder submitting a bid shall be deemed to: (a) acknowledge and represent that it is bound by all of the terms and conditions of the Bidding Procedures; and (b) have waived

the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code related in any way to the submission of its bid, the Bidding Procedures, and the Sale.

### 8.   Bid Deadline

A Qualifying Bidder, other than the Stalking Horse Purchaser, that desires to make a bid shall deliver a written and electronic copy of its bid in both PDF and MS-WORD format to the Bidding Procedures Notice Parties and the Consultation Parties so as to be received on or before **September 17, 2025 at 4:00 p.m. (ET) (the "Bid Deadline")**; provided that the Debtors may extend the Bid Deadline without further order of the Court. To the extent that the Bid Deadline is extended for all parties, the Debtors shall file a notice on the docket of these chapter 11 cases indicating the same. **Any party that does not submit a bid by the Bid Deadline will not be allowed to (a) submit any offer after the Bid Deadline, or (b) participate in the Auction.**

### 9.   Evaluation of Qualifying Bids

The Debtors, in consultation with the Consultation Parties, shall make a determination regarding whether a timely submitted bid from a Qualifying Bidder is a Qualifying Bid.

No later than **September 22, 2025 (ET)**, the Debtors shall:  (i) notify all Qualifying Bidders whether their bids have been determined to be a Qualifying Bid; and (ii) determine, in consultation with the Consultation Parties, which of the Qualifying Bids, at such time, is the highest or best bid for purposes of constituting the opening bid of the Auction (the "**Baseline Bid**" and the Qualifying Bidder submitting the Baseline Bid, the "**Baseline Bidder**"), and shall promptly notify any Stalking Horse Purchaser and all Qualifying Bidders with Qualifying Bids of the Baseline Bid.

### 10.   No Qualifying Bids

If no timely Qualifying Bids other than any Stalking Horse Purchaser's Qualifying Bid are submitted on or before the Bid Deadline, the Debtors shall not hold an Auction and shall request at the Sale Hearing that the Court approve the Stalking Horse APA and the transactions contemplated thereunder.

### 11.   Auction

If the Debtors timely receive one or more Qualifying Bids other than the Stalking Horse Purchaser's Qualifying Bid, then the Debtors shall conduct an auction (the "**Auction**"). At the Auction, the Debtors will determine, in consultation with the Consultation Parties, which Qualifying Bid is the highest or best bid for the Assets, which will be determined by considering, among other things, the following non-binding and non-exhaustive factors:  (a) the number, type and nature of any changes to the Stalking Horse APA requested by each bidder; (b) the extent to which such modifications are likely to delay closing of the Sale and the cost to the Debtors and their estates of such modifications or delay; (c) the total consideration to be received by the Debtors and their estates; (d) the transaction structure and execution risk, including conditions to, timing of and certainty of closing, termination provisions, availability of financing and financial wherewithal to meet all commitments, and required governmental or other approval; (e) the net benefit to the Debtors' estates; and (f) any other factors the Debtors may reasonably deem relevant.

The Auction shall be governed by the following procedures:

(a)     the Auction shall be held on **September 23, 2025 at 10:00 a.m. (ET)** at the offices of Morris James, LLP, 500 Delaware Ave., Suite 1500, Wilmington, DE 19801 or virtually via telephone and/or video conference pursuant to information to be provided by the Debtors to the Auction Participants (as defined below);

(b)     only the Stalking Horse Purchaser and the other Qualifying Bidders with Qualifying Bids (together, the "**Auction Bidders**"), shall be entitled to make any subsequent bids at the Auction;

(c)     the Auction Bidders shall appear at the Auction, either in person or remotely, through a duly authorized business representative;

(d)     only the Debtors, the Auction Bidders, the Consultation Parties, the Lenders and any creditors of the Debtors, together with the professional advisors to each of the foregoing parties, may attend the Auction (collectively, the "**Auction Participants**"); provided that any such creditors provide counsel for the Debtors written notice of their intent to attend the Auction no later than 10:00 a.m. (ET) the day prior to the Auction;

(e)     the Debtors and their professional advisors shall direct and preside over the Auction, which shall be transcribed;

(f)     the Auction Bidders shall confirm that they have not engaged in any collusion with respect to the Bidding Procedures, the Auction or the Sale;

(g)     bidding shall commence at the amount of the Baseline Bid, plus the Initial Bid Overbid of $250,000, and the Auction Bidders may submit successive bids in increments of at least $100,000, provided that: (i) each such successive bid must be a Qualifying Bid; and (ii) the Debtors shall retain the right to modify the bid increment requirements at the Auction;

(h)     the Auction may include individual negotiations with any of the Auction Bidders, but all bids shall be made on the record;

(i)     all material terms of the bid that is deemed to be the highest and best bid for each round of bidding shall be fully disclosed to the Auction Bidders, and the Debtors shall use reasonable efforts to clarify any and all questions that the Auction Bidders may have regarding the Debtors' announcement of the then-current highest and best bid;

(j)     the Debtors and their professional advisors may employ and announce at the Auction additional procedural rules that the Debtors determine are reasonable under the circumstances (*e.g.*, the amount of time allotted to make subsequent bids) for conducting the Auction;

(k)     the Auction Bidders shall have the right to make additional modifications to the

9

Stalking Horse APA or any Alternative APA, as applicable, in conjunction with each Qualifying Bid submitted in each round of bidding during the Auction, provided that (i) any such modifications on an aggregate basis and viewed in whole, shall not, in the Debtors' discretion, in consultation with the Consultation Parties, be less favorable to the Debtors and their estates than the terms of the Stalking Horse APA, and (ii) each Qualifying Bid shall constitute an irrevocable offer and shall be binding on the Auction Bidder submitting such bid until such party shall have submitted a subsequent Qualifying Bid at the Auction or the conclusion of the Sale Hearing, whichever occurs sooner, unless such bid is selected as the Winning Bid or the Back-Up Bid, which shall remain binding as provided for herein;

(l)   the Debtors and the Consultation Parties shall have the right to request any additional financial information that will allow the Debtors and the Consultation Parties to make a reasonable determination as to an Auction Bidder's financial and other capabilities to consummate the transactions contemplated by the Stalking Horse APA or any Alternative APA, as applicable, as may be amended during the Auction, and any further information that the Debtors may believe is reasonably necessary to clarify and evaluate any bid made by an Auction Bidder during the Auction;

(m)   upon the conclusion of the Auction, the Debtors shall determine, in consultation with the Consultation Parties, and subject to Court approval, the offer or offers for the Assets that is or are the highest or best from among the Qualifying Bids submitted at the Auction (the "**Winning Bid**").  In making this decision, the Debtors shall consider, in consultation with the Consultation Parties, the amount of the purchase price, the assumption of liabilities, the likelihood of the bidder's ability to close a transaction and the timing thereof, the number, type and nature of any changes to the Stalking Horse APA or any Alternative APA submitted with the Winning Bid, as applicable, requested by each bidder, and the net benefit to the Debtors' estate.  The bidder submitting such Winning Bid at the Auction shall become the "**Winning Bidder**," and shall have such rights and responsibilities of the purchaser as set forth in the Stalking Horse APA or any Alternative APA, as applicable.  The Debtors may, in their business judgment, designate the Back-Up Bid (and the corresponding Back-Up Bidder) to purchase the Assets in the event that the Winning Bidder does not close the Sale;

(n)   At the conclusion of the Auction, the Winning Bidder and Back-Up Bidder shall complete and execute all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which the Winning Bid was made.

(o)   within one (1) business day of the close of the Auction, in the event the Stalking Horse Purchaser is not the Winning Bidder, the Winning Bidder shall supplement the Winning Bidder's Deposit such that the Deposit shall be equal to an amount that is ten (10%) percent of the Winning Bid; and

**THE WINNING BID AND ANY BACK-UP BID AND THEIR RELATED PURCHASE AGREEMENTS SHALL CONSTITUTE AN IRREVOCABLE OFFER AND BE BINDING ON THE WINNING BIDDER AND THE BACK-UP BIDDER, RESPECTIVELY, FROM THE TIME THE BID IS SUBMITTED UNTIL TWO (2) BUSINESS DAYS AFTER THE SALE HAS CLOSED. EACH QUALIFYING BID THAT IS NOT THE WINNING BID OR THE BACK-UP BID SHALL BE DEEMED WITHDRAWN AND TERMINATED AT THE CONCLUSION OF THE SALE HEARING.**

12.     **Sale Hearing**

The Winning Bid and any Back-Up Bid (or if no Qualifying Bid other than that of the Stalking Horse Purchaser is received, then the Stalking Horse APA) will be subject to approval by the Court. The Sale Hearing to approve the Winning Bid and any Back-Up Bid (or if no Qualifying Bid other than that of the Stalking Horse Purchaser is received, then the Stalking Horse APA) shall take place on **September 29, 2025 at \_\_:\_\_.m. (ET)**. The Sale Hearing may be adjourned by the Debtors, from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing, or by filing a hearing agenda or notice on the docket of these chapter 11 cases.

At the Sale Hearing, the Debtors will seek entry and of a sale order substantially in the form attached to the Bidding Procedures Motion.

13.     **Backup Bidder**

Notwithstanding any of the foregoing, in the event that the Winning Bidder fails to close the Sale on or before **October 1, 2025** (or such date as may be extended by the Debtors), the Back-Up Bid will be deemed to be the Winning Bid, the Back-Up Bidder will be deemed to be the Winning Bidder, and the Debtors shall be authorized, but not directed, to close the Sale to the Back-Up Bidder no later than **October 3, 2025,** subject to the terms of the Back-Up Bid without the need for further order of the Court and without the need for further notice to any interested parties.

14.     **Return of Deposits**

All Deposits shall be returned to each bidder not selected by the Debtors as the Winning Bidder or the Back-Up Bidder no later than five (5) business days following the closing of the Hearing. The deposit of the Winning Bidder or, if the Sale is conclusion with the Back-Up Bidder, the deposit of the Back-Up Bidder, shall be applied to the purchase price for the Sale. If the Winning Bidder (or, if the Sale is to be closed with the Back-Up Bidder, then the Back-Up Bidder) fails to consummate the Sale, then, subject to the terms of the Alternative APA or any Stalking Horse APA or any Alternative APA, as applicable, the Debtors and their estates shall be entitled to retain the Deposit of the Winning Bidder (or, if the Sale is to be closed with the Back-Up Bidder, then the Back-Up Bidder) as part of the damages resulting to the Debtors and their estates for such breach or failure to perform. For the avoidance of doubt, the Debtors' retention of a Deposit shall not constitute a waiver of any of the Debtors' legal or equitable rights relating to a Winning Bidder's or Back-Up Bidder's breach or failure to perform, and all such rights and remedies are

preserved.  The Back-Up Bidder shall have its Deposit returned within three (3) business days of the Winner Bidder closing on the Sale.

15.    **Notice and Consultation Parties**

(a) The term "**Bidding Procedures Notice Parties**" as used in these Bidding Procedures shall mean: (i) the Debtors, 1743 Sidewinder Drive, 1st Floor, Park City, Utah 84060, Attn: Robert J. Corliss, Chief Executive Officer (rjcorliss@corlissmoore.com); (ii) Morris James, LLP, Proposed counsel for the Debtors, attn: Jeffery R. Waxman, Esq. (302-888-5842; jwaxman@morrisjames.com) or Vincent Cannizzaro, Esq. (302-888-6867; VCannizzaro@morrisjames.com); (iii) Configure Partners, LLC, proposed investment banker for the Debtors, attn: Jay Jacquin (404-448-0010 x101; jjacquin@configurepartners.com), or Matt Guill (404-448-0010 x110; mguill@configurepartners.com) ; and (iv) counsel to the Stalking Horse Purchaser, the DIP Lenders, and Prepetition Lenders, Geoffrey T. Raicht, PC, 99 Biltmore Ave., Rye, NY 10580, Attn: Geoffrey T. Raicht, Esq. (graicht@raichtlawpc.com) and Chipman Brown Cicero & Cole, LLP, 1313 N. Market Street, Suite 5400, Wilmington, DE 19801, Attn: William E. Chipman Jr., Esq. (chipman@chipmanbrown.com).

(b) The term "**Consultation Parties**" as used in these Bidding Procedures shall mean any official committees appointed in these chapter 11 cases, including any official committee of unsecured creditors (the "**Creditors' Committee**").

In the event that any Consultation Party or any member of any Creditors' Committee or an affiliate of any of the foregoing submits a bid that is a Qualifying Bid, any obligation of the Debtors to consult with the bidding party established under these Bidding Procedures will be waived without further action; provided that the bidding party will have the same rights as any other Qualifying Bidder set forth above.

If a member of any Creditors' Committee submits a Qualifying Bid, any Creditors' Committee will continue to have consultation rights as set forth in these Bidding Procedures; provided that any Creditors' Committee shall exclude such member from any discussions or deliberations regarding the sale of the Assets and shall not provide any information regarding the sale of the Assets to such member.

16.    **Reservation of Rights**

Notwithstanding any of the foregoing, the Debtors and their estates reserve the right to, after consultation with the Lenders and the Consultation Parties, modify the Bidding Procedures at or prior to the Auction, including, without limitation, to extend the deadlines set forth herein, modify bidding increments, waive terms and conditions set forth herein with respect to any or all potential bidders (including, without limitation, the Bid Requirements), impose additional terms and conditions with respect to any or all Potential Bidders, adjourn or cancel the Auction at or prior to the Auction, and adjourn the Sale Hearing.

12

**<u>Exhibit 2</u>**

Sale Notice

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| MY JOB MATCHER, INC., *et al.*,[1] | Case No. 25-11280 |
| Debtors. | (Jointly Administered) |
| | **Re: Docket No. _____** |

### NOTICE OF PROPOSED SALE OF ASSETS, STALKING HORSE APA, BIDDING PROCEDURES, AUCTION, AND SALE HEARING

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"), on July 6, 2025 (the "**Petition Date**"), in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"). The Debtors are seeking to sell (the "**Sale**") all or substantially all of their assets (the "**Assets**"), free and clear of all Encumbrances other than Assumed Liabilities and Permitted Encumbrances.[2]  In connection with the Sale, the Debtors have entered into an Asset Purchase Agreement dated as of July [__], 2025 (the "**Stalking Horse APA**") with Job.com Acquisition Co., LLC (the "**Stalking Horse Purchaser**"),[3] subject to the Debtors' acceptance of higher or otherwise better offers in accordance with the Bidding Procedures (as defined below).

**PLEASE TAKE FURTHER NOTICE** that by order dated July [__], 2025 [Docket No. __] (the "**Bidding Procedures Order**"), the Bankruptcy Court approved certain relief requested in the related motion [Docket No. __] (the "**Bidding Procedures Motion**") and certain "**Bidding Procedures**" that govern the Sale.  All interested parties should carefully read the Bidding Procedures Order and the Bidding Procedures.  Copies of the Bidding Procedures Motion, the Bidding Procedures Order, the Bidding Procedures and the Stalking Horse APA (which is attached to the Bidding Procedures Motion) are available upon request to the Debtors' claims and noticing agent, Stretto, Inc., via telephone at 833.820.5026 (Toll-Free) or 714.442.4486 (International) or via email at TeamMyJobMatcher@stretto.com, and are available for download at https://cases.stretto.com/myjobmatcher.  A separate notice will be provided to counterparties to executory contracts and unexpired leases with the Debtors that may be assumed and assigned in connection with the Sale.  **Any interested bidder should contact Configure Partners, LLC, the Debtors' proposed**

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  My Job Matcher, Inc. (9880); Job.com-HV, Inc. (DE) (5873); Job.com-HV, Inc. (FL) (5873); Job.com-Fortus, Inc. (6145); Job.com-Endevis, Inc. (1956); Job.com-QCI, Inc. (4364); Princeton One-Job.com, Inc. (4752); and Princeton Search L.L.C. (6163).  For purposes of these chapter 11 cases, the Debtors' service address is 1743 Sidewinder Drive, 1st Floor, Park City, Utah 84060.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order (as defined below).

[3]    The Stalking Horse Purchaser is an affiliate of the Prepetition Lenders and DIP Lenders as such terms are defined in the First Day Declaration.

**investment banking advisor:  Jay Jacquin (404-448-0010 x101; jjacquin@configurepartners.com), or Matt Guill (404-448-0010 x110; mguill@configurepartners.com),**

- The deadline to submit a bid for any Assets is:  **September 17, 2025 at 4:00 p.m. (ET)**.

- Any objections to the Sale or the relief requested in connection with the Sale (a "**Sale Objection**"), other than a Contract Objection, which shall be governed by the Assumption and Assignment Procedures, must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) set forth the specific basis for the Sale Objection; (d) be filed with the Clerk of the Court, 824 N. Market Street, 3rd Floor, Wilmington, Delaware 19801 **on or before 4:00 p.m. (ET) on  September 19, 2025** (the "**Sale Objection Deadline**"), and proof of service of such Sale Objection upon the Objection Notice Parties shall be filed with the Bankruptcy Court as and when required by the Local Rules; and (e) be served upon the Objection Notice Parties.  The "**Objection Notice Parties**" are as follows: (i) proposed counsel to the Debtors, proposed counsel to the Debtors, Morris James, LLP, 500 Delaware Avenue, Suite 1500, Wilmington, Delaware 19801, Attn Jeffrey R. Waxman, Esq. (302-888-5842; jwaxman@morrisjames.com) and Vincent Cannizzaro, Esq. VCannizzaro@morrisjames.com); (ii) counsel to any official committee of unsecured creditors appointed in these chapter 11 cases; (iii) counsel to the Stalking Horse Purchaser, the DIP Lenders, and Prepetition Lenders, Geoffrey T. Raicht, PC, 99 Biltmore Ave., Rye, NY  10580, Attn: Geoffrey T. Raicht, Esq. (graicht@raichtlawpc.com) and Chipman Brown Cicero & Cole, LLP, 1313 N. Market Street, Suite 5400, Wilmington, DE 19801, Attn: William E. Chipman Jr., Esq. (chipman@chipmanbrown.com);  and (iv) the Office of the United States Trustee for the District of Delaware, 855 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Hannah McCollum, Esq. (Hannah.McCollum@usdoj.gov).

- An auction for the Assets, unless cancelled or adjourned in accordance with the Bidding Procedures Order, will be held on **September 23, 2025 at 10:00 a.m. (ET)**, at the offices of Morris James, LLP, 500 Delaware Avenue, Suite 1500, Wilmington, DE 19801, or virtually via telephone and/or video conference pursuant to information to be timely provided by the Debtors to the Auction Participants.

- Unless adjourned in accordance with the Bidding Procedures Order, the Bankruptcy Court will conduct a hearing (the "**Sale Hearing**") to consider the Sale on **[_____], 2025 at [____] (ET)**,

**PLEASE TAKE FURTHER NOTICE THAT IF A SALE OBJECTION IS NOT FILED AND SERVED ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER, THE OBJECTING PARTY MAY BE BARRED FROM OBJECTING TO THE SALE AND BEING HEARD AT THE SALE HEARING, AND THE BANKRUPTCY COURT MAY ENTER THE SALE ORDER WITHOUT**

2

**FURTHER NOTICE TO SUCH PARTY.**


Dated:   July __, 2025                                      **MORRIS JAMES LLP**
           Wilmington, Delaware


                                                           /s/ _____
                                                           Carl N. Kunz, III (DE Bar No. 3201)
                                                           Jeffrey R. Waxman (DE Bar No. 4159)
                                                           Christopher M. Donnelly (DE Bar No. 7149)
                                                           Samantha L. Rodriguez (DE Bar No. 7524)
                                                           500 Delaware Avenue, Suite 1500
                                                           Wilmington, DE 19801
                                                           Telephone: (302) 888-6800
                                                           Facsimile: (302) 571-1750
                                                           E-mail:     ckunz@morrisjames.com
                                                                       jwaxman@morrisjames.com
                                                                       cdonnelly@morrisjames.com
                                                                       srodriguez@morrisjames.com

                                                           *Proposed Counsel for the Debtors*
                                                           *and Debtors in Possession*

## **Exhibit 3**

Assumption Notice

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| MY JOB MATCHER, INC., *et al.*,[1] | Case No. 25-11280 (KBO) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket No. _____** |

### NOTICE OF POSSIBLE ASSUMPTION AND ASSIGNMENT AND CURE AMOUNTS WITH RESPECT TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF THE DEBTORS

### PLEASE TAKE NOTICE THAT:

The above-captioned debtors and debtors-in-possession (the "**Debtors**") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"), on July 6, 2025, in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"). The Debtors are seeking to assume and assign certain of their executory contracts and unexpired leases in connection with the sale (the "**Sale**") of all or substantially all of their assets (the "**Assets**"), free and clear of all Encumbrances other than Assumed Liabilities and Permitted Encumbrances.[2] In connection with the Sale, the Debtors have entered into an Asset Purchase Agreement dated as of July [__], 2025 (the "**Stalking Horse APA**") with Job.com Acquisition Co., LLC (the "**Stalking Horse Purchaser**"),[3] subject to the Debtors' acceptance of higher or otherwise better offers in accordance with the Bidding Procedures.

By order, dated July [__], 2025 [Docket No. ____] (the "**Bidding Procedures Order**"), the Bankruptcy Court approved certain relief requested in the related motion [Docket No. ___] (the "**Bidding Procedures Motion**"), certain "**Assumption and Assignment Procedures**" that govern the Debtors' assumption and assignment of their executory contracts and unexpired leases in connection with the Sale, and certain "**Bidding Procedures**" that govern the sale of the Assets to the highest or otherwise best bidders. Copies of the Bidding Procedures Motion, the Bidding Procedures Order, the Bidding Procedures and the Stalking Horse APA are available for download at https://cases.stretto.com/myjobmatcher (the "**Case Website**") or from the Debtors' claims and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: My Job Matcher, Inc. (9880); Job.com-HV, Inc. (DE) (5873); Job.com-HV, Inc. (FL) (5873); Job.com-Fortus, Inc. (6145); Job.com-Endevis, Inc. (1956); Job.com-QCI, Inc. (4364); Princeton One-Job.com, Inc. (4752); and Princeton Search L.L.C. (6163). For purposes of these chapter 11 cases, the Debtors' service address is 1743 Sidewinder Drive, 1st Floor, Park City, Utah 84060.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order (as defined below).

[3] The Stalking Horse Purchaser is an affiliate of the Prepetition Lenders and DIP Lenders as such terms are defined in the First Day Declaration.

noticing agent, Stretto, Inc., via telephone at 833.820.5026 (Toll-Free) or 714.442.4486 (International) or via email at TeamMyJobMatcher@stretto.com.

**You are receiving this Notice because you may be a party to an unexpired lease or an executory contract that *may* be assumed and assigned (collectively, the "Contracts") in connection with such Sale. A list of the Contracts is attached hereto as** Exhibit A**.**

The Debtors have determined the cure amounts owing (the "**Cure Amounts**") under each Contract, and have listed the applicable Cure Amounts on Exhibit A attached hereto. The Cure Amounts are the only amounts proposed to be paid upon any assumption and assignment of the Contracts, in full satisfaction of all amounts outstanding under the Contracts.

**To the extent that a Counterparty to a Contract objects to (i) the assumption and assignment of such party's Contract, (ii) the applicable Cure Amount, or (iii) the provision of adequate assurance of future performance, the Counterparty must file and serve an objection (a "**Contract Objection**"). Any Contract Objection shall: (i) be in writing; (ii) comply with the Bankruptcy Rules and the Local Rules; (iii) be filed with the Clerk of the Court, 824 N. Market Street, 3rd Floor, Wilmington, Delaware 19801 on or before 4:00 p.m. (ET) on September 19, 2025 (the "**Contract Objection Deadline**"), and proof of service of such Contract Objection upon the Objection Notice Parties shall be filed with the Bankruptcy Court as and when required by the Local Rules; (iv) be served upon the Objection Notice Parties; and (v) state with specificity the grounds for such objection, including, without limitation, the fully liquidated cure amount and the legal and factual bases for any unliquidated cure amount that the Counterparty believes is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code for the Contract, along with the specific nature and dates of any alleged defaults, the pecuniary losses, if any, resulting therefrom, and the conditions giving rise thereto.**

**\*Any objections to adequate assurance of performance by the Stalking Horse Purchaser shall be filed by the Contract Objection Deadline.\***

**\*\*Any objections to adequate assurance of future performance by a Winning Bidder other than the Stalking Horse Purchaser shall be filed not later than September 26, 2025 at 4:00 p.m. (ET).\*\***

The "**Objection Notice Parties**" are as follows: (i) proposed counsel to the Debtors, Morris James, LLP, 500 Delaware Avenue, Suite 1500, Wilmington, Delaware 19801, Attn: Jeffrey R. Waxman, Esq. (jwaxman@morrisjames.com) and Vincent Cannizzaro, Esq. (v Cannizzaro@morrisjames.com); (ii) counsel to any official committee of unsecured creditors appointed in these chapter 11 cases; (iii) counsel to the Stalking Horse Purchaser, the DIP Lenders, and Prepetition Lenders, Geoffrey T. Raicht, PC, 99 Biltmore Ave., Rye, NY 10580, Attn: Geoffrey T. Raicht, Esq. (graicht@raichtlawpc.com) and Chipman Brown Cicero & Cole, LLP, 1313 N. Market Street, Suite 5400, Wilmington, DE 19801, Attn: William E. Chipman Jr., Esq. (chipman@chipmanbrown.com); and (iv) the Office of the United States Trustee for the District of Delaware, 855 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: Hannah McCollum, Esq. (Hannah.McCollum@usdoj.gov).

**If no Contract Objection is timely received with respect to a Selected Assumed Contract: (i) the Counterparty to such Selected Assumed Contract shall be deemed to have consented to the assumption by the Debtors and assignment to the Stalking Horse Purchaser or, in the event the Stalking Horse Purchaser is not the Winning Bidder, then to the Winning Bidder, of the Selected Assumed Contract, and be forever barred from asserting any objection with regard to such assumption and assignment (including, without limitation, with respect to adequate assurance of future performance by the Stalking Horse Purchaser or, in the event the Stalking Horse Purchaser is not the Winning Bidder, then the Winning Bidder); (ii) any and all defaults under the Selected Assumed Contract and any and all pecuniary losses related thereto shall be deemed cured and compensated pursuant to section 365(b)(1)(A) and (B) of the Bankruptcy Code; and (iii) the Cure Amount for such Selected Assumed Contract shall be controlling, notwithstanding anything to the contrary in such Selected Assumed Contract, or any other related document, and the Counterparty shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other claims related to such Selected Assumed Contract against the Debtors and their estates or the Stalking Horse Purchaser or, in the event the Stalking Horse Purchaser is not the Winning Bidder, then the Winning Bidder, or the property of any of them, that existed prior to the entry of the Sale Order.**

**If no timely objection is received as to adequate assurance of future performance with respect to a Contract, the non-Debtor party to such Contract shall be deemed to have consented to the assumption, assignment, and/or transfer of the applicable Contract to the proposed assignee, and shall be forever barred and estopped from asserting or claiming that any conditions to such assumption, assignment, and/or transfer must be satisfied under such applicable Contract or that any related right or benefit under such applicable Contract cannot or will not be available to the proposed assignee.**

Subject to the terms of the Bidding Procedures Order, an auction (the "**Auction**") for the Assets, including the Contracts, will be conducted on **September 23, 2025 at 10:00 a.m. (ET),** at the offices of Morris James, 500 Delaware Avenue, Suite 1500, Wilmington, DE 19801, or virtually via telephone and/or video conference pursuant to information to be timely provided by the Debtors to the Auction Participants. After the Auction, the Debtors will file and serve a notice that identifies the Winning Bidder for the Assets, including any Contracts**.**

**The Debtors will seek to assume and assign the Contracts that have been selected by the Winning Bidder (which, for the avoidance of doubt, may be the Stalking Horse Purchaser) (collectively, the "Selected Assumed Contracts") at a hearing before the Honorable [_____], in the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, Wilmington, Delaware 19801, [___] Floor, Courtroom #[___], (a "Sale Hearing") on [_____,] 2025 at [_____] (ET), or such other date as determined by the Debtors, in consultation with the Stalking Horse Purchaser or, in the event the Stalking Horse Purchaser is not the Winning Bidder, then in consultation with the Winning Bidder, in accordance with the terms of the Bidding Procedures Order.** To the extent that the parties are unable to consensually resolve any Contract Objection prior to the commencement of the Sale Hearing, including, without limitation, any dispute with respect to the Cure Amount (any such dispute, a "**Cure Dispute**"), such Contract Objection will be adjudicated at the Sale Hearing or at such other date and time as may be determined by the Debtors, in consultation with the Winning

Bidder, or fixed by the Bankruptcy Court; provided, however, that if the Contract Objection relates solely to a Cure Dispute, the Selected Assumed Contract may be assumed by the Debtors and assigned to the Stalking Horse Purchaser or, in the event the Stalking Horse Purchaser is not the Winning Bidder, then to the Winning Bidder, provided that the cure amount that the Counterparty asserts is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code (or such lower amount as agreed to by the Counterparty) is deposited in a segregated account by the Debtors or the Stalking Horse Purchaser or, in the event the Stalking Horse Purchaser is not the Winning Bidder, then the Winning Bidder, pending the Bankruptcy Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.

Dated:  July __, 2025
        Wilmington, Delaware

**MORRIS JAMES LLP**

*/s/*_____
Carl N. Kunz, III (DE Bar No. 3201)
Jeffrey R. Waxman (DE Bar No. 4159)
Christopher M. Donnelly (DE Bar No. 7149)
Samantha L. Rodriguez (DE Bar No. 7524)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail:    ckunz@morrisjames.com
           jwaxman@morrisjames.com
           cdonnelly@morrisjames.com
           srodriguez@morrisjames.com

*Proposed Counsel for the Debtors*
*and Debtors in Possession*

4

**Exhibit A to Assumption Notice**