## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| MY JOB MATCHER, INC., *et al.*,[1] | Case No. 25-11280 (KBO) |
| Debtors. | (Jointly Administered) |
|  | **D.I. 12** |

## INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SENIOR SECURED SUPERPRIORITY FINANCING, (II) AUTHORIZING THE DEBTORS' LIMITED USE OF CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING CLAIMS WITH SUPERPRIORITY ADMINISTRATIVE EXPENSES STATUS, (IV) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES, (V) SCHEDULING A FINAL HEARING, AND (VI) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**") of the above referenced debtors and debtors in possession (collectively, the "**Debtors**") in the above-referenced chapter 11 cases (the "**Chapter 11 Cases**"), for entry of an interim order (this "**Interim Order**") and a final order ("**Final Order**"), pursuant to sections 105, 361, 362, 363, 364, 503, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "**Bankruptcy Code**"), Rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "**Bankruptcy Rules**"), and Rule 4001-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), seeking, *inter alia*:

(i)      authority for the Debtors, including My Job Matcher, Inc. (the "**Borrower**"), to obtain up to $9,900,000 in principal amount of senior secured postpetition financing on a superiority basis in respect of a new money delayed draw term loan facility (the "**DIP Facility**," and loans made pursuant to the DIP Facility,

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  My Job Matcher, Inc. (9880); Job.com-HV, Inc. (DE) (5873); Job.com-HV, Inc. (FL) (5873); Job.com-Fortus, Inc. (6145); Job.com-Endevis, Inc. (1956); Job.com-QCI, Inc. (4364); Princeton One-Job.com, Inc. (4752); and Princeton Search L.L.C. (6163).  For purposes of these chapter 11 cases, the Debtors' service address is 1743 Sidewinder Drive, 1st Floor, Park City, Utah 84060.

the "**DIP Loans**," and the commitments to make DIP Loans thereunder, the "**DIP Commitments**"), which amount includes, subject to entry of a Final Order, a "roll up" on a dollar-for-dollar basis of $3,685,148.79 that was borrowed and incurred by the Debtors, and is due and owing, as a result of the bridge financing from and after April 25, 2025 under the Prepetition Credit Agreement (as defined below) (the "**Prepetition Credit Agreement Roll-Up**"),[2] on the terms and conditions set forth in this Interim Order and that certain DIP Delayed Draw Term Loan Promissory Note (the "**DIP Note**," substantially in the form attached hereto as <u>Annex 2</u> and together with this Interim Order, and all appendices, exhibits or schedules hereto and to the DIP Note, including, without limitation, the DIP Budget (as defined below), and all other agreements, instruments, pledge agreements, intercreditor agreements, guarantees, fee letters, control agreements, and other ancillary documents related thereto (including any security agreements, intellectual property security agreements, mortgages or notes) as the same may be amended, restated, supplemented, waived or modified from time to time in accordance with the terms hereof and thereof, collectively, the "**DIP Loan Documents**"),[3] among the Borrower, the other Debtors, Serengeti Multi-Series Master LLC-Series ARR, GT Partners Private Credit Finance LLC and GT Monterey Cypress Finance LLC (collectively, the "**DIP Lenders**") and Ankura Trust Company, LLC, as the DIP Agent (the "**DIP Agent**" and, together with the DIP Lenders, the "**DIP Secured Parties**");

(ii)     authority for the Debtors to execute and deliver the DIP Loan Documents and to perform such other acts as may be necessary or desirable in connection with the DIP Loan Documents;

(iii)    authority for the Debtors to borrow up to $2,000,000 of DIP Loans (the "**Interim Amount**") to be available and funded following the entry of the Interim Order;

(iv)    authority for the Debtors to grant security interests, liens, and superpriority claims to the DIP Agent, on behalf of itself and the other DIP Secured Parties, to secure all obligations of the Debtors under and with respect to the DIP Facility (collectively, the "**DIP Obligations**");

(v)     authority for the Debtors, pursuant to sections 105, 361, 362, 363, and 507 of the Bankruptcy Code to use cash collateral, as such term is defined in section 363(a) of the Bankruptcy Code ("**Cash Collateral**");

---

[2]    The Prepetition Credit Agreement Roll-Up is subject to entry of a Final Order.

[3]    Capitalized terms not otherwise defined herein shall have the meaning ascribed to those terms in the DIP Loan Documents.

17408291

(vi)     authority for the Debtors to pay the principal, interest, premiums, fees, Agency Fees, expenses, and other amounts payable under the DIP Loan Documents as such become earned, due and payable; and

(vii)    that this Court (a) hold an interim hearing (the "**Interim Hearing**") to consider the relief sought in the Motion and entry of the proposed Interim Order, and (b) schedule a final hearing (the "**Final Hearing**") to consider entry of the Final Order granting the relief requested in the Motion on a final basis;

and the Interim Hearing having been held by this Court on July 8, 2025; and pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2, due and sufficient notice of the Motion and the relief sought at the Interim Hearing having been given under the particular circumstances by the Debtors; this Court having considered the Motion, the exhibits attached thereto, and the First Day Declaration (collectively, the "**Declarations**") and all other pleadings related thereto, including the record made by the Debtors at the Interim Hearing; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; and it appearing that approval of the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, and all parties-in-interest, and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and it appearing that the Debtors' entry into the DIP Documents is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor:

**THE COURT HEREBY FINDS AS FOLLOWS:**

A.     <u>Petition Date</u>.  On July 6, 2025 (the "**Petition Date**"), each Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

B.     <u>Debtors in Possession</u>.   The Debtors are continuing to operate their respective businesses and manage their respective properties as debtors in possession pursuant to

3

sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee has been appointed in these Chapter 11 Cases.

C.      Committee Formation. No official committee of unsecured creditors ("Committee"), as provided for under section 1102 of the Bankruptcy Code, has been appointed in the Chapter 11 Cases.

D.      Notice. Notice of the Motion and the Interim Hearing has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice of the Motion with respect to the relief requested at the Interim Hearing or the entry of this Interim Order shall be required.

E.      Debtors' Stipulations. Without prejudice to the rights of other parties in interest, including any Committee, as set forth in paragraph 15 herein, the Debtors stipulate and agree to the stipulations and agreements set forth in Annex 1 hereto (collectively, the "Debtors' Stipulations").

F.      Findings Regarding Postpetition Financing.

(a)  The Debtors have an immediate and critical need to obtain postpetition financing under the DIP Facility and to use Cash Collateral, among other things, to fund working capital requirements, costs, and expenses of administration of the Chapter 11 Cases and fees and expenses relating to the DIP Facility during the pendency of the Chapter 11 Cases.  Without access to the DIP Facility and the continued use of Cash Collateral to the extent authorized pursuant to this Interim Order, the Debtors and their estates would suffer immediate and irreparable harm.  The Debtors do not have sufficient available sources of working capital and financing to operate their businesses, maintain their properties in the ordinary course of business, or preserve the going-

17408291

concern value of their estates, without access to the DIP Facility and the authorized use of Cash Collateral.

(b) The DIP Facility is the best source of debtor-in-possession financing available to the Debtors at this time. Given their current financial condition, financing arrangements, and capital structure, the Debtors have been and continue to be unable to obtain financing from sources other than the DIP Lenders on terms more favorable than the DIP Facility. The Debtors would be unable to obtain (i) adequate unsecured credit allowable either (a) under sections 364(b) and 503(b)(1) of the Bankruptcy Code, or (b) under section 364(c)(1) of the Bankruptcy Code, (ii) adequate credit secured only by (x) a senior lien on unencumbered assets of their estates under section 364(c)(2) of the Bankruptcy Code, and (y) a junior lien on encumbered assets under section 364(c)(3) of the Bankruptcy Code, or (iii) secured credit under section 364(d)(1) of the Bankruptcy Code from sources other than the DIP Secured Parties on terms more favorable than the terms of the DIP Facility. The only viable source of secured credit available to the Debtors, other than the use of Cash Collateral, is the DIP Facility. The Debtors require both additional financing under the DIP Facility and the continued use of Cash Collateral under the terms of this Interim Order to satisfy their postpetition liquidity needs.

(c) The DIP Lenders have indicated a willingness to provide the Debtors with the DIP Facility, but solely on the terms and conditions set forth in this Interim Order and in the DIP Loan Documents. Accordingly, after considering all of their practical alternatives, the Debtors have concluded, in an exercise of their sound business judgment, that the financing to be provided by the DIP Lenders pursuant to the terms of this Interim Order and the DIP Loan Documents represents the best financing currently available to the Debtors.

17408291

(d) The consent of the Prepetition Secured Parties to the priming of the Prepetition Liens by the DIP Liens, the Carve-Out, and use of the Prepetition Collateral, including Cash Collateral, by the Debtors, is limited to this Interim Order and the DIP Facility presently before this Court. Furthermore, the consent of the Prepetition Secured Parties to the priming of the Prepetition Liens by the DIP Liens and the Carve-Out, and use of the Prepetition Collateral, including Cash Collateral, by the Debtors does not constitute, and shall not be construed as constituting, an acknowledgment or stipulation by the Prepetition Secured Parties that their interests in the Prepetition Collateral are adequately protected pursuant to this Interim Order or otherwise, provided, however, the Prepetition Secured Parties agree that the Adequate Protection granted to the Prepetition Secured Parties in this Interim Order is reasonable and calculated to protect the interests of the Prepetition Secured Parties, subject to the rights of the Prepetition Secured Parties to seek a modification of such Adequate Protection, as set forth below.

(e) The security interests and liens granted pursuant to this Interim Order to the DIP Lenders are appropriate under section 364(d) of the Bankruptcy Code because, among other things, (i) such security interests and liens do not impair the interests of any holder of a valid, perfected, prepetition security interest or lien in the property of the Debtors' estates, (ii) the holders of such valid, perfected, prepetition security interests and liens have consented to the security interests and priming liens granted pursuant to this Interim Order to the DIP Lenders or (iii) the interests of any holder of a valid, perfected, prepetition security interest or lien are otherwise adequately protected.

(f) Good cause has been shown for immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2) and Local Rule 4001-2(b). In particular, the authorization granted herein for the Debtors to execute the DIP Loan Documents, to continue using

17408291

the Prepetition Collateral, including Cash Collateral, and to obtain interim financing, including on a priming lien basis, is necessary to avoid immediate and irreparable harm to the Debtors and their estates.  Entry of this Interim Order is in the best interest of the Debtors and their estates and creditors.  The terms of the DIP Loan Documents (including the Debtors' continued use of the Prepetition Collateral, including Cash Collateral) are fair and reasonable under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration for the Prepetition Lender's consent thereto.

G.    Sections 506(c), 552(b) and Marshaling. In light of, among other things (i) the DIP Agent's and the DIP Secured Parties' agreement that their liens and superpriority claims shall be subject to the Carve-Out; (ii) the Prepetition Secured Parties' agreement that their respective Prepetition Liens and claims, including any Adequate Protection Liens and claims, including Section 507(b) Claims, shall be subject to the Carve-Out and the DIP Liens, as set forth herein; (iii) the authority to use Cash Collateral as provided herein; and (iv) the DIP Agent's, the other DIP Secured Parties', and the Prepetition Secured Parties' agreement to the payment of certain expenses of administration of these Chapter 11 Cases, upon entry of the Final Order, (a) the DIP Agent and the other DIP Secured Parties seek a waiver of the provisions of section 506(c) of the Bankruptcy Code and the equitable doctrine of marshaling and other similar doctrines and (b) the Prepetition Secured Parties seek a waiver of any "equities of the case" exception under section 552(b) of the Bankruptcy Code, and a waiver of the provisions of section 506(c) of the Bankruptcy Code and the equitable doctrine of marshaling and other similar doctrines.

H.    Good Faith.  Based upon the pleadings and proceedings of record in the Chapter 11 Cases, (a) the terms and conditions of the DIP Facility and the use of the Cash

7

Collateral have been negotiated in good faith and at arm's length among the Debtors, the DIP

Secured Parties, and the Prepetition Secured Parties with the assistance and counsel of their

respective advisors; (b) the use of Cash Collateral, including, without limitation, pursuant to this

Interim Order, has been allowed in "good faith" within the meaning of section 364(e) of the

Bankruptcy Code; (c) any credit to be extended, loans to be made, and other financial

accommodations to be extended to the Debtors by the DIP Secured Parties or the Prepetition

Secured Parties, including, without limitation, pursuant to this Interim Order, have been allowed,

advanced, extended, issued, or made, as the case may be, in "good faith" within the meaning of

section 364(e) of the Bankruptcy Code by the DIP Secured Parties and the Prepetition Secured

Parties in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code;

and (d) the DIP Facility, the DIP Liens (as defined below), the DIP Superpriority Claims (as

defined below), the Adequate Protection Liens (as defined below), and the Section 507(b) Claims

(as defined below) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code

in the event that this Interim Order or any provision hereof is reversed or modified on appeal.

       I.      <u>Immediate Entry</u>. Sufficient cause exists for immediate entry of this Interim

Order pursuant to Bankruptcy Rule 4001(b)(2) and 4001(c)(2).

       Based on the foregoing, and upon the record made before this Court at the Interim

Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**[4]

       1.      <u>Jurisdiction and Venue</u>.  Consideration of the Motion constitutes a "core

proceeding" as defined in 28 U.S.C. § 157(b)(2).  This Court has jurisdiction over this proceeding

---

[4]    Pursuant to Bankruptcy Rule 7052, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact.

and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.  Venue for

the Chapter 11 Cases and the proceedings on the Motion is proper in this district pursuant to 28

U.S.C. §§ 1408 and 1409.

2.      Notice.  On the Petition Date, the Debtors filed the Motion with this Court and

pursuant to Bankruptcy Rules 2002, 4001, and 9014, and the Local Bankruptcy Rules of this Court,

the Debtors provided notice of the Motion and the Interim Hearing by electronic mail, facsimile,

hand delivery, or overnight delivery to the Notice Parties (as defined in the Motion).  Given the

nature of the relief sought in the Motion, this Court concludes that the form, scope, and timing of

the foregoing notice complies with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules,

and any other applicable law, and, under the circumstances, no further notice relating to the Interim

Hearing or Motion is necessary or required.

3.      The DIP Budget.

(a)     Subject to and in accordance with the terms of the DIP Note and the other

DIP Loan Documents, the Borrower shall from time to time prepare and provide to the DIP Agent

a rolling 13-week cash flow forecast setting forth the Debtors' projected cash receipts and cash

disbursements on a weekly basis, substantially in the form of the initial budget annexed hereto as

Annex 3 (the initial budget and each subsequent budget, a "**DIP Budget**").  The DIP Budget shall

be in form and substance satisfactory to the DIP Lenders; provided, that the DIP Lenders shall be

deemed to have consented to the DIP Budget unless they have advised the Borrower otherwise

within 3 days of receiving such updated DIP Budget.  For the avoidance of doubt, until an updated

DIP Budget is approved by the DIP Lenders or deemed approved by the DIP Lenders, the existing

DIP Budget shall remain in effect.  The Borrower may use the proceeds of the DIP Facility and

Cash Collateral for the purposes set forth in the DIP Budget, together with the Permitted Variance

(as defined in the DIP Note) subject to the terms and conditions set forth in the DIP Note, the other DIP Loan Documents and this Interim Order.

(b)      The DIP Budget may be amended, supplemented, extended, or otherwise modified from time to time in any manner as to which Debtors and the DIP Lenders mutually agree in writing without further order of this Court.

(c)      The Debtors shall promptly provide any DIP Budget, any variance reporting and any modified DIP Budget to the U.S. Trustee and counsel to any Committee, if any; provided, however, the Debtors may take appropriate actions with respect to confidentiality of any portion of the DIP Budget and DIP Budget Variance Report delivered to the U.S. Trustee and counsel to any Committee.

4.      Use of Prepetition Collateral (including Cash Collateral).  Immediately upon entry of this Interim Order, the Debtors are authorized to use Prepetition Collateral (including Cash Collateral), subject to and as set forth in the DIP Budget, this Interim Order, and the DIP Loan Documents.

5.      Borrowing Authorization.

(a)      The DIP Facility.  The DIP Facility is hereby approved on an interim basis as set forth herein. The Debtors are expressly and immediately authorized to execute and deliver the DIP Loan Documents, enter into and perform the transactions contemplated in this Interim Order and the DIP Loan Documents and such additional documents, instruments, and agreements as may be reasonably required by the DIP Agent (acting at the direction of the Required Lenders) to implement the terms or effectuate the purposes of this Interim Order, and to receive financial accommodations and borrow under the DIP Facility subject to the terms set forth herein and in the DIP Note.  The DIP Note and the other DIP Loan Documents shall constitute and evidence the

validity and binding effect of the DIP Obligations, which are hereby deemed to be the legal, valid, and binding obligations of the Debtors and each of their respective estates, enforceable in accordance with the terms hereof and the DIP Loan Documents against each such Debtor, its respective estate, and any successor of each such Debtor or any representative of the estates (including a trustee, responsible person, or examiner with expanded powers appointed in the Chapter 11 Cases or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "**Successor Cases**").  The Debtors shall be jointly and severally liable for the DIP Obligations.  No obligation, payment, transfer, or grant of collateral security under this Interim Order or under the DIP Loan Documents as authorized by this Interim Order shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under chapter 5 of the Bankruptcy Code, section 724(a) of the Bankruptcy Code, or any other provision with respect to avoidance actions under the Bankruptcy Code or applicable state or foreign law equivalents) or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise, but other than to the Carve-Out), counterclaim, cross-claim, defense, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

(b)    <u>Authorization to Borrow and Use Cash Collateral</u>.  To prevent immediate and irreparable harm to the Debtors' estates, from the entry of this Interim Order through and including the earliest to occur of (i) entry of the Final Order and (ii) the DIP Termination Date (as defined below), subject to the terms, conditions, and limitations on availability set forth in the DIP Loan Documents and this Interim Order, the Debtors are hereby authorized to (i) borrow under the DIP Facility in an aggregate outstanding principal amount equal to the Interim Amount, and

(ii) use Cash Collateral in accordance with the terms of this Interim Order.

(c)    Use of Proceeds.  The Debtors are authorized to utilize the proceeds of the DIP Facility in accordance with the DIP Budget to (i) pay general corporate or working capital requirements, (ii) pay the costs and expenses of administration of the Chapter 11 Cases, including the fees and expenses of professionals associated with the Chapter 11 Cases, (iii) pay fees and expenses relating to the DIP Facility during the pendency of the Chapter 11 Cases, and (iv) provide Adequate Protection.

6.    Due Authorization.  The Debtors acknowledge, represent, stipulate, and agree, and this Court hereby finds and orders, that:

(a)    in entering into the DIP Loan Documents and obtaining the use of Cash Collateral, and as consideration therefor and for the other accommodations and agreements of the DIP Secured Parties reflected herein and in the DIP Loan Documents, until such time as all of the DIP Obligations are indefeasibly paid in full in cash (excluding contingent indemnification obligations for which no claim has been asserted) and the termination of the DIP Loan Documents in accordance with their terms and all DIP Commitments, with such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms (the "**DIP Repayment**"), it shall be an Event of Default if the Debtors in any way prime or seek to prime the DIP Obligations, the DIP Liens, or the DIP Superpriority Claims provided to the DIP Secured Parties under this Interim Order by offering a subsequent lender or a party in interest a superior or *pari passu* lien or administrative expense pursuant to sections 105(a), 326, 328, 330, 331, 364(c), 364(d), 503, 506, 507, 546(c), 552(b), 726 (other than expenses of a trustee under section 726(b)) or 1114 of the Bankruptcy Code) or otherwise or acquiescing thereto except as expressly authorized in the DIP Note (provided, that the DIP Liens, the DIP Superpriority

12

Claims, the Prepetition Liens, the Adequate Protection Liens (defined below), and the Section 507(b) Claims (defined below) shall be subordinate and subject to the Carve-Out (defined below) and Permitted Prior Senior Liens in accordance with paragraph 10 hereof);

(b)    the Debtors are liable for, and hereby absolutely and unconditionally guarantee to the DIP Secured Parties the full and prompt payment when due (whether at maturity or earlier, by reason of acceleration or otherwise, and at all times thereafter) and performance of, all DIP Obligations owed or hereafter owing to the DIP Secured Parties by the Borrower.  Each Debtor agrees that its obligations hereunder shall be, and is, absolute and unconditional for all purposes in these Chapter 11 Cases and any Successor Cases and is a present and continuing guaranty of payment and performance and not of collection.  It shall constitute an Event of Default if any Debtor's obligations under this Interim Order and any DIP Loan Document are discharged prior to the DIP Repayment.

7.    <u>DIP Interest and Payment of Expenses</u>.

(a)    The DIP Obligations shall bear interest at the applicable rate (including, following written notice from the DIP Lenders, any applicable default rate upon the occurrence and during the continuance of an Event of Default) as and to the extent set forth in the DIP Loan Documents, and be due and payable in accordance with this Interim Order and the DIP Loan Documents, in each case without further notice, motion or application to, order of, or hearing before this Court.

(b)    The Debtors shall pay any and all (i) interest, fees, premiums or other amounts payable under the DIP Loan Documents, including, without limitation, the Agency Fees, (ii) amounts due (or that may become due) to any Indemnified Persons (as defined in the DIP Note) in respect of the indemnification obligations under this Interim Order and the DIP Loan Documents

and (iii) any other amounts payable in connection with the DIP Facility, including all reasonable and documented prepetition and postpetition fees and expenses of the attorneys and advisors as provided for herein or in the DIP Note or the other DIP Loan Documents including (i) Geoffrey T. Raicht, P.C., counsel to the DIP Lenders, (ii) Allen Overy Shearman Sterling US LLP ("**A&O Shearman**"), counsel to the DIP Agent, and (iii) Chipman Brown Cicero & Cole, LLP, Delaware counsel to the DIP Lenders and DIP Agent (collectively, the "**DIP Lender Advisors**").   None of the DIP Lender Advisors or any legal or financial advisors for the DIP Agent (including any successor agent) shall be required to file an application seeking compensation for services or reimbursement of expenses incurred following entry of this Interim Order with this Court.  Each DIP Lender Advisor seeking compensation for services or reimbursement of expenses under the DIP Note or the other DIP Loan Documents, this Interim Order, or a Final Order shall transmit a summary copy of its fee and expense statement or invoice (which shall not be required to contain time entries and which may be reasonably redacted or modified by the DIP Lender Advisor to protect from disclosure any confidential information or information otherwise subject to a protective privilege such as attorney-client privilege or attorney work-product privilege (and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work-product doctrine)) by e-mail to counsel to the Debtors, the U.S. Trustee, and counsel to the Committee, if any.  The Debtors, U.S. Trustee, and the Committee, if any, shall have ten (10) Business Days from receipt of a statement or invoice in which to raise an objection to the payment of any fees and expenses of such attorneys and advisors (the "**Disputed Fees**"), setting forth the specific objections to the Disputed Fees and transmitting same to the affected DIP Lender Advisor(s).  Upon the expiration of such ten (10) Business Day period, the Debtors shall promptly pay in full in cash all such fees and expenses other than the Disputed Fees.

To the extent any objection has been interposed and cannot be consensually resolved, the dispute will be scheduled for adjudication at the next regularly-scheduled omnibus hearing in the Chapter 11 Cases, and the Debtors shall pay any and all portion of the Disputed Fees whose payment has been approved by the Court at such hearing within three (3) Business Days of such approval. Notwithstanding the foregoing, the Debtors shall pay on or about the Closing Date all reasonable and documented fees, costs, and out-of-pocket expenses of the DIP Lender Advisors incurred on or prior to such date without the need for any professional to first deliver a copy of its invoice as provided for herein (other than to the Debtors).

8.     <u>Amendments</u>.  The DIP Loan Documents and the DIP Budget may from time to time be amended, restated, amended and restated, modified, waived, or supplemented by the parties thereto in accordance with the terms thereof, and each of the Debtors is expressly authorized and empowered to enter into and implement such amendments, restatements, amendment and restatements, modifications, waivers, or supplements from time to time in accordance with the terms of the DIP Loan Documents, without further order of this Court if the amendment, restatement, amendment and restatement, modification, waiver or supplement is not material or is necessary to conform the terms of the DIP Loan Documents or the DIP Budget to this Interim Order.  Any material amendment, restatement, amendment and restatement, modification, waiver, or supplement to the DIP Loan Documents shall require approval of this Court.

9.     <u>DIP Collateral</u>.  As security for the DIP Obligations, effective immediately upon entry of this Interim Order pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the DIP Agent, for the benefit of itself and the other DIP Secured Parties, is hereby granted valid, binding, continuing, enforceable, non-avoidable and automatically perfected liens upon and security interests in all real and personal property, whether now existing or hereafter

15

arising and wherever located, tangible or intangible, of each of the Debtors, including, <u>inter alia</u>, (i) all of those items and types of collateral in which security interests may be created under Article 9 of the Uniform Commercial Code, including any and all cash and cash equivalents, deposit accounts, securities accounts, and rights to the payment of money (including, without limitation, tax refunds and other extraordinary payments), (ii) to the extent not expressly prohibited by law or contract, all of those items and types of collateral not governed by Article 9 of the Uniform Commercial Code, including, without limitation, licenses issued by any federal or state regulatory authority, any leasehold or other real property interests (including, for the avoidance of doubt, all owned real property interests and all proceeds of leased real property excluded from the Prepetition Collateral under the Prepetition Credit Agreement Documents), and commercial tort claims of the Debtors, (iii) actions brought under section 549 of the Bankruptcy Code to recover any postpetition transfer of DIP Collateral, (iv) subject to and upon entry of the Final Order, the Avoidance Action Proceeds[5] (but not the Avoidance Actions), (v) subject to and upon entry of the Final Order, the proceeds of any exercise of the Debtors' rights under sections 506(c) or 550 of the Bankruptcy Code (the "**Recovery Actions**"); provided that no liens shall attach to the Recovery Actions, (vi) all assets of the Debtors that are not otherwise subject to the Prepetition Liens or Permitted Prior Senior Liens[6] (the "**Unencumbered Collateral**"), (vii) any assets of the Debtors that do not

---

[5]  "**Avoidance Action Proceeds**" means proceeds and property recovered in respect of the Debtors' claims and causes of action (but not on the actual claims and causes of action) arising under Chapter 5 of the Bankruptcy Code, including sections 544, 545, 547, 548, and 550 or any other similar state or federal law.

[6]  "**Permitted Prior Senior Liens**" means liens on property of the Debtors (including the proceeds of such property) that are in existence on the Petition Date but only, if applicable, (A) to the extent a lien on any property is valid, perfected, and not avoidable, (B) if the lien on such property (or the proceeds of such property, as applicable) on the Petition Date is a valid, perfected, and non-avoidable Permitted Encumbrances (as defined in the Credit Agreement) senior in priority to the prepetition liens on such property, or (C) to the extent such liens constitute valid, non-avoidable liens that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code. Moreover, nothing shall prejudice the rights of any party in-interest, including, but not limited to the Debtors, the Prepetition Secured Parties, the DIP Secured Parties or a Committee, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Permitted Prior Senior Liens.

17408291

constitute Prepetition Collateral but that are subject to Permitted Prior Senior Liens (the "**Encumbered Collateral**"), (viii) any and all other collateral of any nature or form, and (ix) the products, rents, offspring, profits, and proceeds of any of the foregoing (collectively, (i)-(ix), the "**DIP Collateral**").

10.    <u>Superpriority Claims and DIP Liens</u>.  In respect of the DIP Obligations under the DIP Note, the other DIP Loan Documents and this Interim Order, the DIP Agent, for its own behalf and on behalf of the other DIP Secured Parties, is granted the following with respect to the Debtors, their estates and all DIP Collateral:

(a)    a superpriority administrative expense claim pursuant to section 364(c)(1) of the Bankruptcy Code with priority over all other administrative expenses pursuant to the Bankruptcy Code (including the kinds specified in or arising or ordered pursuant to sections 105(a), 326, 328, 330, 331, 361, 362, 363, 364, 503(a), 503(b), 506(c) (subject to entry of the Final Order), 507, 546, 552(b), 726, 1113, and 1114 of the Bankruptcy Code or otherwise), which superpriority expenses of the DIP Agent (on behalf of itself and the other DIP Secured Parties) shall be subordinate to the DIP Liens (as defined below) and the Carve-Out (the "**DIP Superpriority Claims**"); <u>provided</u> that pursuant to applicable bankruptcy law, the granting of such DIP Superpriority Claims does not affect the status and superior priority of any liens, including the liens of the DIP Agent (for itself and on behalf of the other DIP Secured Parties) and the holder of any Permitted Prior Senior Lien.

(b)    a first priority, priming security interest in and lien pursuant to section 364(d)(1) of the Bankruptcy Code on all Prepetition Collateral (including any assets that would have constituted Prepetition Collateral but for a successful Challenge, and any assets acquired after the Petition Date that would have constituted Prepetition Collateral had they been acquired prior

to the Petition Date) (the "**Section 364(d)(1) Liens**"), which Section 364(d)(1) Liens shall be senior any other existing liens or claims, including the Prepetition Liens, subject only to (i) the Carve-Out, and (ii) Permitted Prior Senior Liens;

(c)        a first priority security interest and lien pursuant to section 364(c)(2) of the Bankruptcy Code on all Unencumbered Collateral of the Debtors (the "**Section 364(c)(2) Liens**"), including, subject to entry of the Final Order, Avoidance Action Proceeds and proceeds of Recovery Actions, which Section 364(c)(2) Liens shall be subject only to the Carve-Out and shall be senior in priority to the Adequate Protection Liens granted hereunder; and

(d)        a junior security interest and lien pursuant to section 364(c)(3) of the Bankruptcy Code on all Encumbered Collateral (collectively, the "**Section 364(c)(3) Liens**" and, together with the 364(d)(1) Liens and the Section 364(c)(2) Liens, the "**DIP Liens**"), which Section 364(c)(3) Liens are also subject to the Carve-Out and shall be senior in priority to the Adequate Protection Liens granted hereunder.

(e)        It shall be an Event of Default if any of the DIP Obligations, DIP Liens, or DIP Superpriority Claims shall (i) be made subject to or *pari passu* with any lien or security interest that is (A) heretofore or hereinafter granted in the Chapter 11 Cases or any Successor Cases or (B) avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code, (ii) be subject to or *pari passu* with any inter-company claim, whether secured or unsecured, of any Debtor or any domestic or foreign subsidiary or affiliate of any Debtor, (iii) be subject to sections 510, 549, or 550 of the Bankruptcy Code, or (iv) hereafter be subordinated to or made *pari passu* with any other lien or security interest under sections 361, 363, or 364 of the Bankruptcy Code or otherwise, except as expressly provided in this Interim Order or with the express consent of the Required Lenders.  The DIP Liens shall be valid and enforceable against

any trustee appointed in the Chapter 11 Cases or any Successor Cases, upon the conversion of any of the Chapter 11 Cases to Successor Cases, and/or upon the dismissal or conversion of any of the Chapter 11 Cases or Successor Cases.

11.    Carve-Out.

(a)    Generally.  The DIP Liens, the DIP Superpriority Claims, the Prepetition Liens, the Adequate Protection Liens, and the Section 507(b) Claims (defined below) shall be subject to the funding and payment, without duplication of, and subordinate to, the following fees and expenses (the amounts set forth below, collectively, the "**Carve-Out**") from, at the Debtors' discretion, any loan proceeds of the DIP Facility, Cash Collateral, or proceeds resulting from the liquidation of DIP Collateral or Prepetition Collateral. For the avoidance of doubt, if a DIP Repayment occurs or the DIP Facility is otherwise terminated, this Interim Order shall remain in full force and effect, including with respect to the Debtors' use of Cash Collateral, the Carve-Out, the Carve-Out Reserve Account (as defined below), and all related provisions in respect thereof, and the Prepetition Credit Agreement Agent shall be subject to any rights previously established with respect to the Carve-Out and the Carve-Out Reserve Account.

(i)    whether allowed by the Bankruptcy Court at any time and without regard to whether such fees and expenses are provided for in the DIP Budget, including any interim approval as set forth in any procedures approved by the Court, the unpaid fee and expense claims ("**Professional Fees**") of the respective professionals retained by the Debtors and the Committee pursuant to sections 327, 328, 363, or 1103 of the Bankruptcy Code or section 156(c) of title 28 of the United States Code (the "**Retained Professionals**"), including any restructuring fee, sale fee, transaction fee or other success fee payable to the Debtors' investment banker ("**Success Fees**"), which were incurred (A) on and after the Petition Date (or, in the case of the Committee and its

Retained Professionals, after the formation of the Committee) and before the Carve-Out Trigger

Date (defined below), and (B) on and after the Carve-Out Trigger Date in an aggregate amount not

exceeding $100,000 plus any Success Fees payable to the Debtors' investment banker that are

incurred on or after the Carve-Out Trigger Date (the foregoing clause (B) being the "**Post Carve-**

**Out Cap**");

        (ii)    the unpaid fees payable to the U.S. Trustee pursuant to section 1930

of Title 28 of the United States Code plus statutory interest, if any, imposed under 31 U.S.C. §

3717 and the Clerk of the Bankruptcy Court.  There is no limitation on the obligations of the

Debtors and their estates with respect to unpaid fees payable to the U.S. Trustee and Clerk of the

Bankruptcy Court pursuant to section 1930 of Title 28 of the United States Code;

        (iii)    the unpaid fees and expenses of the Debtors' current independent

director or any successor thereto; and

        (iv)    all reasonable and documented fees and expenses incurred by a

trustee under section 726(b) of the Bankruptcy Code and allowed by the Bankruptcy Court in an

amount not to exceed $25,000.

        (b)    <u>Carve-Out Trigger Date</u>.  As used herein, the term "**Carve-Out Trigger**

**Date**" means the date that the DIP Agent (at the direction of the Required Lenders) provides

written notice by email (or other electronic means) (the "**Carve-Out Trigger Notice**") to counsel

to the Debtors, the DIP Lenders, the DIP Agent, the U.S. Trustee, and counsel to the Committee,

if any (the "**Determination Period Notice Parties**") that the Carve-Out is invoked and the Post-

Carve-Out Cap is imposed, which Carve-Out Trigger Notice may be delivered only on or after the

occurrence of an Event of Default (as defined in the DIP Note) following the expiration of the

Remedies Notice Period (as defined herein).

17408291

(c)    On the Carve-Out Trigger Date, the DIP Loans will be accelerated and the Carve-Out will be triggered, in each case automatically and without the need for any action or consent by a DIP Lender or the DIP Agent or any prior or additional notice to the Borrower for effectiveness. Within three (3) calendar days of the Carve-Out Trigger Date, the (i) Carve-Out (to the extent not fully funded), and (ii) Post Carve-Out Cap ((i) and (ii), the "**Unfunded Carve-Out**") shall be funded by the Debtors to the Professional Fees Account (as defined below), provided, however, that to the extent the Debtors have insufficient cash to fund the Unfunded Carveout or the Debtors' ability to fund it are otherwise delayed or prevented, upon notice thereof by the Debtors or any Retained Professional, the Required Lenders shall, within three (3) days thereof, fund the Unfunded Carve-Out to the Professional Fees Account (as defined below). The DIP Agent shall not be responsible for funding or administering the Carve-Out or Unfunded Carve-Out, or any procedure with respect thereto, and shall have no obligations with respect thereto other than, to the extent the Commitments under the DIP Note have not been terminated, to receive and administer draw requests in accordance with the DIP Note.

(d)    Professional Fees Account.    Starting with the first full calendar week following the Petition Date, each Retained Professional shall deliver to the Debtors (with a copy to the DIP Agent and counsel to the DIP Lenders) a statement (each, a "**Weekly Statement**") setting forth a good-faith estimate (the "**Estimated Fees and Expenses**") of the amount of fees and expenses incurred during the preceding week by such professional (through Saturday of such week, the "**Calculation Date**"). The Debtors shall, on a weekly basis, transfer cash proceeds (from cash on hand or, if such cash on hand is insufficient, by drawing on the DIP Facility to the extent permitted thereunder at such time) in an amount equal to the Estimated Fees and Expenses of each Retained Professional (or if a Retained Professional has not delivered a Weekly Statement, the

17408291

fees for such Retained Professional in the DIP Budget) into a segregated account not subject to the control of the DIP Agent, any DIP Lender, any Prepetition Secured Party, or any other secured party (the "**Professional Fees Account**").  The Debtors shall cause funds held in the Professional Fees Account to be used to pay Professional Fees solely as they become allowed and payable pursuant to any interim or final orders of the Bankruptcy Court or otherwise; provided that when all allowed Professional Fees have been paid in full (regardless of when such Professional Fees are allowed by the Bankruptcy Court), any funds remaining in the Professional Fees Account shall revert to the Debtors for use in accordance with the DIP Orders; provided further that the Debtors' obligations to pay allowed Professional Fees shall not be limited or be deemed limited to funds held in the Professional Fees Account.  The Professional Fees Account, and all funds held in the Professional Fees Account, shall be held in trust exclusively for the benefit of the Retained Professionals, including with respect to obligations arising out of the Carve-Out.  Funds transferred to the Professional Fees Account shall not be subject to any liens or claims granted to the DIP Agent, DIP Lenders, the Prepetition Secured Parties, or to any other party pursuant to this Interim Order (whether on account of adequate protection, Diminution in Value, or otherwise), shall not constitute Prepetition Collateral, Cash Collateral, or DIP Collateral, and shall not be or be deemed to be property of any Debtor's estate; provided that the DIP Collateral shall include the Debtors' reversionary interest in funds held in the Professional Fees Account, after all Professional Fees have been indefeasibly paid in full in cash (regardless of when such Professional Fees are allowed by the Court).  Within two business days after the Carve-Out Trigger Date, each Retained Professional shall deliver one additional final statement setting forth a good-faith estimate of the amount of fees and expenses incurred during the period commencing on the calendar day after the most recent Calculation Date for which a Weekly Statement has been delivered and concluding on

the Carve-Out Trigger Date.  The Debtors shall not be permitted to draw upon the Professional Fees Account other than (i) to pay Professional Fees as they become allowed and payable pursuant to any interim, final or procedural orders of the Bankruptcy Court or (ii) to fund the Carve-Out. The Debtors' obligations to pay Professional Fees shall not be limited or be deemed limited to funds held in the Professional Fees Account.  The Professional Fees Account, and all funds held in the Professional Fees Account, shall be held in trust exclusively for the benefit of the Retained Professionals and, after the Carve-Out Trigger Date, the parties benefiting from the Carve-Out.

(e)      The occurrence of the Carve-Out Trigger Date shall constitute a demand to the Debtors to transfer cash (either from cash on hand or by drawing on the DIP Facility to the extent permitted thereunder at such time) in an amount equal to the Carve-Out into a segregated account outside the control of any DIP Secured Party or any Prepetition Secured Party exclusively to pay such obligations (the "**Carve-Out Reserve Account**"), provided that the Carve-Out Reserve Account may be the Professional Fees Account.  Notwithstanding anything to the contrary herein, (i) disbursements by the Debtors from the Carve-Out Reserve Account shall not constitute DIP Loans, (ii) the failure of the Carve-Out Reserve Account to satisfy in full the Professional Fees shall not affect the priority of the Carve-Out, and (iii) in no way shall the Carve-Out, the Professional Fees Account, the Carve-Out Reserve Account or the DIP Budget, or any of the foregoing be construed as a cap or limitation on the amount of the Professional Fees that may be allowed by the Bankruptcy Court and payable by the Debtors and their estates at any time (whether by interim order, final order, or otherwise).

(f)      Reduction of Amounts.  The Post Carve-Out Cap shall be reduced, dollar-for-dollar, by the aggregate amount of payments made on and after the Carve-Out Trigger Date on

account of fees and expenses incurred on and after the Carve-Out Trigger Date to Retained Professionals (whether from Cash Collateral, any proceeds of the DIP Financing, or otherwise).

(g)    <u>Reservation of Rights</u>.  The DIP Secured Parties reserve their rights to object to the allowance of any fees and expenses and any fees incurred before, on or after the Carve-Out Trigger Date.  The DIP Secured Parties and Prepetition Secured Parties shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Retained Professional, the U.S. Trustee or Clerk of the Bankruptcy Court (or of any other entity) incurred in connection with the Chapter 11 Cases or any Successor Cases, and nothing in this Interim Order or otherwise shall be construed to obligate such parties in any way to pay such compensation to or to reimburse such expenses.

12.    <u>Waiver of Right to Surcharge</u>.  In light of (a) the consent of the DIP Secured Parties to the current payment of administrative expenses of the Debtors' estates in accordance with the DIP Budget, (b) the agreement of the DIP Secured Parties to subordinate the DIP Superpriority Claims to the Carve-Out, (c) the agreement of the DIP Secured Parties to subordinate the DIP Liens to the Carve-Out and Permitted Prior Senior Liens, and (d) the agreement of the Prepetition Secured Parties to subordinate the Adequate Protection Liens and Section 507(b) Claims to the Carve-Out, subject to the entry of the Final Order, (x) the DIP Secured Parties with respect to the DIP Collateral and the Prepetition Secured Parties with respect to the Prepetition Collateral are each entitled to a waiver of the any surcharge pursuant to the provisions of sections 105(a) or 506(c) of the Bankruptcy Code and (y) the Prepetition Secured Parties with respect to the Prepetition Collateral are seeking a waiver of any "equities of the case" claims or other claims under sections 105(a) or 552(b) of the Bankruptcy Code.  Subject to entry of the Final Order, no costs or expenses of administration or other charge, lien, assessment, or claim incurred at any time

(including, without limitation, any expenses set forth in the DIP Budget) by any Debtor or any other person or entity shall be imposed or charged against any or all of the DIP Collateral and the DIP Secured Parties or the Prepetition Collateral and the Prepetition Secured Parties, or their respective claims or recoveries under the Bankruptcy Code, including sections 105(a), 506(c), or 552(b) thereof, or otherwise, and the Debtors, on behalf of their estates, waive any such rights.

13.    <u>No Marshaling</u>.  Subject to entry of the Final Order, none of the DIP Secured Parties or DIP Collateral or the Prepetition Secured Parties or Prepetition Collateral shall be subject to the doctrine of marshaling or any similar doctrine or law of any jurisdiction requiring the recovery upon or application to any indebtedness of any collateral or proceeds in any particular order or action.

14.    <u>Automatic Perfection</u>.

(a)    The (i) DIP Liens granted to the DIP Agent (on behalf of itself and the other DIP Secured Parties) pursuant to this Interim Order and the DIP Loan Documents and (ii) Adequate Protection Liens granted pursuant to this Interim Order to the Prepetition Secured Parties shall be valid, enforceable, and perfected by operation of law upon entry of this Interim Order by this Court without any further action by any party, including any filing or recording that may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action and this Interim Order shall be sufficient and conclusive evidence of the creation, validity, perfection and priority of all liens granted herein, including the DIP Liens and the Adequate Protection Liens.  Neither the DIP Agent or the other DIP Secured Parties in respect of the DIP Liens, nor the Prepetition Credit Agreement Agent or the other Prepetition Secured Parties in respect of the Adequate Protection Liens, shall be required to enter into or to obtain any control agreements, landlord waivers (unless required by law or contract), mortgagee waivers, bailee

waivers, or warehouseman waivers or to give, file, or record any UCC-1 financing statements, mortgages, deeds of trust, leasehold mortgages, notices to account debtors or other third parties, notices of lien, or similar instruments in any jurisdiction or filings with the United States Patent and Trademark Office, the United States Copyright Office, or any similar agency in respect of trademarks, copyrights, trade names, or patents with respect to intellectual property (collectively, the "**Perfection Documents**"), or obtain consents from any licensor or similarly situated party in interest, or take any other action to validate, record, or perfect the DIP Liens granted under the DIP Loan Documents and this Interim Order and the Adequate Protection Liens granted under this Interim Order and approved hereby, all of which are automatically and immediately perfected by the entry of this Interim Order.  If the DIP Agent or any other DIP Secured Party or any Prepetition Secured Party, independently or collectively, in each case in their respective sole discretion, choose to obtain, enter into, give, record, or file any Perfection Documents, (x) all such Perfection Documents shall be deemed to have been obtained, entered into, given, recorded, or filed, as the case may be, as of the Petition Date, (y) no defect in any such act shall affect or impair the validity, perfection, priority, or enforceability of the DIP Liens and Adequate Protection Liens, and (z) such liens shall have the relative priority set forth herein notwithstanding the timing of filing of any such Perfection Documents.  In lieu of optional recording or filing any Perfection Documents, the DIP Agent (acting at the direction of the Required Lenders) may, in its sole discretion, choose to record or file a true and complete copy of this Interim Order in any place that any Perfection Document would or could be recorded or filed (which may include a description of the collateral appropriate to be indicated in a recording or filing at such place of recording or filing), and such recording or filing by the DIP Agent or any other DIP Secured Party shall have the same effect as if such Perfection Document had been filed or recorded as of the Petition Date.

(b)    Until the DIP Repayment occurs, DIP Collateral and Perfection Documents evidencing liens subordinate to the DIP Liens in the possession, custody, or control of the Prepetition Secured Parties (or in the possession, custody, or control of agents or bailees of the Prepetition Secured Parties) shall be deemed to be sufficient for the purposes of perfecting the security interests granted in such DIP Collateral, and the Prepetition Secured Parties (or their agents or bailees, as applicable) shall, to the extent applicable, be an agent or bailee, as the case may be, on behalf of and for the benefit of the DIP Lenders for the purposes of perfecting the security interests granted in such DIP Collateral.  To the extent the Prepetition Credit Agreement Agent or any other Prepetition Secured Party is the secured party under any security agreement, mortgage, leasehold mortgage, landlord waiver, bailee letters, custom broker agreements, financing statement, account control agreements, or any other Prepetition Documents, the DIP Agent and the DIP Lenders shall also be deemed to be the secured party, as applicable, under such documents.  During the occurrence and continuance of an Event of Default and at the request of the DIP Agent (at the direction of the Required Lenders), the Prepetition Secured Parties (or their agents or bailees, as applicable) shall transfer, assign, and otherwise convey, as applicable, any DIP Collateral and Perfection Documents in their possession, custody, or control to the DIP Agent for the benefit of the DIP Secured Parties for the enforcement of rights and remedies under the DIP Loan Documents, and, upon the DIP Repayment, the DIP Agent (at the direction of the Required Lenders) (or their agents or bailees, as applicable) shall transfer, assign, and otherwise convey any Prepetition Collateral and Perfection Documents to the Prepetition Secured Parties.

15.    <u>Effect of Stipulations on Third Parties</u>.

(a)    <u>Generally</u>.  The Debtors' Stipulations are and shall be binding on the Debtors in all circumstances and for all purposes.  The Debtors' Stipulations shall also be binding

on any subsequent trustee (including any Chapter 7 trustee), responsible person, examiner with expanded powers, any other estate representative, and all creditors and parties-in-interest and all of their successors-in-interest and assigns, including, without limitation, the Committee, if any, and any other statutory or non-statutory committees appointed or formed in the Chapter 11 Cases, and any other person acting or seeking to act on behalf of the Debtors' estates in all circumstances unless, and solely to the extent that: (i) a party-in-interest with standing and requisite authority (in each case, to the extent requisite standing is obtained pursuant to an order of this Court entered prior to the Challenge Deadline and subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to commence such proceeding), has timely filed the appropriate pleadings, and timely commenced the appropriate proceeding required under the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, including, without limitation, as required pursuant to Part VII of the Bankruptcy Rules (in each case subject to the limitations set forth in Paragraph 16 of this Interim Order) challenging the Debtors' Stipulations (each such proceeding or appropriate pleading commencing a proceeding or other contested matter, a "**Challenge**") by the date that is 75 days from entry of this Interim Order (the "**Challenge Deadline**"), as such date may be extended in writing from time to time (A) in the sole discretion of the Prepetition Lenders, or (B) by this Court for good cause shown pursuant to an application filed by a party in interest prior to the expiration of the Challenge Deadline; provided, however, if the Chapter 11 Cases convert to Chapter 7 prior to the Challenge Deadline, the Challenge Deadline shall be extended for the Chapter 7 trustee to 14 days after the appointment of such trustee; and (ii) there is entered a final, non-appealable order in favor of the plaintiff or movant in any such timely and properly commenced Challenge proceeding; provided that any pleadings filed in any such proceeding shall set forth with specificity the basis for such Challenge (and any Challenges

28

not so specified prior to the Challenge Deadline shall be deemed forever, waived, released, and barred).

(b)   <u>Binding Effect</u>.   To the extent any of the Debtors' Stipulations are not subject to a Challenge timely and properly commenced by the Challenge Deadline, or to the extent any Challenge does not result in a final and non-appealable judgment or order of this Court that is inconsistent with the Debtors' Stipulations, then, without further notice, motion, or application to, order of, or hearing before, this Court and without the need or requirement to file any proof of claim, the Debtors' Stipulations shall pursuant to this Interim Order become binding, conclusive, and final on any person, entity or party-in-interest in the Chapter 11 Cases, and their successors and assigns, and in any Successor Case for all purposes and shall not be subject to challenge or objection by any party-in-interest, including, without limitation, a trustee, responsible individual, examiner with expanded powers, or other representative of the Debtors' estates.   Notwithstanding anything to the contrary herein, if any such proceeding is properly and timely commenced, the Debtors' Stipulations shall nonetheless remain binding unless such Challenge is successful pursuant to an order or judgment that is final and no longer subject to appeal or further review.

(c)   Nothing in this Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including the Committee (if appointed) or any statutory or nonstatutory committees appointed or formed in these Chapter 11 Cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, Challenges with respect the Debtors' Stipulations, and all rights to object to such standing are expressly reserved.

16.   <u>Limitation on Use of Proceeds</u>.   Notwithstanding anything in this Interim Order to the contrary, no portion or proceeds of the DIP Facility, the DIP Collateral, the Prepetition

Collateral, the Cash Collateral, or the Carve-Out, and no disbursements set forth in the DIP Budget may be used by the Debtors or any other party in interest, or their representatives, to (or support any other party to) pay professional fees, disbursements, costs, or expenses incurred in connection with: (a) investigating, analyzing, commencing, prosecuting, threatening, litigating, objecting to, contesting, challenging in any manner or raising any defense to the validity, perfection, priority, or enforceability of, or any amount due under, the DIP Loan Documents or the Prepetition Credit Agreement Documents or any security interests, liens, or claims granted under this Interim Order, the DIP Loan Documents, or the Prepetition Credit Agreement Documents to secure such amounts; (b) asserting any Challenges, claims, actions, or causes of action against any of the DIP Secured Parties or the Prepetition Secured Parties or any of their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys, or advisors; (c) contesting the Debtors' Stipulations, (d) preventing, hindering or otherwise delaying the DIP Agent's or the DIP Lenders' assertion, enforcement or realization on the DIP Collateral or the exercise of rights by the DIP Agent or the DIP Lenders once an Event of Default has occurred and is continuing (following the Remedies Notice Period), (e) seeking to modify the rights granted to the DIP Agent or the DIP Lenders under the DIP Loan Documents without the prior written consent of the DIP Lenders, or (f) paying any amount on account of any claims arising prior to the Petition Date unless such payments are approved by an order of the Court (which order may be this Interim Order or the Final Order) and permitted by the DIP Loan Documents; provided that prior to the Challenge Deadline no more than $50,000 in the aggregate of the proceeds of the DIP Facility, the DIP Collateral, the Prepetition Collateral, the Cash Collateral, and the Carve-Out may be used by the Committee, if any, to investigate (but not prepare, initiate, litigate, prosecute, object to or Challenge) the Debtors' Stipulations or assert claims against the Prepetition Secured Parties.

17.    <u>Adequate Protection</u>.  The Prepetition Credit Agreement Agent, on behalf of itself and the Prepetition Lender, is entitled, pursuant to sections 361, 362, 363(c)(2), 363(e), and 507 of the Bankruptcy Code, to adequate protection of its interests in the Prepetition Collateral, including Cash Collateral, solely to the extent of any diminution in value occurs on account of the Debtors' sale, lease or use of the Prepetition Collateral, including Cash Collateral, the imposition and enforcement of the automatic stay pursuant to section 362 of the Bankruptcy Code, and the priming of the Prepetition Lender's interests in the Prepetition Collateral (including by the Carve-Out) ("**Diminution in Value**").  As adequate protection, the Prepetition Credit Agreement Agent, on behalf of itself and the other Prepetition Secured Parties, is hereby granted the following (the "**Adequate Protection Obligations**"):

(a)    <u>Adequate Protection Liens</u>.  As security for the payment of the Adequate Protection Obligations, the Prepetition Credit Agreement Agent, on behalf of itself and the Prepetition Lender, in accordance with sections 361, 363(e), and 364(d) of the Bankruptcy Code, is hereby granted valid, binding, enforceable, and perfected junior security interests and replacement liens (the "**Adequate Protection Liens**") upon all Prepetition Collateral, Encumbered Collateral and Unencumbered Collateral, including, upon entry of the Final Order, the Avoidance Action Proceeds.  The Adequate Protection Liens are subject and subordinate to (A) the Carve-Out, (B) the DIP Obligations, the DIP Liens, and the DIP Superpriority Claims, and (C) the Permitted Prior Senior Liens.  The Adequate Protection Liens shall not (x) be subject to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code, (y) subject to any inter-company claim, whether secured or unsecured, of any Debtor or any domestic or foreign subsidiary or affiliate of any Debtor, or (z) hereafter be subordinated to or made *pari passu* with any other lien or security interest under

17408291

sections 361, 363, or 364 of the Bankruptcy Code or otherwise, except, in the case of any of (x), (y), or (z), as expressly provided in this Interim Order and the DIP Loan Documents or the express written unanimous consent of the Prepetition Secured Parties and the DIP Secured Parties in their sole discretion, including, without limitation, with respect to the Carve-Out, Permitted Prior Senior Liens, DIP Obligations, DIP Liens, and DIP Superpriority Claims.

(b)     <u>Section 507(b) Claims</u>.  To the extent that the Prepetition Credit Agreement Agent, on behalf of itself and the Prepetition Lender, shall hold claims allowable under sections 503(b) and 507(a)(2) of the Bankruptcy Code, notwithstanding the provision of Adequate Protection hereunder, the Prepetition Credit Agreement Agent, on behalf of itself and the other Prepetition Secured Parties is hereby granted an administrative expense claim pursuant to section 507(b) of the Bankruptcy Code (a "**Section 507(b) Claim**") with priority over all other administrative expenses, but in all cases subject and subordinate to the Carve-Out, the Permitted Prior Senior Liens, DIP Obligations, DIP Liens, and DIP Superpriority Claims.  Subject to entry of the Final Order and any claims or liens superior in priority, including the DIP Obligations and the DIP Liens, the Section 507(b) Claims shall be payable from the Avoidance Action Proceeds.

(c)     <u>Fees and Expenses of the Prepetition Secured Parties</u>.  As further adequate protection, the Debtors are authorized and directed to pay, without further Court order, the reasonable and documented fees and expenses of the Prepetition Credit Agreement Agent, including agency fees, whether incurred before or after the Petition Date, in accordance with the Prepetition Credit Agreement Documents.  For the avoidance of doubt, the payment of such fees and expenses shall be in addition to, and not in limitation of, any other adequate protection provided to the Prepetition Secured Parties under this Interim Order.

17408291

(d)     Fees and Expenses of DIP Lender Advisors.  The DIP Lender Advisors shall receive from the Debtors current cash payments of all prepetition and postpetition accrued and unpaid reasonable and documented fees and disbursements, in accordance with the review procedure set forth in Paragraph 7 of this Interim Order.

(e)     The Prepetition Secured Parties agree, and this Court finds, that the adequate protection provided in this Interim Order (the "**Adequate Protection**"), including, without limitation, in this Paragraph 17, is reasonable and calculated to protect the interests of the Prepetition Secured Parties.  Notwithstanding any other provision hereof, the grant of Adequate Protection to the Prepetition Secured Parties pursuant hereto is without prejudice to the right of the Prepetition Secured Parties to, upon a change in circumstances, seek modifications of the grant of Adequate Protection provided in this Interim Order so as to provide different or additional adequate protection, and without prejudice to the right of the DIP Agent, each of the DIP Lenders, the Debtors or any other party in interest to contest any such request.

18.     Milestones.  As a condition to the DIP Facility and the use of Cash Collateral, the Debtors have agreed to the milestones attached hereto as Annex 4 (the "**Milestones**").  For the avoidance of doubt, the failure of the Debtors to comply with any of the Milestones (a) shall constitute an Event of Default under the DIP Facility and this Interim Order, (b) subject to Paragraph 20, result in the automatic termination of the Debtors' authority to use Cash Collateral under this Interim Order, and (c) permit the DIP Agent (acting at the direction of the Required Lenders) or the DIP Lenders, subject to Paragraph 20, to exercise the rights and remedies provided for in this Interim Order and the DIP Facility.  The Milestones may only be extended by agreement of the Debtors and the DIP Agent (acting at the direction of the Required Lenders (in their sole discretion)) or as necessary to accommodate the Court's availability.

19.     <u>Indemnification</u>.  The Debtors shall pay, reimburse, indemnify and hold harmless the Indemnified Persons for, and hold each of them harmless from and against, any and all reasonable and documented out-of-pocket costs, expenses (including reasonable and documented out-of-pocket fees, disbursements, and other charges of counsel), obligations, losses, damages, penalties, disbursements and liabilities (including liability under any environmental law applicable to the operations of the Debtors, any of their subsidiaries or any of the properties of the foregoing) of such Indemnified Person arising out of or relating to any claim or any actions, judgments, suits, litigation or other proceeding of any nature whatsoever (regardless of whether such Indemnified Person is a party thereto and regardless of whether such matter is initiated by a third party or by the Debtors or any of their affiliates or shareholders) that relates to or arises out of the execution, delivery, enforcement, performance and administration of the DIP Loan Documents, the DIP Facility or this Interim Order, including the financing contemplated hereby, the Chapter 11 Cases, or any transactions in connection therewith, and the use of proceeds of the DIP Loans and the reasonable fees, disbursements and other charges of legal counsel in connection with claims, actions or proceedings by any Indemnitee against the Borrower hereunder; <u>provided</u> that no Indemnified Person will be indemnified for any cost, expense, or liability to the extent determined in a final, non-appealable judgment of a court of competent jurisdiction to have resulted from such Person's gross negligence, willful misconduct or fraud.  Nothing herein is meant to limit the scope of any indemnity provided for the benefit of the DIP Agent or the DIP Lenders or any of their representatives in the DIP Loan Documents.

20.     <u>Remedies</u>.

(a)     The automatic stay is hereby modified to the extent necessary to permit the DIP Agent (acting at the direction of the Required Lenders) or the DIP Lenders to take any or all

17408291

of the following actions, at the same or different times, in each case without further order or application to the Court, immediately upon the date of delivery of a written notice (a "**Default Notice**" and the date of delivery of such Default Notice, the "**DIP Termination Date**") by the DIP Agent (at the direction of the Required Lenders) to the Debtors, counsel for the Committee, if any, and the U.S. Trustee: (i) immediately upon the occurrence and during the continuance of an Event of Default under the DIP Loan Documents or upon the Maturity Date, (A) declare the termination, reduction or restriction of any applicable further DIP Commitment to the extent any further DIP Commitment remains, (B) cease making financial accommodations to the Debtors, (C) declare all applicable DIP Obligations to be immediately due, owing and payable in full in cash, without presentment, demand, protest, or other notice of any kind, all of which are expressly waived by the Debtors, (D) terminate the DIP Loan Documents as to any future liability or obligation of the DIP Agent or the DIP Lenders with respect to the DIP Commitments thereunder, and (E) deliver a Carve-Out Trigger Notice, and (ii) upon the occurrence and continuation of an Event of Default or upon the Maturity Date and after providing five (5) Business Days' prior written notice to this Court (the "**Remedies Notice Period**") (which period shall run concurrently with any notice required to be provided under the DIP Loan Documents) via email to counsel to the Debtors, the U.S. Trustee, and counsel to the Committee, if any, the DIP Agent (acting at the direction of the Required Lenders) shall be entitled to (A) exercise all of its rights and remedies under this Interim Order, the DIP Loan Documents and otherwise available under applicable law, including, without limitation, foreclose upon the DIP Collateral or otherwise enforce the DIP Obligations, the DIP Liens, and the DIP Superpriority Claims on any or all of the DIP Collateral and to exercise any other default-related remedies under the DIP Loan Documents, this Interim Order, or applicable

17408291

law in seeking to recover payment of the DIP Obligations, and (B) withdraw consent to the Debtors' continued use of Cash Collateral.

(b)        During the Remedies Notice Period, (i) the Debtors shall be permitted to cure any Event of Default and to use Cash Collateral solely to (A) pay payroll and other critical administrative expenses to keep the business of the Debtors operating, in accordance with the DIP Budget or as necessary to maintain and maximize the value of the DIP Collateral, or as otherwise agreed by the DIP Agent acting at the direction of the Required Lenders, (B) fund the Carve-Out Account, and (C) seek a hearing before the Court, and (ii) any party in interest may seek an emergency hearing with the Court within the Remedies Notice Period.

(c)        No rights, protections or remedies of the DIP Agent or the DIP Lenders granted by the provisions of this Interim Order or the other DIP Loan Documents shall be limited, modified or impaired in any way by: (i) any actual or purported withdrawal of the consent of any party to the Debtors' authority to continue to use Cash Collateral; (ii) any actual or purported termination of the Debtors' authority to continue to use Cash Collateral; or (iii) the terms of any other order or stipulation related to the Debtors' continued use of Cash Collateral or the provision of adequate protection to any party, including pursuant to this Interim Order.

(d)        So long as the DIP Obligations remain outstanding or the DIP Lenders have any outstanding DIP Commitments under the DIP Loan Documents, each Prepetition Secured Party shall (and in the case of (iv), the Prepetition Lenders shall) (i) take no action to foreclose upon, or recover in connection with, the Prepetition Liens on the DIP Collateral granted pursuant to the Prepetition Credit Agreement Documents or this Interim Order, or otherwise seek to exercise or enforce any rights or remedies against the DIP Collateral, including in connection with any Adequate Protection Liens, (ii) be deemed to have consented to any transfer, disposition or sale

of, or release of liens on, the DIP Collateral subject to such Prepetition Liens (but not any proceeds of such transfer, disposition or sale to the extent remaining after the DIP Repayment occurs), (iii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect its security interests in the DIP Collateral subject to such Prepetition Liens other than as necessary to give effect to this Interim Order, and (iv) at the direction of the DIP Lenders, deliver or cause the Prepetition Agent to deliver, at the Debtors' cost and expense, any termination statements, releases and/or assignments in favor of the DIP Agent or the DIP Lenders or other documents necessary to effectuate and/or evidence the release, termination and/or assignment of liens on any portion of the DIP Collateral subject to such Prepetition Liens, subject to any ordinary course sale or court-approved disposition.

21.     <u>Insurance Policies</u>.  Effective as of entry of this Interim Order, the Debtors consent to, and, to the fullest extent provided by applicable law, the DIP Agent (on behalf of itself and the other DIP Secured Parties) and the Prepetition Credit Agreement Agent (on behalf of itself and the other Prepetition Secured Parties) shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees on each insurance policy maintained by the Debtors that in any way relates to DIP Collateral or Prepetition Collateral, as applicable, in accordance with the priorities set forth herein.

22.     <u>Successors and Assigns</u>.  This Interim Order, the DIP Note, and the other DIP Loan Documents shall be binding upon and inure to the benefit of the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, the Committee, if any, all other creditors of any of the Debtors and all other parties in interest in these Chapter 11 Cases or any Successor Cases, any statutory or non-statutory committee, responsible individual, examiner with expanded powers, or

other estate representative and their respective successors and assigns, including any subsequently appointed chapter 11 trustee or, in the event of the conversion of any of the Chapter 11 Cases or any Successor Cases to a liquidation under chapter 7 of the Bankruptcy Code, any chapter 7 trustee. Such binding effect is an integral part of this Interim Order.

23.     <u>Survival</u>.  The provisions of this Interim Order, the DIP Loan Documents and any actions taken pursuant hereto and thereto, and all of the protections, rights, remedies, liens, priorities, privileges, and benefits granted to any or all of the DIP Secured Parties or the Prepetition Secured Parties respectively, shall survive entry of any subsequent order, including any order (i) confirming any plan of reorganization or liquidation in any of the Chapter 11 Cases, (ii) converting any of the Chapter 11 Cases to a Chapter 7 case, (iii) dismissing any of the Chapter 11 Cases or any Successor Case, (iv) withdrawing of the reference of any of these Chapter 11 Cases or any Successor Cases, or providing for abstention from handling or retaining of jurisdiction of any of these Chapter 11 Cases in this Court, or (v) terminating the joint administration of these Chapter 11 Cases, or by any other act or omission.  The terms and provisions of this Interim Order as well as the DIP Obligations, the DIP Liens, the DIP Superpriority Claim, the DIP Loan Documents, and the Adequate Protection Liens shall continue in full force and effect in the Chapter 11 Cases, any Successor Cases, and following the dismissal of the Chapter 11 Cases or any Successor Cases, and such protections, rights, remedies, priorities, privileges, benefits, claims, and liens shall maintain their priority as provided by this Interim Order and the DIP Loan Documents to the maximum extent permitted by law until the DIP Repayment has occurred.

24.     <u>Good Faith</u>.  Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with section 364(e) of the Bankruptcy Code, (a) the DIP Facility, the use of Cash Collateral, and the other provisions of this Interim Order, the

DIP Note, and the other DIP Loan Documents have been negotiated in good faith and at arm's length among the Debtors and the DIP Secured Parties, and the extension of the financial accommodations to the Debtors by the DIP Secured Parties and Prepetition Secured Parties pursuant to this Interim Order and the DIP Loan Documents have been and are deemed to be extended in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and (b) in the event any or all of the provisions of this Interim Order are hereafter reversed or  modified, on appeal, each of the DIP Agent, the DIP Lenders and the Prepetition Secured Parties is entitled to, and are hereby granted, the protections provided in section 364(e) of the Bankruptcy Code.  To the fullest extent provided by section 364(e) of the Bankruptcy Code, any such reversal or modification shall not affect (i) the validity and enforceability of any obligation, advances, indebtedness or liability under this Interim Order and the DIP Loan Documents by the Debtors prior to the date of receipt of written notice to the DIP Agent of the effective date of such action, and (ii) the validity and enforceability of any lien, administrative expense, right, or priority authorized or created hereby or pursuant to this Interim Order and the DIP Loan Documents, including, without limitation, the DIP Obligations, the DIP Liens, the DIP Superpriority Claims, the Prepetition Secured Obligations, the Adequate Protection Liens, and the Section 507(b) Claims.

25.     <u>Order Governs</u>.  In the event of any inconsistency or conflict between or among, as applicable, the provisions of this Interim Order and the DIP Loan Documents, the Motion, or any supporting documents, the provisions of this Interim Order shall control and govern to the extent of such conflicts.

26.     <u>Right to Credit Bid</u>.  In connection with any sale process authorized by the Court, whether effectuated through sections 363, 725, or 1123 of the Bankruptcy Code, and subject to the

any Challenge to the Prepetition Secured Obligations and section 363(k) of the Bankruptcy Code, (i) the DIP Agent (at the direction of the Required Lenders) shall have the right to use the DIP Obligations and DIP Liens to credit bid with respect to any bulk or piecemeal sale of all or any portion of the DIP Collateral and shall not be prohibited or limited from making such credit bid "for cause" under section 363(k) of the Bankruptcy Code, and (ii) subject to entry of the Final Order and the rights of any Committee under paragraph 15, the Prepetition Credit Agreement Agent (at the direction of the requisite Prepetition Lenders) shall have the exclusive right to use the Prepetition Secured Obligations, Prepetition Liens, Adequate Protection Liens and Section 507(b) Claims to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Prepetition Collateral and shall not be prohibited or limited from making such credit bid "for cause" under section 363(k) of the Bankruptcy Code.

27.   <u>Maintenance of DIP Collateral</u>. Until the DIP Repayment has occurred, the Debtors shall (a) insure the DIP Collateral as required under the DIP Loan Documents and the applicable Prepetition Documents; (b) maintain the cash management system in effect as of the Petition Date, as modified by any order of the Court; and (c)(i) maintain accurate records of all transfers (including intercompany transactions) within the cash management system so that all postpetition transfers and transactions shall be adequately and promptly documented in, and readily ascertainable from, their books and records, to the same extent maintained by the Debtors before the Petition Date, and (ii) provide access upon reasonable request to such records to the DIP Agent and the DIP Lenders.

28.   <u>Disposition of DIP Collateral</u>. It shall be an Event of Default if the Debtors sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP Collateral other than in the ordinary course of business, or file a motion or application seeking, or otherwise seek or

17408291

directly or indirectly support any other person in seeking authority to take such action, without the prior written consent of the DIP Agent (at the direction of the Required Lenders) and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agent or any other DIP Secured Parties.

29.    <u>Limits on Lender Liability</u>. Nothing in this Interim Order, any of the DIP Loan Documents, any of the Prepetition Documents, or any other documents related thereto, shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the other DIP Secured Parties, or the Prepetition Secured Parties of any liability for any claims arising from any activities by the Debtors in the operation of their businesses or in connection with the administration of these Chapter 11 Cases or any Successor Cases. The DIP Agent, the other DIP Secured Parties, and the Prepetition Secured Parties shall not, solely by reason of having made loans under the DIP Facility or authorizing the use of Cash Collateral, be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 et seq., as amended, or any similar federal or state statute).  Nothing in this Interim Order or the DIP Loan Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, any of the DIP Secured Parties or any of the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors.

30.    <u>Replacement Agent</u>. Notwithstanding the resignation or replacement of any collateral agent or administrative agent, including the DIP Agent and the Prepetition Agents, the DIP Liens on the DIP Collateral, the Prepetition Liens on the Prepetition Collateral and the

17408291

Adequate Protection Liens shall remain continuously and properly perfected, notwithstanding the transfer of control, possession, or title of any Prepetition Collateral or DIP Collateral to a new collateral or administrative agent.

31.     <u>No Third-Party Rights</u>. Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

32.     <u>Immediate Effect of Order</u>.  This Interim Order shall take effect immediately upon execution hereof, and, notwithstanding anything to the contrary contained in Bankruptcy Rules, including Bankruptcy Rule 4001(a)(3), there shall be no stay of execution of effectiveness of this Order.  The Debtors shall promptly mail copies of this Interim Order to the Notice Parties and to counsel to the Committee, if any.

33.     <u>Jurisdiction</u>.  The Bankruptcy Court shall retain jurisdiction with respect to any and all disputes or matters under, or arising out of or in connection with, either the DIP Facility or the DIP Loan Documents.

34.     <u>Findings of Fact/Waivers.</u>  This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable immediately upon entry thereof.   Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9014 of the Bankruptcy Rules, any applicable Local Rules, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be effective immediately and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

35.     <u>Final Hearing</u>.  The Final Hearing is scheduled for July 28, 2025 at 2:00 p.m. (prevailing Eastern Time) before this Court.  Any objections by creditors or other parties in

17408291

interest to any provisions of this Interim Order shall be deemed waived unless timely filed and served in accordance with this Paragraph 34.  The Debtors shall promptly serve a notice of entry of this Interim Order and the Final Hearing, together with a copy of this Interim Order, by first class mail, postage prepaid, or overnight mail upon the Notice Parties.  The notice of the entry of this Interim Order and the Final Hearing shall state that objections to the entry of the Final Order shall be filed with this Court by no later than July 21, 2025 at 4:00 p.m. (prevailing Eastern Time), with copies to: (i) proposed attorneys for the Debtors: (i)  Morris James LLP, 500 Delaware Ave., Suite 1500, Wilmington, DE 19801, Attn:  Jeffrey R. Waxman, Esquire and Carl N. Kunz III, Esquire (jwaxman@morrisjames.com; ckunz@morrisjames.com); (ii) counsel for the DIP Lenders and Prepetition Lenders, (a) Geoffrey T. Raicht, PC, 99 Biltmore Ave, Rye, NY  10580, Attn: Geoffrey T. Raicht, Esquire  (graicht@raichtlawpc.com) and (b) Chipman Brown Cicero & Cole, LLP, 1313 N. Market St., Suite 5400, Wilmington, DE 19801, Attn:  William Chipman, Jr., Esquire (chipman@chipmanbrown.com); (iii) counsel for the DIP Agent and Prepetition Credit Agreement Agent (a) A&O Shearman, 599 Lexington Ave., New York, NY 10022, Attn:  Sara Coelho,   Esquire   (sara.coelho@aoshearman.com)   and   Joseph   Badtke-Berkow,   Esquire (joseph.badtke-berkow@aoshearman.com), and (b) Chipman Brown Cicero & Cole, LLP, 1313 N. Market St., Suite 5400, Wilmington, DE 19801, Attn:  William Chipman, Jr., Esquire (chipman@chipmanbrown.com);, (iv)  the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Wilmington, DE 19801, Attn: Hannah McCollum, Esquire (hannah.mccollum@usdoj.gov); and (vii) counsel to the Committee, if any.

**Dated: July 8th, 2025**
**Wilmington, Delaware**

**KAREN B. OWENS**
**CHIEF JUDGE**

17408291